```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
US BANK NATIONAL ASSOCIATION,       : 12 Civ. 6811 (CM) (JCF)
a national association as           :
securities intermediary for LIMA    :
ACQUISITION LP,                     :      MEMORANDUM
                                    :      AND  ORDER
              Plaintiff,            :
                                    :
      - against -                   :
                                    :
PHL VARIABLE INSURANCE COMPANY,     :
a Connecticut Corporation,          :
                                    :
              Defendant.            :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

US Bank National Association ("US Bank") owns twelve life insurance policies known as Phoenix Accumulator Universal Life ("PAUL") policies issued by PHL Variable Insurance Company ("PHL"). US Bank commenced this action on November 16, 2011, alleging that PHL breached the policies and violated various laws by raising the cost of insurance rates on the subject PAUL policies in 2010 and 2011. US Bank recently served subpoenas seeking documents from five reinsurers; from the American Council of Life Insurers, a trade association; from rating agencies that evaluate PHL; and from insurance companies that issue products similar to PHL's. PHL now moves for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, or, in the alternative, for an order pursuant to Rule 45(c)(3) quashing the subpoenas. In addition, two

1

of the non-party reinsurers, Transamerica Life Insurance Company ("Transamerica") and SCOR Global Life Americas Reinsurance Company ("SCOR"), have likewise moved to quash the subpoenas or for a protective order.

Background

The policies at issue in this case are universal life insurance policies. A policyholder may choose how much he or she wishes to pay into the policy account each month, and the account then accrues interest. (First Amended Complaint ("FAC"), ¶ 2). Various fees are deducted from the account, including a "cost of insurance charge," which is what the insurer pays for the actual insurance: the cost of bearing the mortality risk. (FAC, ¶ 2). There is no fixed monthly premium, but the account must be sufficient to cover fees, including the cost of insurance. (FAC, ¶ 2). If it is not, the policy will ultimately lapse. (FAC, ¶ 2).

The PAUL policies at issue permit the insurer to adjust the cost of insurance rates, but only based on certain specified factors, the most significant of which is mortality. (FAC, ¶ 4). US Bank alleges that, although life expectancy has increased, which should lead to a reduction in the cost of insurance, PHL has nevertheless increased its cost of insurance rates in violation of the policy terms. (FAC, ¶ 4). According to the plaintiff, PHL has done so both to increase its fees and to induce "shock lapses,"

2

that is, to encourage policyholders to allow policies to lapse rather than pay higher fees, thereby relieving PHL of the risk of ever having to pay out on the policy. (FAC, ¶ 7).

The non-party that reinsures the twelve policies specifically at issue here, Reinsurance Group of America ("RGA"), previously produced documents in response to a request from US Bank. (Tr. at 20-21).[1] According to US Bank, these documents show that PHL reported changes in its cost of insurance, as well as the purported reasons for those changes, to RGA. (Declaration of Khai LeQuang dated Sept. 28, 2012 ("LeQuang Decl."), Exh. I). When RGA requested certain information such as mortality reports, PHL provided it. (LeQuang Decl., Exh I). Furthermore, communications were exchanged internally within RGA reflecting a belief that PHL had in fact raised the cost of insurance based not on changes in mortality, but in order to prop up its sagging financial situation. (LeQuang Decl., Exh. I).

When the subpoenas now at issue were served, PHL filed its motion to quash or for a protective order, arguing (1) that the subpoenas are improper and premature, because the requested information, to the extent it is relevant, can be obtained directly from PHL, and (2) the subpoenas are overbroad and seek irrelevant

---

[1] "Tr." refers to the transcript of oral argument held on October 11, 2012.

3

information. US Bank disputes these contentions and further argues that PHL lacks standing to contest the subpoenas. Transamerica and SCOR have adopted PHL's relevance arguments and also contend that it would be unduly burdensome for them to be required to respond to the subpoenas.

I will provide additional factual background in conjunction with the legal analysis.

