```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
U.S. BANK NATIONAL ASSOCIATION,       :   12 Civ. 6811 (CM)(JCF)
a national association as             :
securities intermediary for LIMA      :       MEMORANDUM
ACQUISITION LP,                       :       AND ORDER
                                      :
               Plaintiff,             :
                                      :
     - against -                      :
                                      :
PHL VARIABLE INSURANCE COMPANY,       :
a Connecticut Corporation,            :
                                      :
               Defendant.             :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

In this, the sixth of seven discovery disputes that have been presented in this case so far, defendant PHL Variable Insurance Company ("PHL") moves to compel plaintiff U.S. Bank National Association ("US Bank") to produce documents in response to eight of PHL's requests for production of documents ("RFPs") and to supplement its responses to fifteen of PHL's requests for admission ("RFAs"). PHL's motion is granted in part and denied in part.[1]

Background

    A.   Facts

The factual background of this dispute is laid out in my November 5, 2012 Memorandum and Order. At issue are 12 policies (the "Policies") that US Bank acquired in December 2010 in connection with the acquisition by Lima LS plc (the general partner of Lima Acquisition LP) of five limited liability companies --

---

[1] The request for oral argument is denied.

which, together, owned 982 policies -- from Pacifica Group LLC ("Pacifica"). (Memorandum and Order dated Dec. 10, 2012 ("December 10 Order"), at 5; List of Policies, attached as Exh. 1 to First Amended Complaint ("FAC"); Plaintiff's Memorandum of Law in Opposition to PHL's Motion to Compel Production and Responses to Requests for Admission ("Pl. Memo.") at 3-4 & n.1). The relevant policies are universal life insurance policies which allow policyholders to pay as much money as they want into their policy accounts each month as long as the account balance is sufficient to cover policy charges, including a "cost of insurance charge." (FAC, ¶ 2). If the balance is not met, the policies will ultimately lapse. (FAC, ¶ 2). The policies at issue permit the insurer to adjust cost of insurance rates, but only based on certain specified factors, the most significant of which is mortality. (FAC, ¶ 4). US Bank alleges that, although life expectancy has increased, which should lead to a reduction in the cost of insurance, PHL has increased its cost of insurance rates. (FAC, ¶ 4). According to the plaintiff, PHL has done so both to increase its fees and to prompt policyholders to allow their policies to lapse rather than pay higher fees, thereby relieving PHL of the risk of ever having to pay out on the policies. (FAC, ¶ 7).

    B. <u>December 10 Order</u>

My December 10 Order is also relevant here, as part of the dispute centers on its interpretation. In the defendant's motion to compel filed in October 2012 (the parties' fifth discovery

dispute), PHL argued that its defenses of waiver, estoppel, or acquiescence required discovery into whether the plaintiff had "foreknowledge at the time it acquired the Policies that PHL had already increased, and might again increase, its cost of insurance rates." (Defendant's Memorandum of Law in Support of Its Motion to Compel Production of Documents and Responses to Interrogatories dated Oct. 19, 2012 ("Def. Oct. 19 Memo.") at 8 (emphasis omitted); Defendant PHL Variable Insurance Company's Reply in Support of Its Motion to Compel Production of Documents and Responses to Interrogatories dated Nov. 1, 2012, at 6).  US Bank countered by agreeing to produce documents about the acquisition of the policies "to the extent that they also concern PHL's cost of insurance rate increases, this lawsuit, or the [P]olicies." (December 10 Order at 6).  I granted this branch of PHL's motion, holding that discovery into "[t]he circumstances surrounding the plaintiff's acquisition of the [P]olicies" was appropriate because it was relevant to "establishing that US Bank had foreknowledge of th[e] alleged breach [of the terms of the Policies] at the time it acquired the [P]olicies," but nonetheless acquired them and accepted their benefits.  (December 10 Order at 7).

It is clear from the context of the order, as well as a fair reading of its language, that documents relating to "circumstances surrounding the [] acquisition of the [P]olicies" are relevant only insofar as they might lead to admissible evidence regarding US Bank's foreknowledge of cost of insurance increases.  (December 10 Order at 7).  Indeed, this is precisely what PHL argued in the

motion to compel that resulted in the December 10 Order. To the extent that the December 10 Order was ambiguous on that point, it is now clarified.

