```
UNITED STATES DISTRICT COURT                  (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
U.S. BANK NATIONAL ASSOCIATION,         :  12 Civ. 6811 (CM) (JCF)
a national association as               :
securities intermediary for LIMA        :       MEMORANDUM
ACQUISITION LP,                         :       AND ORDER
                                        :
                    Plaintiff,          :
                                        :
     - against -                        :
                                        :
PHL VARIABLE INSURANCE COMPANY,         :
a Connecticut Corporation,              :
                                        :
                    Defendant.          :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Defendant PHL Variable Insurance Company ("PHL") seeks a protective order prohibiting plaintiff U.S. Bank National Association ("US Bank") "from providing any documents produced by PHL in this matter and designated as Confidential" to the New York State Department of Financial Services ("NYDFS") pursuant to a subpoena duces tecum that NYDFS issued to the Fortress Investment Group ("Fortress"), an entity of which Lima Acquisition LP is purportedly an affiliate or subsidiary.  (Memorandum of Law in Support of Motion for Protective Order ("Def. Memo.") at 6; E-mail of Robert Underhill dated March 28, 2013 ("Underhill E-Mail"), attached as part of Exh. 6 to Declaration of Khai LeQuang dated April 8, 2013 ("LeQuang Decl.")).  In a period of nine months, this is the seventh discovery dispute on which the parties have sought court intervention.  PHL's motion is granted.

Background

At issue in this case are certain universal life insurance

1

policies issued by PHL and owned by US Bank.  US Bank alleges that PHL increased certain policy-related charges in violation of the policies' terms.[1]

Production of information deemed "confidential" in this litigation is governed by a protective order.  That agreement limits disclosure of such information, called "Confidential Information," to certain people or entities, called "Qualified Person[s]."  (Consolidated/Amended Stipulated Protective Order Governing the Production and Exchange of Confidential Information dated Jan. 14, 2013 ("CPO"), ¶¶ 2, 5).  It further requires a party who has received Confidential Information to inform the party that produced that information if the receiving party is "requested or required (by oral questions, interrogatories, requests for information or documents in a legal proceeding, subpoena, civil investigative demand, other similar process, or rule of law) to disclose any Confidential Information in another action or proceeding," and prohibits the receiving party from disclosing any Confidential Information "except pursuant to the order of a court of competent jurisdiction directing [its] disclosure," unless the producing party waives the protections of the CPO.  (CPO, ¶ 15).

On March 15, 2013, NYDFS issued a <u>subpoena duces tecum</u> to the Fortress Investment Group pursuant to New York Financial Services Law §§ 301(b) and 306, and New York Insurance Law § 2404.  It directed production to New York's Superintendent of Financial

---

[1] Further details can be found in my Memorandum and Order dated November 5, 2012.

Services of "all documents that form the basis of the complaint that you lodged with [NYDFS] . . . against . . . [PHL]." (Subpoena Duces Tecum dated March 15, 2013 (the "Subpoena"), attached as Exh. 2 to Declaration of Jason H. Gould dated March 28, 2013 ("Gould Decl.")). Upon being informed of the Subpoena, PHL objected to the production. (E-mail of Khai LeQuang dated March 18, 2013, attached as part of Exh. 3 to Gould Decl.; E-mail of Waldemar J. Pflepsen, Jr., dated March 19, 2013, attached as part of Exh. 3 to Gould Decl.). US Bank requested that I clarify its obligations under the CPO, taking the position that paragraph 15 of the CPO permitted compliance with the Subpoena, which it characterized as a court order, unless PHL sought a protective order. (Letter of Stephen G. Foresta dated March 25, 2013, attached as Exh. 4 to Gould Decl., at 2-3). In response, I amended the CPO to permit a party to produce documents, including those with Confidential Information, pursuant to a subpoena from a government agency, provided that the party receiving the subpoena notified its adversary and deferred production for three business days so that its adversary could seek to quash or limit the subpoena. (Memorandum Endorsement dated March 26, 2013).

    PHL then questioned US Bank about the scope of the Subpoena, noting that (1) it is directed to a non-party, Fortress, which should not have possession of any documents produced in this action, and (2) in seeking documents forming the basis of US Bank's complaint to NYDFS, it should not cover any documents produced by PHL after the date of that complaint. (E-mail of Jason H. Gould

dated March 27, 2013, attached as part of Exh. 5 to Gould Decl.). US Bank sought clarification of the scope from NYDFS, which stated that the Subpoena was intended to include all of the subsidiaries and affiliates of Fortress, including Lima Acquisition LP and US Bank, and to include all documents obtained from PHL even if they were received after the complaint of February 2, 2012. (Underhill E-mail; E-mail of Daniel S. Alter dated March 28, 2013, attached as part of Exh. 6 to LeQuang Decl.).  PHL then filed this motion.

