# EXHIBIT D

266

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

CASE NO. 12 Civ. 6811 (CM) (JCF)

---------------------------------------*

U.S. BANK NATIONAL ASSOCIATION,            DAY 2

a national association, as securities      VOL. II

intermediary for LIMA AQUISITION LP,

        Plaintiff,

   vs.

PHL VARIABLE INSURANCE COMPANY,

        Defendant.

---------------------------------------*

CONFIDENTIAL

VIDEOTAPED DEPOSITION OF

MATS OLA ERIKSSON

Wednesday, August 7, 2013

New York, New York

8:08 a.m.

309

1   those categories again for me, please?

2       **A   I mean, they're listed in the, in the**

3   **complaint, so I'll tell you what I can remember now,**

4   **but otherwise I would just refer to the complaint.**

5          **Damages for the increased cost of**

6   **insurance rates and the extra payments that need to**

7   **be paid.  And the effect that it's had on the**

8   **valuation of policies.  And attorneys' fees.**

9       Q   Thank you.

10          Has Fortress computed a specific dollar

11  amount for the first category of damages, increased

12  COI rates and the extra premiums paid?

13          MS. SOLOMON:  I instruct you not to

14      include in your answer anything that you have

15      done for or at the direction of counsel.

16      **A   So based on that, I will not be able to**

17  **answer the question.**

18      Q   Have you seen a computation of damages?

19          MS. SOLOMON:  The same instruction.

20      **A   We've done work with our lawyers or at the**

21  **direction of our lawyers.**

22      Q   Are you, based on the advice of your

CONFIDENTIAL

Eriksson, Mats Ola - Vol. II					August 7, 2013

310

1   counsel, declining to answer whether or not Fortress

2   has done a computation of damages in this case?

3       **A    I'm not sure how, how to answer, but we've**

4   **done work, but it's been on the instruction of our**

5   **counsel.**

6       Q    Fortress has done a computation of

7   damages, but you're going to decline to discuss that

8   with me?

9       **A    Yes.**

10      Q    Based on --

11      **A    It's been done on the instruction of our**

12  **counsel by the computation.**

13      Q    Are you going to decline to discuss with

14  me, based on the advice of your counsel, what

15  categories of damages were done in that computation?

16      **A    Yes.**

17      Q    And you're going to decline to discuss

18  with me, based on the advice of your counsel, what

19  specific dollar figures were reached in that

20  computation?

21      **A    Yes.**

22      Q    And you're going to decline to discuss

311

1  with me, based on the advice of your counsel, what
2  methodology was employed in computing those damages?
3       A    Yes.
4       Q    Will you tell me who was involved in the
5  computations?
6            THE WITNESS:  Can I answer that question?
7            MS. SOLOMON:  Uh-hum.
8       **A    I would have been involved, James Rouse,**
9  **Gary Lo, Andy Berman, and Regang Ou.  There may have**
10 **been others, but those are the names I can remember**
11 **now.**
12      Q    The names that principally come to mind
13 for you are yourself, Mr. Berman, Mr. Rouse, Mr. Lo
14 and Mr. Ou?
15      A    Yes.
16      Q    Am I pronouncing that right?
17      A    Ou.
18      Q    Ou.
19           Are you going to decline, on the advice of
20 your counsel, to tell me what documents you employed
21 in order to reach those computations of damages?
22      A    Yes.

312

1      Q    Will you tell me when the computations
2   were made?
3      **A    They would have been made at or about the**
4   **time the complaint was filed.  And we've also done**
5   **it subsequently.**
6      Q    Do you know how many times, subsequent to
7   the initial computation, the subsequent computations
8   were?
9      **A    No.  No, I don't.**
10     Q    Does it -- does Fortress do so
11  periodically?
12     **A    It has been done from time to time, but**
13  **it's not like a set interval.**
14     Q    Has Fortress retained any outside
15  consultants or experts to assist it in the
16  computation of damages?
17     **A    We will use expert witnesses.**
18     Q    You have or you will?
19     **A    We have retained expert witnesses.**
20     Q    Will you tell me which expert witnesses
21  those are?
22          MS. SOLOMON:  Anything that you've learned

