```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - :
US BANK NATIONAL ASSOCIATION,      : 12 Civ. 6811 (CM) (JCF)
a national association as          :
securities intermediary for LIMA   :
ACQUISITION LP,                    :
                                   :
            Plaintiff,             :
                                   :
     - against -                   :
                                   :
PHL VARIABLE INSURANCE COMPANY,    :
a Connecticut Corporation,         :
                                   :
            Defendant.             :
- - - - - - - - - - - - - - - - - - :
U.S. BANK, as securities           : 13 Civ. 1580 (CM) (JCF)
intermediary,                      :
                                   :        MEMORANDUM
            Plaintiff,             :        AND  ORDER
                                   :
     - against -                   :
                                   :
PHL VARIABLE INSURANCE COMPANY,    :
                                   :
            Defendant.             :
- - - - - - - - - - - - - - - - - - :
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

As laid out in numerous prior orders resolving discovery disputes between these parties, this case concerns purportedly improper increases in cost of insurance ("COI") rates imposed by defendant PHL Variable Insurance Company ("PHL") on certain universal life insurance policies acquired by Lima Acquisition, LP, an entity for which plaintiff U.S. Bank National Association ("U.S. Bank") acts as securities intermediary.  PHL has now filed two

1

identical motions in each of these related cases.  The first seeks to preclude evidence of the damages claimed by U.S. Bank because it has not provided "a computation of any category of damages [] claim[ed], as required under Rule 26 [of the Federal Rules of Civil Procedure] and demanded by PHL in additional discovery requests." (Defendant PHL Variable Insurance Company's Memorandum of Law in Support of its Motion to Preclude Evidence of Plaintiff's Claimed Damages ("Def. Preclusion Memo.") at 1).  The second seeks to compel U.S. Bank to produce a witness pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to "testify as to the facts surrounding [U.S. Bank's] investigations of PHL or PHL's cost of insurance rate adjustments . . . conducted at [U.S. Bank's] direction or for [its] benefit."[1]  (Def. MTC Memo. at 1).

For the reasons that follow, both PHL's motion to preclude and its motion to compel are denied.

---

[1] PHL's motion originally also sought production of "previous statements obtained from former PHL employees in the course of th[e] investigations." (Defendant PHL Variable Insurance Company's Memorandum of Law in Support of its Motion to Compel Answers to Deposition Questions and the Production of Documents Concerning Investigations Conducted by or for Plaintiff ("Def. MTC Memo.") at 1).  It has now withdrawn that request, and seeks only to depose a 30(b)(6) designee who can testify as to the facts of the investigations.  (Reply Memorandum of Law in Support of Defendant PHL Variable Insurance Company's Motion to Compel Answers to Deposition Questions and the Production of Documents Concerning Investigations Conducted by or for Plaintiff ("MTC Reply") at 1 n.1, 2).

Motion to Preclude

    A.   Background

    The plaintiff alleges that it suffered damages from two excessive COI rate increases, the first in 2010 and the second in 2011. (Plaintiff U.S. Bank's Memorandum of Law in Opposition to Defendant's Motion to Preclude Evidence of Plaintiff's Claimed Damages ("Pl. Preclusion Memo.") at 4).

    In its initial disclosures in the action that became Case No. 12 Civ. 6811 after it was transferred to this district from the Central District of California, U.S. Bank stated that the "amount and basis for the calculation of Plaintiff's damages" were to be the subject of expert opinions, but revealed that the damages "consist of the increased cost of insurance that [the] [p]laintiff has paid and continues to pay, the diminution in value of the [p]olicies as a result of . . . [the] increase . . ., and [] attorneys' fees and costs." (Rule 26(A)(1) Initial Disclosures by Plaintiff U.S. Bank National Association, as Securities Intermediary for Lima Acquisition LP dated Feb. 8, 2012 ("Initial Disclosures"), attached as Exh. A to Declaration of Brian P. Perryman dated Aug. 20, 2013 ("Perryman Preclusion Decl."), § III). U.S. Bank further asserted that while it was "unable to ascertain the exact amount of the cost of insurance rate increases" because PHL had not provided that information, it believed that PHL has

documents, "such as policy illustrations and documents that state the actual cost of insurance rates and formula, [that] will reflect the amount of the cost of insurance rate increases from which the improper cost of insurance amounts can be determined." (Initial Disclosures, § III).  As for the diminution in value of the policies, U.S. Bank stated that "actuarial analyses or other policy valuations" could be used to make that determination.[2] (Initial Disclosures, § III).