Discussion

 A. PHL

A party lacks standing to challenge, on grounds of relevance or burden, a subpoena served on a non-party. See Estate of Ungar v. Palestinian Authority, 332 F. App'x 643, 645 (2d Cir. 2009); Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975); Meyer Corp. U.S. v. Alfay Designs, Inc., No. 10 CV 3647, 2012 WL 3537001, at *1 (E.D.N.Y. Aug. 14, 2012); GMA Accessories, Inc. v. Electric Wonderland, Inc., No. 07 Civ. 3219, 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012); Freydl v. Meringolo, No. 09 Civ. 7196, 2011 WL 1226226, at *1 (S.D.N.Y. March 25, 2011); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 2459 (3d ed. 2008). Rather, the moving party must assert some right or privilege personal to it, such as an interest in proprietary, confidential information that would be disclosed or an interest in maintaining a privilege that would be breached by

4

disclosure.  See Blue Angel Films, Ltd. V. First Look Studios, Inc., No. 08 Civ. 6469, 2011 WL 830624, at *1 (S.D.N.Y. March 9, 2011) (proprietary information sought for different proceeding); Copantitla v. Fiskardo Estiatorio, Inc., No. 09 Civ. 1608, 2010 WL 1327921, at *8 n.3 (S.D.N.Y. April 5, 2010) (proprietary information); Monsanto Co. V. Victory Wholesale Grocers, No. 08 CV 134, 2008 WL 2066449, at *2 (E.D.N.Y. May 14, 2008) (privileged information).

Here, PHL has failed to make the showing necessary to establish its standing.  To the extent that the communications at issue were made between PHL and one of the non-parties, PHL has represented that it will produce them, and so has no interest in preventing the subpoenaed entities from doing so.  (Tr. at 23-24; Defendants' Memorandum of Law in Support of Its Motion for Protective Order and/or to Quash Pursuant to F.R.C.P. Rules 26(c) and 45(c)(3) ("Def. Memo.") at 5-6).  Similarly, PHL has no proprietary interest in the internal communications of the non-parties.  A party's general desire to thwart disclosure of information by a non-party is simply not an interest sufficient to create standing.

Relying on cases from other jurisdictions, including Streck, Inc. v. Research & Diagnostic Systems, Inc., No. 8:06CV458, 2009 WL 1562851, at *3 (D. Neb. June 1, 2009), and Auto-Owners Insurance

5

Co. v. Southeast Floating Docks, Inc., 231 F.R.D. 426, 429 (M.D. Fla. 2005), PHL nevertheless argues that even if it does not have standing under Rule 45, it does under Rule 26 for purposes of seeking a protective order. (Defendant PHL Variable Insurance Company's Reply in Support of Its Motion for Protective Order and/or to Quash at 2-3). This is not a distinction recognized in this circuit. Moreover, it would be peculiar indeed if a party could circumvent the well-established standing requirements under Rule 45 simply by styling what is effectively a motion to quash as a motion for a protective order.

Because PHL lacks standing to challenge the subpoenas, its motion must be denied.

B. <u>Non-Parties Transamerica and SCOR</u>

Transamerica and SCOR plainly have standing to challenge the subpoenas served upon them, and they do so on the grounds that the information sought is irrelevant and that it would be unduly burdensome for them to be required to produce it.

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." <u>Condit v. Dunne</u>, 225 F.R.D. 100, 105 (S.D.N.Y. 2004); see also <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351

(1978). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The burden of demonstrating relevance is on the party seeking discovery. See, e.g., Mandell v. Maxon Co., No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007). However, "[g]eneral and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." Melendez v. Greiner, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003).

Given the broad definition of relevance in the context of discovery, the information sought by US Bank is relevant, even if much of it is only marginally so. For example, communications by PHL with reinsurers about cost of insurance increases for PAUL policies will have some relevance, even if they will be less critical than communications about the twelve specific PAUL policies at issue in this case. Likewise, communications internal to the reinsurers about PHL's conduct may not ultimately be admissible, but it may well lead to admissible evidence if, for instance, those communications reference contacts between PHL and the reinsurer which may or may not have been memorialized elsewhere.

The non-parties' burden arguments, however, are more

7

compelling, particularly in light of the limited relevance of the subpoenaed information. Each of Transamerica's reinsurance treaties, for example, covers multiple individual policies, sometimes numbering in the thousands. (Declaration of Stephanie Dunn in Support of Non-Party Transamerica Life Insurance Company's Motion to Quash Subpoena and/or Motion for Protective Order dated Sept. 19, 2012 ("Dunn Transamerica Decl."), ¶ 6). Yet Transamerica does not track whether its treaties cover PAUL policies in particular. (Dunn Transamerica Decl., ¶ 7). Furthermore, Transamerica's database does not contain a keyword search feature, so any search would have to be done by an outside vendor. (Dunn Transamerica Decl., ¶ 10).

SCOR faces similar challenges. Like Transamerica, it lacks the means to track which of its treaties include PAUL policies. (Declaration of Stephanie Dunn in Support of Non-Party SCOR Global Life Americas Reinsurance Company's Motion to Quash Subpoena and/or Motion for Protective Order dated Sept. 19, 2012 ("Dunn SCOR Decl."), ¶¶ 6, 7). While it can do some keyword searches on its database, its ability to do so is limited. (Dunn SCOR Decl., ¶ 10). Because SCOR has undergone several organizational changes, even locating responsive physical files and documents would be difficult. (Dunn SCOR Decl., ¶¶ 11, 12).