In addition, the December 10 Order held that discovery regarding the origination of the policies is not relevant unless and until PHL asserts a so-called "STOLI" defense.[2] Such a defense, the order notes, requires that PHL seek a declaratory judgment, cease collecting premiums, and tender the premiums paid to the court. (December 10 Order at 8-10). As of the filing of this motion to compel, PHL has not done advanced such a defense.

Discussion

    A.    Production

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for the purpose of discovery, is an extremely broad concept." Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). It "'encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Schoolcraft v. City of New York, No. 10 Civ. 6005, 2012 WL 2161596, at *12 (S.D.N.Y. June 14, 2012) (quoting Oppenheimer Fund Inc., 437 U.S. at 351). "Relevant information need not be admissible at the trial if the discovery

---

[2] "STOLI" is an acronym for "stranger-oriented life insurance," which may be prohibited by certain state laws. (Pl. Memo. at 2).

4

appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The burden of demonstrating relevance is on the party seeking discovery. See, e.g., King County, Washington v. IKB Deutsche Industriebank AG, No. 09 Civ. 8387, 2012 WL 3553775, at *1 (S.D.N.Y. Aug. 17, 2012).

Once relevance has been shown, it is up to the responding party to justify curtailing discovery. Condit, 225 F.R.D. at 106. "[T]he court must limit the frequency or extent of discovery" where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." Melendez v. Greiner, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003). "Instead, the objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive." Tourtelotte v. Anvil Place Master Tenant, LLC, No. 3:11CV1454, 2012 WL 5471855, at *1 (D.

5

Conn. Nov. 9, 2012) (quoting In re Priceline.com Inc. Securities Litigation, 233 F.R.D. 83, 85 (D. Conn. 2005)).

    1.   RFP No. 77

The request seeks "[a]ll drafts of the 2010 Listing Particulars" (Defendant's Second Set of Requests for Production of Documents dated Sept. 18, 2012 ("Second RFPs"), attached as Exh. 10 to Declaration of Melanie D. Phillips dated March 22, 2013 ("Phillips Decl."), at 5), a document created by Lima LS plc relating to "the private placement of securities" by the company (Pl. Memo. at 13). US Bank now agrees to produce the final 2010 Listing Particulars, but asserts that all drafts are "clearly privileged or work product." (Pl. Memo. at 14). I find this "agreement" puzzling, because PHL did not ask for production of the final version of the document; indeed, it appears that PHL is already in possession of it, having attached what appears to be the final 2010 Listing Particulars to its Second RFPs. (Listing Particulars dated Dec. 21, 2010, attached as Exh. A to Second RFPs). In any case, I understand US Bank's statement to mean that it agrees to produce the final 2010 Listing Particulars and all drafts not covered by attorney-client or work product privilege (and agrees that the drafts withheld on the basis of such privilege will be included in US Bank's privilege log).[3] I therefore deny PHL's motion to compel production in response to RFP No. 77 as moot.

---

[3] Contrary to US Bank's argument, the 2010 Listing Particulars are relevant, as discussed below.

2.  RFP Nos. 78, 79, 80, 81, 82 and 84

These RFPs relate to the portfolio of assets acquired from Pacifica (the "Pacifica Portfolio"):

> RFP No. 78 -- "The October 2010 agreement to negotiate the terms of the purchase and sale of the Pacifica Portfolio."
>
> RFP No. 79 -- "All written bids or offers to purchase the Pacifica Portfolio."
>
> RFP No. 80 -- "All documents reflecting or concerning any due diligence and/or investigation performed in connection with the purchase and sale of the Pacifica Portfolio."
>
> RFP No. 81 -- "All offerings, solicitations, presentations, prospectuses, pitchbooks, proposals, reports, advertisements, press releases, analyses, sales materials, or marketing materials referencing or concerning the Pacifica Portfolio or any of its underlying assets."
>
> RFP No. 82 -- "The audited financial statements of Lima LS plc for the years 2010, 2011, and 2012."
>
> RFP No. 84 -- The operating agreements or comparable documents for the five limited liability companies" acquired in order to purchase the Pacifica Portfolio.