Discussion

PHL's overarching concern is that, once Confidential Information is provided to NYDFS, there is no guarantee it will remain confidential, as NYDFS is not a signatory to the CPO. (Def. Memo. at 2; Reply in Support of Motion for Protective Order ("Def. Reply") at 2-3).  PHL therefore presses the two arguments mentioned above.  First, it contends that a protective order prohibiting US Bank from disclosing Confidential Information (as defined in the CPO) should be granted because the Subpoena is directed not to US Bank, but to Fortress, who is neither a party to this litigation nor a Qualified Person to whom confidential documents may be disclosed.  Therefore, documents covered by the CPO cannot be in Fortress' possession, custody, or control. Additionally, it argues that the Subpoena cannot require production of documents produced by PHL to US Bank after February 2, 2012. (Def. Memo. at 5).  To US Bank's suggestion that any questions about the scope of the Subpoena have been clarified by NYDFS via an e-mail exchange with counsel from Fortress (Plaintiff U.S. Bank National Association's

4

Opposition to Defendants PHL Variable Insurance Company's Motion for Protective Order ("Pl. Memo.") at 3-4), PHL asserts that the informal e-mail exchange is not a legal basis for allowing US Bank "to disregard the CPO by providing [NYDFS] with documents in response to a subpoena issued to Fortress" (Def. Reply at 1-2). PHL also points out that US Bank "has not . . . conceded . . . that it and Fortress . . . are related legal entities for the purposes of responding" to PHL's documents requests.  (Def. Reply at 2).

It is axiomatic that interpretation of the scope of a subpoena must focus on the text of the document.  See, e.g., Flatow v. The Islamic Republic of Iran, 196 F.R.D. 203, 206 (D.D.C. 2000) ("Any analysis of th[e issue of the scope of a subpoena] must begin with the text of the subpoena."), aff'd, 305 F.3d 1249 (D.C. Cir. 2002). The Subpoena here was issued to Fortress, alone, not to Fortress "and all of its subsidiaries and affiliates with responsive information, including Lima Acquisition LP and its securities intermediary."  (Underhill E-mail).  Likewise, it seeks "all documents that form the basis of the complaint that [Fortress] lodged with [NYDFS] against . . . [PHL]" (Subpoena), not "all documents that were obtained [by US Bank] from [PHL] even if such documents were received after" February 2, 2012 (Underhill E-Mail).

The question thus becomes whether this Subpoena, which by its terms does not require US Bank to produce any documents, should be interpreted to compel such production based on representations made by NYDFS to Fortress' general counsel.  Although it is clear that a court may limit a subpoena in response to an objection from an

5

interested party, see, e.g., Flatow v. The Islamic Republic of Iran, 201 F.R.D. 5, 8-9 (D.D.C. 2001), aff'd in relevant part, 305 F.3d 1249 (D.C. Cir. 2002), US Bank has provided no authority that counsels in favor of my expanding the scope of this subpoena in response to PHL's motion. Moreover, allowing such enlargement based on post hoc, out-of-court representations by the issuer of a subpoena is not prudent policy. Therefore, PHL's motion is granted, and US Bank is prohibited from providing, pursuant to the Subpoena, NYDFS with any documents produced by PHL in this matter and designated as Confidential Information.[2]

Conclusion

For the foregoing reasons, PHL's motion for a protective order (Docket no. 182) is granted.

SO ORDERED.

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          April 22, 2013

Copies mailed this date:

Khai LeQuang, Esq.
Orrick Herrington & Sutcliffe LLP
2050 Main Street, Suite 1100
Irvine, CA 92614

---

[2] This may be a pyrrhic victory for PHL, however. Presumably, NYDFS can simply issue a properly-drafted subpoena to Fortress or US Bank to compel production of documents containing confidential information.

6

Melanie D. Phillips, Esq.
Orrick Herrington & Sutcliffe LLP
777 South Figueroa St., Suite 2200
Los Angeles, CA 90017

Philipp Smaylovsky, Esq.
Stephen G. Foresta, Esq.
Shaila R. Diwan, Esq.
Orrick Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019

Stephen J. Jorden, Esq.
Brian P. Perryman, Esq.
Jason H. Gould, Esq.
Waldemar J. Pflepsen, Jr., Esq.
Jorden Burt LLP
1025 Thomas Jefferson St., N.W.
Suite 400 East
Washington, D.C. 20007