CONFIDENTIAL

Eriksson, Mats Ola - Vol. II                                August 7, 2013

313

1        from counsel should be excluded from your
2        response to the question.  If you know it
3        otherwise, you may answer the question.
4        **A    I think I know Alvarez & Marsal otherwise.**
5        Q    Will Fortress use representatives of
6    Alvarez & Marsal to testify at a trial of this case?
7        **A    I don't know.**
8        Q    Are you aware of whether Fortress has
9    actually disclosed to PHL its computations of
10   damages within the course of this lawsuit?
11       **A    I don't know.**
12       Q    Do you know whether Fortress has an
13   obligation to disclose a computation of damages to
14   PHL in the course of this lawsuit?
15       **A    It -- I'm not a specialist or a lawyer for**
16   **these purposes, so you'd have to ask our counsel.**
17   **But I think to the extent that it's privileged, no.**
18       Q    Is it Fortress' position that a
19   computation of damages is privileged information?
20       **A    I have no view on that, you would have to**
21   **ask our counsel.**
22       Q    Do you know when Fortress intends to

CONFIDENTIAL

Eriksson, Mats Ola - Vol. II                                         August 7, 2013

314

1    disclose a computation of damages to PHL?

2         **A    Again, I would have to refer you to our**

3    **counsel.**

4              MR. PERRYMAN:  Let's introduce what's been

5         previously marked 39, PHL 39.

6              THE WITNESS:  Thank you.

7    BY MR. PERRYMAN:

8         Q    These are plaintiff's initial -- initial

9    disclosures in this lawsuit.  And if I can direct

10   you to part 3 of those initial disclosures.  They're

11   on page 4.  Part 3 is the Damages section.  Do you

12   see that?

13        **A    Yes.**

14        Q    And these initial disclosures are dated

15   February 8, 2012, on page 5 of the signature block.

16   Do you see that?

17        **A    Yep.**

18        Q    And they're represented on the Proof of

19   Service, the next page over, as having been served

20   on February 8, 2012, correct?

21        **A    Sorry, where?**

22        Q    The Proof of Service says that a

315

1   representative of Orrick Herrington & Sutcliffe LLP

2   served the following documents on February 8, 2012,

3   and it describes the following document as the Rule

4   26(a)(1) initial disclosures, correct?

5       **A    Yes.**

6       Q    Okay.  If I can direct you to the sentence

7   in Item 3, on page 4, that reads:  Plaintiff is

8   unable to ascertain the exact amount of the cost of

9   insurance rate increases at this time as defendant

10  has failed and refused to provide that information

11  to plaintiff.  Do you know whether that statement

12  remains true today?

13      **A    Yes, to some extent.**

14      Q    And the same paragraph says, in the last

15  sentence on page 5, that actuarial analyses or other

16  policy valuations will refresh -- reflect the

17  diminution in the value of the policies as a result

18  of defendant's improper cost of insurance rate

19  increases.

20           Has Fortress or Lima or U.S. Bank

21  performed those actuarial analyses for other policy

22  valuations?

316

1    **A    We have performed analysis at the**
2    **direction of our counsel.**
3        Q    Would those sorts of actuarial analyses
4    and policy valuations be the sort of computations
5    that you have declined to describe to me today?
6        **A    Yes.**
7        Q    Does Fortress or Lima or U.S. Bank seek
8    declaratory relief in the litigation?
9        **A    Yes.**
10       Q    What sort of declaratory relief is it
11   seeking?
12       **A    That future rates aren't increased**
13   **improperly.**
14            **I think the specifics are in the**
15   **complaint, so we should look there if I'm not**
16   **describing it accurately.**
17       Q    How does -- how does plaintiff know the
18   basis for any potential PHL future rate adjustments?
19            MS. SOLOMON:  Objection.
20       **A    I'm not following that question.**
21       Q    Well, you indicated that the declaration
22   you're seeking is that future rates aren't increased

CONFIDENTIAL

Eriksson, Mats Ola - Vol. II                              August 7, 2013

348

1                    C E R T I F I C A T E

2

3         I, JOSEPHINE H. FASSETT, a Registered

4    Professional Reporter, Certified Court Reporter, and

5    Notary Public within and for the State of New York,

6    do hereby certify that the witness, whose videotaped

7    deposition is hereinbefore set forth, was first duly

8    sworn by me on the date indicated, and that the

9    foregoing deposition is a true and accurate record

10   of the testimony given by such witness.

11

12        I FURTHER CERTIFY that I am not employed

13   by nor related to any of the parties to this action

14   by blood or marriage, and that I am in no way

15   interested in the outcome of this matter.

16

17                   _____

18                   JOSEPHINE H. FASSETT, RPR, CCR

19                   NCRA License No. 32148

20                   CCR License No. 30XI00098400

21                   New York Notary Public

22