In response to a request for production of documents concerning its damages computation, U.S. Bank objected on a number of grounds, including attorney-client privilege and work product immunity, but agreed to produce non-privileged responsive documents. (Plaintiff U.S. Bank National Association's Objections and Responses to Defendant PHL Variable Insurance Company's First Set of Requests for Production of Documents, attached as Exh. C to Perryman Preclusion Decl., at 48).  No such documents have been produced.  The plaintiff's Rule 30(b)(6) designee, Mats Ola Eriksson, testified at his deposition that U.S. Bank had computed damages at the instruction of its counsel, both at the time of the

---

[2] U.S. Bank's initial disclosures regarding damages in Case No. 13 Civ. 1580 are similar, except that they do not discuss the manner in which the damages can be ascertained.  (Rule 26(A)(1) Initial Disclosures by Plaintiff U.S. Bank National Association, as Securities Intermediary dated May 31, 2013, attached as Exh. B to Perryman Preclusion Decl., § III).

filing of the complaint (presumably in Case No. 12 Civ. 6811) and since that time, but Mr. Eriksson declined to provide the amount of damages computed, the methodology employed, or the documents relied on. (Excerpts from Transcript of Deposition of Mats Ola Eriksson dated Aug. 7, 2013 ("Eriksson Dep."), attached as Exh. D to Perryman Preclusion Decl., at 310-13). Mr. Eriksson also stated that U.S. Bank had retained an expert to assist computing damages, but was not certain whether that expert would be the expert who would testify at trial. (Eriksson Dep. at 312-13).

PHL now seeks to preclude U.S. Bank from presenting any evidence of its damages at trial.

B.   Discussion

1.   Legal Standards

Rule 26(a)(1)(A) requires parties to exchange as part of their initial disclosures, among other material, "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). In addition, the disclosing party must make available for inspection and copying "the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). This disclosure (like all other initial disclosures) must be made "based on the information then reasonably available to [the disclosing party]," and is not excused because

the disclosing party has not fully investigated the case.  Fed. R. Civ. P. 26(a)(1)(E).  Moreover, disclosures are to be timely supplemented by the disclosing party if it learns that they are incorrect or incomplete.  Fed. R. Civ. P. 26(e)(1)(A).

To guard against "'sandbagging' an adversary with new evidence," Ritchie Risk-Linked Trading Strategies (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012), Rule 37(c) of the Federal Rules of Civil Procedure states that a party that fails to provide information required by Rule 26(a) or (e) "is not allowed to use that information . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Preclusion is, of course, a harsh sanction, to be imposed rarely. Ritchie Risk-Related Trading, 280 F.R.D. at 156.  Although the sanction of preclusion has been characterized as "automatic," the Second Circuit has recognized that the rule, itself, allows less severe penalties to be imposed as an alternative and that the district court has wide discretion in levying sanctions.  Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir. 2006); see Fed. R. Civ. P. 37(c)(1) (listing sanctions that court may order "in addition to or instead of" preclusion).  Moreover, "[t]he sweep of this exclusion is softened by the proviso that it should not apply if the offending party's failure to disclose was 'substantially justified,' and that even if the failure was not substantially

justified the exclusion should not apply if the failure was 'harmless.'"  8B Charles Alan Wright, et al., Federal Practice & Procedure § 2289.1 (3d ed. 2010).

"Substantial justification may be demonstrated where there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request, or if there exists a genuine dispute concerning compliance." Ritchie Risk-Related Trading, 280 F.R.D. at 159 (internal quotation marks omitted).  A violation is harmless if it does not prejudice the opposing party.  Id.  In evaluating whether a failure to disclose should be excused, courts look to factors such as (1) whether the failure has an explanation or was willful or in bad faith; (2) the surprise or prejudice to the party against whom the evidence would be offered; (3) the ability to cure the surprise; (4) the importance of the evidence; and (5) the extent to which allowing the evidence would disrupt the trial.  See, e.g., Rodrick v. Wal-Mart Stores East, L.P., 666 F.3d 1093, 1096-97 (8th Cir. 2012); MicroStrategy Inc. v. Business Objects, S.A., 429 F.3d 1344, 1357 (Fed. Cir. 2005); David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003); Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co., 170 F.3d 985, 993 (10th Cir. 1999); Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 961 (2d Cir. 1997); Accenture

<u>Global Services GmbH v. Guidewire Software Inc.</u>, 691 F. Supp. 2d 577, 587 n.16 (D. Del. 2010); <u>Ebbert v. Nassau County</u>, No. 05 CV 5445, 2008 WL 4443238, at *14 (E.D.N.Y. Sept. 26, 2008).