"[T]he court must limit the frequency or extent of discovery"

where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). In this case, the amount in controversy is in the multiple millions of dollars (Tr. at 8-9, 40-41); the parties each have substantial resources at their disposal; the basis for PHL's increase in the cost of insurance is an issue critical to the outcome of the case; and discovery is necessary to illuminate that issue. The parties dispute, however, the balance between the value of the discovery requested and the burden of production. In such circumstances, the prudent course is to allocate the costs of discovery in a manner that places the incentive on the parties to focus the production and minimize costs. See generally Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003); Rowe Entertainment, Inc. v. William Morris Agency, Inc., 205 F.R.D. 421, 429 (S.D.N.Y. 2002). Cost-shifting is particularly appropriate in the context of subpoenas, since Rule 45 directs courts to minimize the burden on non-parties. See Watts v. SEC, 482 F.3d 501, 509 (D.C. Cir. 2007); Solomon v. Nassau County, 274 F.R.D. 455, 460 (E.D.N.Y. 2011); MacNamara v. City of New York, No. 04 Civ. 9612, 2006 WL 3298911, at *5 (S.D.N.Y. Nov. 13, 2006); Prescient Acquisition Group, Inc. v. MJ

Publishing Trust, No. 05 Civ. 6298, 2006 WL 2996645, at *2 (S.D.N.Y. Oct. 13, 2006). The factors to be considered in determining whether cost-shifting is warranted include "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance." In re World Trade Center Disaster Site Litigation, No. 21 MC 100, 2010 WL 3582921, at *1 (S.D.N.Y. sept. 14, 2010). Here, each of these factors favors cost-shifting: neither Transamerica nor SCOR has any interest in the litigation; neither is in a better position than US Bank to bear the costs; and the litigation involves a purely private dispute. Further, PHL is in a position to craft a sampling protocol to help it in making a threshold determination whether the information it seeks will, in fact, be useful enough to proceed with broader discovery. Accordingly, US Bank shall bear the search, collection, and production costs associated with compliance with the subpoenas served upon Transamerica and SCOR.[2]

However, these non-parties shall bear their own costs of

---

[2] In some cases, it is appropriate to shift only a percentage of such costs to the requesting party. See Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 289 (S.D.N.Y. 2003) (shifting 25% of costs of responding to discovery demand to requesting party). However, given the fact that Transamerica and SCOR are entitled to heightened protection as non-parties with no stake in the litigation, and given the marginal relevance of the information requested, full shifting of these costs is warranted here.

reviewing the documents for privilege. Generally, it is not appropriate to shift such costs because "the producing party has the exclusive ability to control the cost of reviewing the documents." Zubulake, 216 F.R.D. at 290. Furthermore, I will enter an order pursuant to Rule 502(d) of the Federal Rules of Evidence that will preclude the disclosure of privileged documents in this case from constituting a waiver of privilege or of work product protection in this or any other proceeding, state or federal. Although Transamerica and SCOR are, of course, free to engage in as exacting a privilege review as they wish, entry of a Rule 502(d) order will give them the option of conducting a more economical analysis while minimizing the risk of waiver.

Conclusion

For the reasons set forth above, PHL's motion to quash, or in the alternative, for a protective order (Docket no. 107) is denied. Transamerica's motion to quash (Docket no. 98) and SCOR's motion to quash (Docket no. 94) are each denied upon the condition that US Bank bear the costs of search, collection, and production associated with compliance with the subpoenas.

SO ORDERED.

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

11

Dated:     New York, New York
           November 5, 2012

Copies mailed this date:

Khai LeQuang, Esq.
Melanie D. Phillips, Esq.
Orrick Herrington & Sutcliffe LLP
777 South Figueroa St., Suite 2200
Los Angeles, CA 90017

Philipp Smaylovsky, Esq.
Stephen G. Foresta, Esq.
Orrick Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019

Daniel L. Rasmussen, Esq.
Payne and Fears LLP
4 Park Plaza, Suite 1100
Irvine, CA 92614

Scott O. Luskin, Esq.
Payne and Fears LLP
801 South Figueroa St., Suite 1150
Los Angeles, CA 90017

Stephen J. Jorden, Esq.
Brian P. Perryman, Esq.
Jason H. Gould, Esq.
Waldemar J. Pflepsen, Jr., Esq.
Jorden Burt LLP
1025 Thomas Jefferson St., N.W.
Suite 400 East
Washington, D.C. 20007