(Second RFPs at 5-6). According to PHL, these documents are discoverable because "one would reasonably expect [them] to contain information relevant to" its acquiescence defense. (Defendant's Memorandum of Law in Support of Its Motion to Compel Production of Documents and Responses to Its Request for Admissions ("Def. Memo.") at 8). US Bank responds that it has already produced all documents concerning the Pacifica Portfolio relating to the cost of insurance increases or the valuation of the policies, and that PHL is attempting to require production of "nearly all documents relating to the acquisition from Pacifica and the several hundred

policies in its portfolios." (Pl. Memo. at 11). PHL does not seem to disagree with US Bank's characterization, stating that the RFPs at issue here are an attempt to "understand[] the process and circumstances of the acquisition" to lead to an "understanding [of] the entire transaction," and that "all documents concerning [US] Bank's acquisition of the Policies are relevant and discoverable." (Defendant's Reply in Support of Its Motion to Compel Production of Documents and Responses to Its Request for Admission ("Def. Reply") at 3; Letter of Jason H. Gould dated Jan. 11, 2013, attached as Exh. 7 to Phillips Decl., at 1).

US Bank is correct that PHL advances too broad an interpretation of what is relevant here. Documents surrounding the acquisition are relevant to the extent that they are reasonably calculated to lead to admissible evidence regarding US Bank's foreknowledge at the time it acquired the Policies that PHL had already increased its cost of insurance rates and might do so again. PHL argues that it deserves discovery regarding US Bank's "acceptance of the benefits of ownership" of the Policies, such as the marketing of those Policies. (Def. Reply at 6). However, the fact that US Bank acquired the Policies, paid the premiums and, consequently, accepted the Policies' benefits is not truly at issue in the acquiescence defense; as PHL's own prior motion to compel and the December 10 Order make clear, what matters is US Bank's "foreknowledge" of cost of insurance increases at the time of acquisition. (Def. Oct. 19 Memo. at 8; December 10 Order at 7).

Nevertheless, I cannot take at face value US Bank's assertion

that it has produced all documents responsive to these RFPs "relating to the [cost of insurance] increases" or "the valuation of the Policies." (Pl. Opp. at 11). US Bank persists in asserting that the 2010 Listing Particulars are irrelevant (Pl. Opp. at 13-14); however, PHL notes that the document states that "one life insurance company publicly announced an increase in its cost of insurance rates for certain universal life insurance policies earlier this year," and proceeds to analyze the ramifications of that increase. (Def. Memo. at 6, Def. Reply at 5 n.4; 2010 Listing Particulars at 16). Although this document does not mention the Policies by name, it is clearly relevant -- the company mentioned might well be PHL. The plaintiff's failure to recognize this could indicate, as PHL fears, that US Bank has failed to produce relevant documents that do not specifically discuss the Policies by name or documents that contain both relevant and irrelevant material. (Def. Memo. at 10; Def. Reply at 3-4 & n.3).

Therefore, to the extent that it has not yet done so, US Bank must produce all documents responsive to these RFPs regarding cost of insurance increases or regarding the valuation of the Policies, whether or not those documents mention the Policies by name or also contain irrelevant information. If it has already done so, US Bank must provide PHL a certification by counsel to that effect.

    3.   <u>RFP No. 83</u>

This request asks for "Organization charts for Lima LS plc, Lima Acquisition, LP, Lima Holdings, LLC, Fortress Investment Group (UK) Limited, and Fortress Investment Group, LLC, including but not

limited to the Drawbridge Special Opportunities Fund, Life Settlements Fund, and Life Settlements Fund MA." (Second RFPs at 6). PHL asserts in one of its meet-and-confer letters that this RFP is designed to reveal "the names of persons it may wish to depose, and additional persons it may wish to have searched for relevant documents." (Letter of Jason H. Gould dated Nov. 16, 2012, attached as Exh. 1 to Declaration of Jason H. Gould dated Feb. 28, 2013 ("Gould Decl.") at 2). Although its opening brief makes no serious attempt to establish the relevance of this request, PHL's reply basically parrots this explanation. (Def. Memo. at 8-9; Def. Reply at 6); See, e.g., IKB Deutsche Industriebank AG, 2012 WL 3553775, at *1 (stating that burden of demonstrating relevance is on party seeking discovery). US Bank, for its part, argues that the five entities named "engage in numerous far-ranging activities that have nothing to do with the life insurance policies at issue here," and notes that it has offered to provide PHL "with a list of employees involved in 'life settlement activities.'" (Pl. Memo. at 13).