    2.   <u>Violation of Rule 26(a) or (e)</u>

It is clear that U.S. Bank failed, both in its initial disclosures and subsequently, to provide PHL with a "computation of each category of damages claimed" or to allow PHL to inspect or copy any documentary evidence on which such a computation was based. Fed. R. Civ. P. 26(a)(1)(A)(iii). Relying on <u>Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP</u>, No. 03 Civ. 5560, 2006 WL 1520227 (S.D.N.Y. June 1, 2006), U.S. Bank seems to claim that, because its damages calculation will require expert testimony, it is relieved of the obligation to present such information until it makes its expert disclosures pursuant to Rule 26(a)(2). (Pl. Preclusion Memo. at 2).

In <u>Kingsway</u>, certain defendants argued that initial disclosures that reported total damages figures without a supporting calculation were inadequate. <u>Kingsway</u>, 2006 WL 1520227, at *1. The court held that, "[w]here . . . damages are not the product of a simple mathematical calculation and require expert testimony, the damages calculations need not be produced with the plaintiff's Rule 26(a)(1) disclosures and may be produced as part of the party's Rule 26(a)(2) disclosures." <u>Id.</u> The court further

noted that the party claiming damages still has "'the obligation, when it makes its initial disclosures, to disclose to the other parties the best information then available to it concerning that claim, however limited and potentially changing it may be.'" Id. (quoting 6 James W. Moore, Moore's Federal Practice § 26.22[4][c][ii] (3rd ed. 1997)).  Thus, Kingsway does not create an exception to Rule 26(a)(1) in cases in which damages will be proved by experts: the disclosing party still has the responsibility to provide each category of required disclosures based on the information it has at the time, and to supplement those disclosures as more information is gained.  See, e.g., Stemrich v. Zabiyaka, No. 1:12-CV-1409, 2013 WL 4080310, at *3 (M.D. Pa. Aug. 13, 2013) (stating that Rule 26 "explicitly contemplates a procedure" by which initial damages information is supplemented following an expert's review); Allstate Insurance Co. v. Nassiri, No. 2:08-cv-369, 2010 WL 5248111, at *4 (D. Nev. Dec. 16, 2010) ("While the precise method of calculation need not be disclosed if it is properly the subject of  future expert testimony, this does not relieve the plaintiff from providing reasonably available information concerning its damages computation."); Hesco Parts, LLC v. Ford Motor Co., No. 3:02-CV-736-S, 2007 WL 2407255, at *2 (W.D. Ky. Aug. 20, 2007) ("[A]lthough the defendants are not entitled to early disclosure of the plaintiff's expert report, the plaintiff's

initial disclosures should provide its executives' assessment of damages in light of the information available to them in sufficient detail so as to inform the defendants of the contours of their potential exposure.").

Here, U.S. Bank has admitted to preparing damages computations and to amending them; however, it has not produced any computation or any documentation to PHL. Therefore, it has violated Rules 26(a) and (e).

      3.    <u>Justification and Harmlessness</u>

           a.    <u>Explanation for Failure to Disclose</u>

U.S. Bank makes two interrelated arguments to explain its failure to provide a damages computation to PHL. First, it claims that it is impossible to produce an accurate computation without certain information that is in PHL's possession but which PHL has not provided. Specifically, U.S. Bank claims that it cannot compute the amount of damages due to the increased COI rates without knowing, from PHL, the "COI rate actually charged on each policy" (the "Actual Rate") and the "COI rate that U.S. Bank would have been charged but for PHL's [] COI rate increases" (the "But-For Rate"). (Pl. Preclusion Memo. at 5, 9). The Actual Rate "varies every month for every policy depending on the level of funding in each policy that month," and is determined using "a complicated set of seven formulas that ultimately depend on the

difference between the actual 'Funding Ratio' in each policy (that is, the policy value divided by the face amount for that policy for that month) and the 'Target Funding Ratio' that PHL now requires that particular policy to maintain," which is not fixed but varies depending on a number of variables. (Pl. Preclusion Memo. at 5, 7). The Actual Rate "is not provided to policy owners by PHL in the ordinary course of business." (Pl. Preclusion Memo. at 6). The But-For Rate would normally be determined by "rely[ing] on policy illustrations provided by [PHL]"; however, the policy illustrations that PHL has produced are "seriously inaccurate." (Pl. Preclusion Memo. at 9-10). Second, U.S. Bank claims that, even with complete information, the damages calculations are sufficiently complicated that they require the assistance of experts. (Pl. Preclusion Memo. at 11; Letter of Gregory P. Joseph dated Sept. 4, 2013).