First, this type of information is more efficiently discovered through an interrogatory. See Essex Insurance Co. v. Interstate Fire & Safety Equipment Co./Interstate Fire & Safety Cleaning Co., 263 F.R.D. 72, 75 (D. Conn. 2009) ("One important purpose of interrogatories is to obtain information necessary to use other discovery devices effectively, including identifying witnesses whose depositions should be taken . . . ." (alteration in original) (internal quotations marks omitted)); cf. Local Rules of the United

States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule") 33.3 (restricting interrogatories at the commencement of discovery to "seeking names of witnesses with knowledge of information relevant to the subject matter of the action" and a few other purposes).  But here, no interrogatory is needed, because US Bank has offered to provide PHL with a list of the employees of these five entities who were involved in "life settlement activities."  Thus, any relevant information encompassed by this RFP "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).  US Bank is ordered to provide such a list, and the motion to compel as to RFP No. 83 is denied.

    B.    <u>Requests for Admissions 25-30 and 32-34</u>

    PHL asks US Bank to supplement its responses to 9 of its RFAs:

    RFA No. 25: "Lima Acquisition LP is a limited purpose entity and was established for the purpose of holding interests in portfolios of life insurance policies and certain other instruments related thereto."

    RFA No. 26: "Lima LS plc acquired ownership interests in the Subject Policies pursuant to the Unit Purchase Agreement."

    RFA No. 27: "Lima Acquisition LP acquired ownership interests in the Subject Policies pursuant to the Unit Purchase Agreement."

    RFA No. 28: "Each of the Subject Policies is part of the Pacifica Portfolio."

    RFA No. 29: "Lima LS plc was established as a special purpose vehicle for the purposes of owning an interest in the Pacifica Assets and issuing securities backed by those assets."

    RFA No. 30: "Lima LS plc releases funds to Lima Acquisition LP to enable Lima Acquisition LP to meet its future obligations, including paying premiums on the

11

> Subject Policies and other Portfolio Assets."
>
> RFA No. 32: "Lima LS plc was the purchaser and Pacifica Group LLC was the seller of the Pacifica Portfolio pursuant to the Unit Purchase Agreement."
>
> RFA No. 33: "At the time of the Unit Purchase Agreement, Pacifica Group LLC was an affiliate of KBC Bank NV, and its subsidiary, KBC Financial Products USA Inc."
>
> RFA No. 34: "The total Portfolio Assets Lima LS plc acquired at the time of, and pursuant to, the Unit Purchase Agreement consisted of approximately 980 life insurance policies originated through various origination programs between November 2004 and October 2008, 21 premium finance loans, and two options to purchase life insurance policies."[4]

(Defendant's First Set of Requests for Admissions dated Sept. 18, 2012, attached as Exh. 11 to Phillips Decl., at 5-6).

These RFAs are directed at the acquisition of the Pacifica Portfolio -- specifically the structure of the deal. For the most part, they are not focused on the specific policies at issue here (RFA Nos. 26 and 28 are the exception). None focuses on the relevant aspect of the acquisition: what US Bank knew at the time of the acquisition regarding cost of insurance increases. PHL argues that the information requested might "shed light on how [US Bank] . . . weighed the risks and benefits of [the] purchase [of the Policies] and valued the Policies as an underlying asset in the Pacific[a] Portfolio." (Def. Reply at 7). It is unclear to me how these RFAs reveal the perceived risks or benefits or the valuation of the Policies. How, for example, would an affirmative answer to

---

[4] In its moving papers, PHL also sought supplementation for RFAs 2 through 7. (Def. Memo. at 11). After the motion was filed, US Bank agreed to supplement its answers to RFAs 1 -7. (Pl. Memo. at 15 n.5. Conduct like this can subject the producing party to the cost-shifting sanction of Rule 37(a)(5)(A).

12

RFA No. 25, which asks whether Lima Acquisition LP was established to hold interests in portfolios of life insurance policies, shed light on the valuation of the policies at issue? Instead, as US Bank points out, at least some of these RFAs seem to be directed at PHL's unpled STOLI defense. (Pl. Memo. at 8; Letter of Jason H. Gould dated July 12, 2012, attached as Exh. 2 to Phillips Decl., at 6-7). Therefore, at this juncture, they seek irrelevant information. (December 10 Order at 8-10). The branch of the motion to compel seeking supplementation of responses to these RFAs is therefore denied.