PHL counters that, for certain categories of damages, it is inaccurate for U.S. Bank to assert that PHL is in sole possession of necessary information. PHL contends that the calculation of the diminution of value for the policies depends on "how [U.S Bank] appraises the policies' fair market value," a factor that PHL would not know. (Reply Memorandum of Law in Support of Defendant PHL Variable Insurance Company's Motion to Preclude Evidence of Plaintiff's Claimed Damages ("Preclusion Reply") at 2). In

11

addition, PHL claims that it does not "possess all of the information necessary to permit a computation of plaintiff's claimed overcharge damages" traceable to "expected <u>future</u> cost of insurance overcharges," because this component of damages requires knowledge of "(1) the policies' expected remaining durations, as [U.S. Bank] views them; and (2) [U.S. Bank's] intended net present value calculation." (Preclusion Reply at 2 (internal quotation marks omitted)).

Notably, PHL asserts only that <u>some</u> information required to calculate these future overcharge damages is in U.S. Bank's possession, not that <u>all</u> necessary information is in U.S. Bank's possession. PHL thus seems to concede that certain damages computations -- overcharge, as opposed to diminution damages, for example -- require information that it would have to provide to U.S. Bank in order for the computation to be accurate. Moreover, and more importantly, PHL does not challenge U.S. Bank's assertion that an accurate calculation of these damages will require the assistance of experts.

However, PHL repeatedly asserts that U.S. Bank has retained an expert to compute its damages and seems to insist that the damages computation that U.S. Bank has admitted to creating was made with the assistance of these experts. (Preclusion Reply at 4; Letter of Waldemar J. Pflepsen, Jr. dated Sept. 6, 2013). That is not borne

out by the record.  Mr.  Eriksson testified that he and four other employees of Fortress Investment Group LLC ("Fortress") computed damages.[3]  (Eriksson Dep. at 310-11).  He later admits that outside experts have been retained to compute damages.  (Eriksson Dep. at 312).  That is, contrary to the defendant's interpretation (Letter of Waldemar P. Pflepsen dated Sept. 18, 2013 ("Pflepsen Ltr.") at 1), Mr. Eriksson does not assert that the existing damages calculations were accomplished by or with the assistance of the retained experts or that the plaintiff's damages estimate was "vetted" by an expert.  U.S. Bank even acknowledges that these computations are inaccurate and will not be relied on at trial.  (Pl. Preclusion Memo. at 16).

    Moreover, Rule 26(a)(1) does not mandate that the initial damages computation, even if complicated, be performed by an expert.  Indeed, this points to a foundational flaw in PHL's motion.  The defendant seems to assume that the damages computation required in initial disclosures would be akin to a fully-reasoned expert report.  That is not required; rather Rule 26(a)(1) contemplates an estimate of damages and "some analysis," e.g.,

—————————————

[3] Plaintiff U.S. Bank acts as securities intermediary for Lima.  (Def. MTC Memo. at 2).  "Lima, a limited purpose entity that holds ownership interests in the subject policies, is an indirect subsidiary of Fortress . . . , the employees and subsidiaries of which act as Lima's portfolio advisor."  (Def. MTC Memo. at 2).

Maharaj v. California Bank & Trust, 288 F.R.D. 458, 463 (E.D. Cal. 2013), and Rule 26(e) requires supplementation as additional or corrective information becomes available.  Expert disclosures, on the other hand, are governed by Rule 26(a)(2), which provides that such information be provided "in the sequence that the court orders."[4]  See Fed. R. Civ. P. 26(a)(2)(D).  That is, neither Rule 26(a)(1) nor Rule 26(e) requires disclosure of an expert report prior to the date ordered by the court for such disclosure.  See Hesco Parts, 2007 WL 2407255, at *2.

The mere fact that assessing the amount of damages will require expert testimony does not absolve U.S. Bank of providing in its initial disclosures a computation of damages using the best information it has available, but it has provided a plausible explanation as to why such disclosure was not forthcoming.