    C.    <u>Compliance with December 10 Order</u>

The decretal paragraph of the December 10 Order states, "US Bank's motion to compel . . . is granted in part and denied in part to the extent indicated above. The plaintiff shall respond to US Bank's discovery requests as set forth in this order by January 7, 2013." (December 10 Order at 17).

PHL complains that "January 7, 2013 passed without production of any additional documents from [the] [p]laintiff," and seeks an order compelling such production, as well as payment of the expenses PHL incurred in bringing this motion. (Def. Memo. at 13-15 (emphasis omitted)). US Bank, for its part, has argued that "[n]owhere does the order say" that "any such production must be completed by January 7, 2013." (Letter of Melanie D. Phillips dated Jan. 8, 2013, attached as Exh. 3 to Gould Decl., at 2). It asserts that the December 10 Order "necessitated the production of only a small number of additional documents," and, although it is

13

not clear from its submission whether these have been produced, US Bank has apparently been "producing documents on a rolling basis." (Pl. Memo. at 16-17).

Clearly, there is a scrivener's error in the decretal sentence quoted above. It should have read that PHL's motion to compel was granted in part and that "[t]he plaintiff shall respond to PHL's discovery requests as set forth in this order by January 7, 2013." Had it been drafted correctly, its meaning should have been clear: compliance with the December 10 Order was to have been completed by January 7, 2013. Because of the possibility of ambiguity created by the error noted, I will not sanction US Bank pursuant to Rule 37(b)(2) by ordering payment of PHL's expenses.

Conclusion

Although "courts see the discovery rules as a mandate for counsel to act cooperatively," Securities and Exchange Commission v. Collins & Aikman Corp., 256 F.R.D. 403, 415 (S.D.N.Y. 2009) (internal quotation marks omitted), "[t]he costs associated with adversarial conduct in pre-trial discovery have become a serious burden to the American judicial system," Sedona Conference Cooperation Proclamation, 10 Sedona Conf. J. 331, 331 (2009 Supp.). Both the Federal Rules of Civil Procedure and our Local Rules encourage cooperation among counsel to efficiently resolve discovery disputes without intervention from the court. See Local Civil Rule 26.4 ("Counsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process and to be courteous in their

dealings with each other . . . ."); <u>Board of Regents of University of Nebraska v. BASF Corp.</u>, No. 4:04 CV 3356, 2007 WL 3342423, at *5 (D. Neb. Nov. 5, 2007) ("The overriding theme of recent amendments to the discovery rules has been open and forthright sharing of information by all parties to a case with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness as much as practicable. . . . If counsel fail in this responsibility -- willfully or not -- these principles of an open discovery process are undermined, coextensively inhibiting the courts' ability to objectively resolve their clients' disputes and the credibility of its resolution."). Unfortunately, that has not happened in this case and I have been faced with six discovery disputes in seven months.[5] I urge the litigants to take seriously their obligation to cooperate in discovery so as to avoid burdening the Court with repeated disputes.

PHL's motion to compel (Docket no. 171) is granted in part and denied in part as indicated above. The plaintiff shall respond to PHL's discovery requests as set forth in this order, and shall complete any production required by the December 10 Order, by May 17, 2013.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

---

[5] The parties' first discovery dispute occurred before the case was transferred to this Court.

Dated:     New York, New York
           April 22, 2013


Copies mailed this date:

Khai LeQuang, Esq.
Orrick Herrington & Sutcliffe LLP
2050 Main Street, Suite 1100
Irvine, CA 92614

Melanie D. Phillips, Esq.
Orrick Herrington & Sutcliffe LLP
777 South Figueroa St., Suite 2200
Los Angeles, CA 90017

Philipp Smaylovsky, Esq.
Stephen G. Foresta, Esq.
Shaila R. Diwan, Esq.
Orrick Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019

Stephen J. Jorden, Esq.
Brian P. Perryman, Esq.
Jason H. Gould, Esq.
Waldemar J. Pflepsen, Jr., Esq.
Jorden Burt LLP
1025 Thomas Jefferson St., N.W.
Suite 400 East
Washington, D.C. 20007