      b.   <u>Surprise or Prejudice</u>

PHL claims that it has been severely and incurably prejudiced by U.S. Bank's failure to provide damages computations, contending that (1) discovery will have to be reopened to allow PHL to respond to any newly-disclosed calculations and (2) PHL is "greatly

---

[4] The parties exchanged initial expert reports on September 16, 2013, as required by the scheduling orders in these cases. (Civil Case Management Plan in Case No. 13 Civ. 1580 dated May 14, 2013 ("13 Civ. 1580 Sched.") at 2; Civil Case Management Plan in Case No. 12 Civ. 6811 dated May 17, 2013 ("12 Civ. 6811 Sched.") at 1; Letter of Gregory P. Joseph dated Sept. 17, 2013).

disadvantaged in preparing an opening report challenging [U.S. Bank's] claimed damages and methodology." (Def. Preclusion Memo. at 10-11).

As noted above, the damages calculation U.S. Bank has performed is inaccurate and will not be relied on at trial. (Pl. Preclusion Memo. at 16). And PHL can hardly claim surprise, given that it has known that damages would be proven through expert testimony since U.S. Bank made its initial disclosures at the beginning of 2012.

PHL argues that fact discovery will have to be reopened in order for it to "redepose multiple witnesses on damages topics" and "propound additional document requests and interrogatories refined to address [U.S. Bank's] specific damages amount and its underlying methodology." (Def. Preclusion Memo. at 10-11). However, it is not clear why this should be necessary: experts will be opining on damages, and the underpinnings of any expert testimony can be tested during expert discovery, which has not yet closed. Moreover, PHL will, of course, be afforded the opportunity to depose U.S. Bank's expert and to respond to his expert report with a rebuttal report. Meanwhile, PHL provides no explanation as to why the disclosure of an inaccurate and preliminary damages computation would provide it with sufficient fodder to engage in further fact discovery, or how such a computation would facilitate

production of its opening expert report, especially in light of the fact that the damages computation required by Rule 26(a) need not be particularly detailed.  See, e.g., Maharaj, 288 F.R.D. at 463.

Having received U.S. Bank's expert report, PHL asserts that, had it received an earlier disclosure, it "would have been in a position to compare [U.S. Bank's] day-to-day projections and valuations of its policies with [U.S. Bank's] ongoing damages computations," and could have asked during fact discovery, as asserted in the expert report, "whether [U.S. Bank] actually intended never to take loans or withdrawals" against the value of the policies.  (Pflepsen Ltr. at 2).  These and other assertions of prejudice depend on the notion that U.S. Bank's initial (or supplemental) damages calculations would contain the detailed analysis of an expert report -- indeed, they seem to depend on an early disclosure of U.S. Bank's actual expert report.  But, as discussed above, neither Rule 26(a)(1) nor Rule 26(e) requires such early disclosure.

### iii. Cure

U.S. Bank's opening expert report on damages was submitted on September 16, 2013.  Therefore, PHL now has an accurate computation of damages upon which U.S. Bank will be relying.

### iv.  Importance of Evidence

The evidence of U.S. Bank's damages is unquestionably

important, as PHL concedes.  (Def. Preclusion Memo. at 12).

v.   Disruption

Expert discovery is still open, with rebuttal reports due on October 16, 2013.  (13 Civ. 1580 Sched. at 2; 12 Civ. 6811 Sched. at 1).  No trial date has been set, although the joint pre-trial orders are due on February 11, 2014.  (13 Civ. 1580 Sched. at 2; 12 Civ. 6811 at 2).  It is unlikely that allowing the evidence will disrupt the trial or the court's schedule.

I therefore find that U.S. Bank's failure to disclose its damages computation was both substantially justified and harmless and, in any case, has been cured.  Thus, I will neither preclude U.S. Bank's damages evidence nor impose any other sanction.  Fed. R. Civ. P. 37(c)(1) (sanctions may be imposed when failure to make initial disclosures is neither substantially justified nor harmless).

B.   Motion to Compel

1.   Background

U.S. Bank designated Mr. Eriksson as its Rule 30(b)(6) deponent.  At the deposition, counsel for PHL asked Mr. Eriksson, "Has Fortress retained any investigators to contact former employees of [PHL]?"  (Excerpts from Transcript of Deposition of Mats Ola Eriksson ("Eriksson Dep."), attached as Exh. A to Declaration of Brian P. Perryman dated Aug. 20, 2013 ("Perryman MTC

17

Decl."), at 280).  On advice of counsel, Mr. Eriksson refused to answer the question, asserting that everything he knew about such investigations he had learned from Fortress' in-house counsel. (Eriksson Dep. at 280-81).  Later in the deposition, Mr. Eriksson testified that either Fortress or Lima engaged a law firm to conduct investigations with former PHL employees into conduct relevant to this litigation.  (Eriksson Dep. at 335).  On advice of counsel, he again refused to testify as to how many former PHL employees were contacted or the mechanics of the interviews. (Eriksson Dep. at 336, 339-40).  He also asserted that Doug Cardoni, a non-attorney managing director of Fortress, had information about the investigations.  (Eriksson Dep. at 337; Def. MTC Memo. at 3).  When Mr. Cardoni was deposed, he too refused to answer questions about the investigations because his knowledge came from counsel.  (Excerpt from Transcript of Deposition of Douglas Joseph Cardoni dated Aug. 1, 2013, attached as Exh. B to Perryman MTC Decl., at 223-24).

PHL now seeks an order compelling the plaintiff "to produce a Rule 30(b)(6) designee able to testify as to the facts surrounding investigations of PHL or PHL's cost of insurance rate adjustments that were conducted at [the] plaintiff's direction or for [its] benefit."  (Def. MTC Memo. at 7).  U.S. Bank claims the information sought is protected as attorney work product.  (Plaintiff U.S.

Bank's Memorandum of Law in Opposition to Defendant PHL's Motion to Compel Answers to Deposition Questions and the Production of Documents Concerning Investigations Conducted By or For Plaintiff ("Pl. MTC Memo.") at 1).

    2.  <u>Discussion</u>

    The burden of establishing any right to work product protection is on the party asserting it.   <u>In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002</u>, 318 F.3d 379, 384 (2d Cir. 2003) (party asserting work product protection faces "heavy" burden).   The protection claimed must be narrowly construed and its application must be consistent with the purposes underlying the asserted immunity.   <u>Id.</u>

    The work product doctrine "shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need."   <u>United States v. Adlman</u>, 68 F.3d 1495, 1501 (2d Cir. 1995) (quoting Fed R. Civ. P. 26(b)(3)).   It is designed to protect "mental impressions, conclusions, opinions or theories concerning the litigation."   <u>United States v. Adlman</u>, 134 F.3d 1194, 1195 (2d Cir. 1998).   A document is prepared "in anticipation of litigation" if, "in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained <u>because</u> <u>of</u> the prospect of litigation."   <u>Id.</u> at 1202

(internal quotation marks omitted). Although work product protection typically accrues to documents and tangible things, the doctrine also protects a witness from answering questions that "reveal [his] attorneys' legal opinions, thought processes, [or] strategy." Securities and Exchange Commission v. Gupta, 281 F.R.D. 169, 171 (S.D.N.Y. 2012) (citing United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, No. 90 Civ. 5722, 1992 WL 208284, at *6-7 (S.D.N.Y. Aug. 18, 1992)); see also Banks v. Office of the Senate Sergeant-at-Arms, 222 F.R.D. 1, 4 (D.D.C. 2004) ("The federal courts also protect work product even if it has not been memorialized in a document. Questions of a witness that would disclose counsel's mental impressions, conclusions, opinions or legal theories may be interdicted to protect 'intangible work product.'").

Though it is often asserted that the work product doctrine does not prevent disclosure of facts, see, e.g., 8 Charles A. Wright, et al., Federal Practice and Procedure § 2023 (3d ed. 2010) ("The courts [have] consistently held that the work product concept [furnishes] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents, even though the

documents themselves may not be subject to discovery."), the Second

Circuit has noted that this is an overstatement:

> While it may well be that work product is more deeply
> concerned with the revelation of an attorney's opinions
> and strategies, and that the burden of showing
> substantial need to overcome the privilege may be greater
> as to opinions and strategies than as to facts, we see no
> reason why work product cannot encompass facts as well.
> It is helpful to remember that the work product privilege
> applies to preparation not only by lawyers but also by
> other types of party representatives including, for
> example, investigators seeking factual information. If
> an attorney for a suspect, or an investigator hired for
> the suspect, undertakes a factual investigation,
> examining <u>inter alia</u>, the scene of the crime and
> instruments used in the commission of the crime, we see
> no reason why a work product objection would not properly
> lie if the Government called the attorney or the
> investigator . . . and asked "What facts have you
> discovered in your investigation?"

<u>In re Grand Jury Subpoena dated October 22, 2001</u>, 282 F.3d 156, 161

(2d Cir. 2002) (internal citations omitted).

U.S. Bank asserts that its former counsel in this case, Orrick

Herrington & Sutcliffe LLP ("Orrick"), retained investigators to

assist them in preparing for this and other litigation against PHL.

(Pl. MTC Memo. at 2; Declaration of Khai LeQuang dated Aug. 27,

2013 ("LeQuang Decl."), attached as Exh. 1 to Declaration of

Courtney A. Solomon dated Aug. 28, 2013 ("Solomon Decl."), ¶ 3).

Orrick identified certain individuals to be contacted and "provided

the investigators with information and directions as to the types

of people" to contact "based on, among other things, information

. . . about [PHL] and specific individuals and groups at [PHL]."
(Pl. MTC Memo. at 2; LeQuang Decl., ¶ 4).

PHL seeks disclosure of the facts surrounding U.S. Bank's investigations. (MTC Reply at 3-4). More specifically, PHL seeks the following types of information: (1) the identities of those who ordered or directed the investigations; (2) the identities of those who conducted the investigations; (3) the identities of those who were contacted in connection with the investigations; (4) the identities of those who were present during any contacts or meeting; (5) the dates on which the interviews occurred; and (6) confirmation of whether documents were collected from third parties in connection with the investigations. (MTC Reply at 3). The parties focus in particular on one category of information: the identities of those contacted in connection with the interviews.

It is an unsettled question whether the work product immunity protects the identities of those persons interviewed by an attorney or his agent in anticipation of litigation. Compare, e.g., Oregon Health & Science University v. Vertex Pharmaceuticals, Inc., No. Civ. 01-1272, 2002 WL 31968995, at *2 (D. Or. Oct. 24, 2002) ("The names of the ex-employees [interviewed], the dates of these conversations, and the names of those who were present are not protected by the work product doctrine.") and Alexander v. Federal Bureau of Investigation, 192 F.R.D. 12, 19 (D.D.C. 2000) (requiring

22

disclosure of names of those interviewed) <u>with</u> <u>Plumbers &</u>
<u>Pipefitters Local 572 Pension Fund v. Cisco Systems</u>, No. C01-20418,
2005 WL 1459555, at *4 (N.D. Cal. June 21, 2005) (identifying names
of investigatory interviewees "would allow Defendants to infer the
importance of these witnesses, revealing Plaintiff's legal theories
and conclusion[s]") <u>and</u> <u>In re MTI Technology Corp. Securities</u>
<u>Litigation II</u>, No. SACV 00-745, 2002 WL 32344347, at *3 (C.D. Cal.
June 13, 2002) (stating, "Although the identity and location of
witnesses that may have knowledge of any discoverable matter is not
protected, the identity of witnesses interviewed by opposing
counsel is protected," and collecting cases (footnote omitted)).
However, courts in this district have noted that the identities of
people interviewed as part of counsel's investigation into the
facts of the case have the potential to reveal counsel's opinions,
thought processes, or strategies, and are therefore protected. <u>See</u>
<u>Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust</u>
<u>Fund v. Arbitron, Inc.</u>, 278 F.R.D. 335, 343 n.8 (S.D.N.Y. 2011)
(stating that, in "the circumstance in which a party demands a list
of persons whom opposing counsel has interviewed," one party "is
essentially seeking, and potentially piggybacking on, a roadmap of
an adversary's pretrial investigation[,] [which] implicates core
policies behind the work product doctrine," and collecting cases);
<u>In re Initial Public Offering Securities Litigation</u>, 220 F.R.D. 30,

35-36 (S.D.N.Y. 2003) (citing with approval "the proposition that a party may not specifically demand the identities of witnesses interviewed or relied upon by counsel").

Here, U.S. Bank asserts that its former counsel's decisions regarding whom to interview had a strategic component based on information counsel had about PHL and about individuals at PHL. (LeQuang Decl., ¶ 4).   In light of this assertion, and the persuasive reasoning of cases cited above, I find that the identities of the individuals U.S. Bank interviewed in its investigation are protected as work product.  See Plumbers and Pipefitters Local Union No. 630, 278 F.R.D. at 343 n.8; Plumbers & Pipefitters Local 572 Pension Fund, 2005 WL 1459555, at *4; In re MTI Technology Corp. Securities Litigation II, 2002 WL 32344347, at *3; see also Cason-Merenda v. Detroit Medical Center, No. 06-15601, 2008 WL 659647, at *2 (E.D. Mich. March 7, 2008) (holding "a discovery request [seeking a list of individuals selected by counsel for interviews] would implicate the work product doctrine, as it would threaten to disclose the thought processes and strategic assessments of plaintiffs' counsel"); Tracy v. NVR, Inc., 250 F.R.D. 130, 132 (W.D.N.Y. 2008) ("The better reasoned decisions . . . are those that draw a distinction between discovery requests that seek the identification of persons with knowledge about the claims or defenses (or other relevant issues) -- requests that are

24

plainly permissible -- and those that seek the identification of persons who who have been contacted or interviewed by counsel concerning the case.").

Other categories of information sought -- information about those who ordered and conducted the interviews, those who were present but not interviewed, and the dates of the interviews -- are not protected from disclosure because they are not likely to provide insight into counsel's opinions, thought processes, or strategy.  <u>See, e.g.</u>, <u>Cason-Merenda</u>, 2008 WL 659647, at *2-3 (allowing discovery of identities of those conducting investigation).  Similarly, the question of whether documents were collected from third parties is not likely to impinge on attorney work product protection, as it does not implicate the "selection and compilation theory of work product," which protects from disclosure "counsel's sifting, selection and compilation" of otherwise unprotected documents.[5]  <u>District Council of New York</u>

---

[5] In its opening brief, PHL states that Mr. Eriksson and Mr. Cardoni also improperly refused to supply answers regarding the manner in which the investigations were conducted, the scope of the investigations, and the reasons the investigations were ordered. (Def. MTC Memo. at 5-6).  However, in its reply brief, PHL no longer lists these as subjects of inquiry and I therefore assume that it no longer seeks such information.  In any case, information about the scope of and reasons for the investigations would be protected from disclosure as work product.  <u>Cf.</u> <u>In re Grand Jury Subpoena dated October 22, 2001</u>, 282 F.3d at 161; <u>Oregon Health & Science University</u>, 2002 WL 31968995, at *2 (substance of conversations with interviewees "may reveal attorney work product[]

<u>City</u>, 1992 WL 208284, at *7-9.   However, it is unclear how information relating to these questions could be relevant given that the identities of the interviewees will not be disclosed.   The motion to compel is therefore denied without prejudice to PHL demonstrating the relevance of such information.   <u>See, e.g.</u>, <u>U.S. Bank National Association v. PHL Variable Insurance Co.</u>, No. 12 Civ. 6811, 2013 WL 1728933, at *2 (S.D.N.Y. April 22, 2013) ("The burden of demonstrating relevance is on the party seeking discovery.").

<u>Conclusion</u>

For the foregoing reasons, PHL's motion to preclude (Docket no. 253 in 12 Civ. 6811, Docket no. 58 in 13 Civ. 1580) is denied. PHL's motion to compel (Docket no. 256 in 12 Civ. 6811, Docket no. 61 in 13 Civ. 1580) is denied without prejudice to PHL submitting a letter demonstrating the relevance of the non-privileged information it seeks within three days of the date of this Order.


                          SO ORDERED.

                          *James C. Francis IV* (signature)
                          JAMES C. FRANCIS IV
                          UNITED STATES MAGISTRATE JUDGE

---

by providing to defendant those facts that the attorney believed to be relevant and what line of questioning he or she pursued").

Dated: New York, New York
       October 3, 2013

Copies mailed this date to:

Gregory P. Joseph, Esq.
Peter R. Jerdee, Esq.
Rachel M. Cherington, Esq.
Courtney A. Solomon, Esq.
Samuel N. Fraidin, Esq.
Joseph Hage Aaronson LLC
485 Lexington Avenue, 30th Floor
New York, NY 10017

Brian P. Perryman, Esq.
Jason H. Gould, Esq.
Waldemar J. Pflepsen, Jr., Esq.
Jorden Burt LLP
1025 Thomas Jefferson St., N.W.
Suite 400 East
Washington, D.C. 20007

Raul A. Cuervo, Esq.
Jordan Burt LLP
777 Brickell Ave., Suite 500
Miami, FL 33131-2803

Stephen J. Jorden, Esq.
Ben V. Seessel, Esq.
Jorden Burt LLP
175 Powder Forest Drive
Simsbury, CT 06089