**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br>a national association, as securities intermediary<br>for LIMA ACQUISITION LP,<br><br>              Plaintiff,<br><br>vs.<br><br>PHL VARIABLE INSURANCE COMPANY,<br>a Connecticut corporation,<br><br>              Defendant. | ECF Case<br><br>Case No. 12-CIV-6811(CM)(JCF) |
| U.S. BANK NATIONAL ASSOCIATION,<br>a national association, as securities intermediary,<br><br>              Plaintiff,<br>vs.<br><br>PHL VARIABLE INSURANCE COMPANY,<br><br>              Defendant. | ECF Case<br><br>Case No. 13-CIV-1580(CM)(JCF) |

## <u>DECLARATION OF MARK J. BROWNE</u>

MARK J. BROWNE declares pursuant to 28 U.S.C. § 1746:

     1.     I was retained by counsel for plaintiff, U.S. Bank National Association, as securities intermediary for Lima Acquisition LP ("U.S. Bank") to serve as an expert witness in the above-captioned cases.

     2.     I submit this declaration in support of U.S. Bank's opposition to defendant PHL Variable Insurance Company's motion for summary judgment in these cases. Attached hereto as Exhibit A is a true and correct copy of the Expert Report dated October 4, 2013 that I prepared and signed in these cases. Exhibit A accurately sets forth my opinions and calculations as described therein.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 7, 2014.

Respectfully submitted,

Mark J. Browne

# Exhibit A

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, a national association, as intermediary for LIMA ACQUISITION LP, Plaintiff, v. PHL VARIABLE INSURANCE COMPANY, a Connecticut corporation, Defendant. | Case No. 1:12-cv-06811 (CM)(JCF) |
| U.S. BANK NATIONAL ASSOCIATION, as securities intermediary, Plaintiff, v. PHL VARIABLE INSURANCE COMPANY, Defendant. | Case No. 1:13-cv-01580 (CM)(JCF) |

EXPERT REPORT OF MARK BROWNE, Ph.D.

**Table of Contents**

I.      Qualifications ................................................................................................................... 1

II.     Assignment ...................................................................................................................... 2

III.    Summary of Opinions ...................................................................................................... 3

IV.     Background Information Relating to the Parties and Policies at Issue .............................. 4

V.      Summary of Plaintiff's Allegations ................................................................................. 12

VI.     The Economic Principles Underlying Universal Life Insurance ....................................... 13

        A.      UL Insurance Is Explicitly Designed to Permit Flexibility in the Timing and Size
                of Premium Payments ........................................................................................... 14

                1.      UL Insurance Was Invented to Meet the Varied and Evolving Needs of
                        Prospective Life Insurance Buyers ........................................................... 14

                2.      Policy Owners Design Their Policies by Determining How Much to Pay in
                        Premiums .................................................................................................. 15

        B.      UL Insurance Policies Explicitly Impose Certain Limitations on Premium
                Flexibility within the Policy .................................................................................. 19

        C.      Premium Financing and Life Settlements in UL Insurance .................................... 20

VII.    PAUL II and PAUL III Policies Expressly Provided for Premium Flexibility ................ 23

        A.      PAUL II and PAUL III Policies Explicitly Permitted Premium Flexibility ......... 24

        B.      PAUL II and PAUL III Policies Stated that Policy Owners Would be Charged for
                This Flexibility Based on the Net Amount at Risk in Their Policies, Not By
                Changing the COI Rate Based on Their Choice of Premium Funding ................. 25

        C.      PAUL II and PAUL III Policies Explicitly Imposed Certain Limitations on
                Premium Flexibility and Incentivized Higher Funding through Payment of an
                Interest Bonus ...................................................................................................... 29

VIII.   The Policies at Issue Were Charged Monthly COI Charges in a Manner Consistent with
        That Expressed in the Policy Forms Prior to the 2010 and 2011 Rate Increases ............. 32

IX.     The 2010 and 2011 COI Rate Increases Were Economically Inconsistent with the
        Contractual Terms and Resulted in Non-uniform and Discriminatory Treatment between
        Policy Owners ................................................................................................................. 36

        A.      The 2010 COI Rate Increase Was Economically Inconsistent with the Terms of
                the PAUL II and PAUL III Policies ...................................................................... 37

        B.      The 2011 COI Rate Increase Was Economically Inconsistent with the Terms of
                the PAUL III Policy ............................................................................................. 40

X.      Phoenix's COI Rate Increases Resulted in Economic Losses to Policy Owners ............. 42

        A.      The COI Rate Increases Resulted in Losses to Policy Owners Caused by the
                Decline in the Value of the Policy ........................................................................ 42

B.     Plaintiff Has Paid Excess Premium Payments to Date Due to the Improper COI Rate Increases ...................................................................................................... 46

## I. Qualifications

1.      I am the Robert Clements Distinguished Chair in Risk Management and Insurance at St. John's University, where I teach courses related to risk management and insurance and am the chair of the faculty of the School of Risk Management of the Tobin College of Business.  Prior to that, I held the Gerald D. Stephens CPCU Chair in Risk Management and Insurance at the Wisconsin School of Business and was the chair of the school's Department of Actuarial Science, Risk Management, and Insurance.  At the Wisconsin School of Business, I taught courses in risk management, employee benefits, and health insurance.  I have received the American Risk and Insurance Association Award for Teaching Excellence, the Beta Gamma Sigma Dean's Award for Teaching Excellence, and the Lawrence J. Larson Excellence in Teaching Award from the Wisconsin School of Business.  I received a B.S. in economics, M.A. with a focus in risk management and insurance, and Ph.D. in applied economics with a focus on risk management and insurance from the University of Pennsylvania.

2.      My academic research has examined a number of issues in risk management and insurance, including adverse selection in health insurance markets, the demand for property and liability insurance, the insurance underwriting cycle, insurer insolvencies, health insurance underwriting, and the demand for flood insurance.  My research has appeared in the *Journal of Risk and Insurance*, the *Journal of Insurance Regulation*, the *CPCU Journal*, *Inquiry*, the *Journal of Risk and Uncertainty*, the *Geneva Papers on Risk and Insurance Theory*, the *North American Actuarial Journal*, and the *Journal of Legal Studies*.  I am an associate editor of the *Journal of Risk and Insurance*.  I have been awarded the Shin Award for Research Excellence by the International Insurance Society three times.  I am a past president of both the American Risk and Insurance Association and the Risk Theory Society.

3.      I have provided expert testimony on issues related to insurance and risk management.  I have also testified before the U.S. Senate Committee on Banking, Housing, and Urban Affairs on the future of the National Flood Insurance Program.  A copy of my curriculum vitae and a list of prior testimony over the past four years are attached hereto as Exhibit 1.

## II.      Assignment

4.      I have been retained by counsel for plaintiff, U.S. Bank National Association, as securities intermediary for Lima Acquisition LP ("U.S. Bank" or "the Bank" or "Plaintiff"), to offer opinions on issues relating to 33 insurance contracts at issue in two separate actions: *U.S. Bank National Association v. PHL Variable Insurance Company*, Case No. 1:12-cv-06811 (S.D.N.Y.) ("PHL I") and *U.S. Bank National Association v. PHL Variable Insurance Company*, Case No. 1:13-cv-01580 (S.D.N.Y.) ("PHL II").  Specifically, Plaintiff's counsel has asked me to:

- Describe the economic principles underlying universal life ("UL") insurance that distinguish it from other forms of life insurance, and identify whether the contractual language associated with the 33 policies at issue was consistent with these economic principles.

- Assess whether the 33 policies at issue experienced increases in the cost of insurance rate ("COI rate") in 2010 or 2011 and whether these rate increases were consistent with the economic principles embedded in the contractual language associated with the 33 policies at issue.

- Assess whether U.S. Bank incurred economic losses as a result of any increases in the COI rate in 2010 or 2011 and estimate the amount of the loss (if any) for each of the policies at issue.  Specifically, I was asked to estimate the decline in policy value to policy owners as of the date of the COI rate increases caused by 2010 and 2011 COI rate increases and to estimate the damages suffered by Plaintiff in the form of excess premium payments made from October 21, 2010, to date necessitated by the improper 2010 and 2011 COI rate increase.

5.     In forming my opinions, I have relied on my knowledge, prior experience, academic research on relevant topics, and formal training in risk management and insurance, economics, and statistics.  In performing my analyses, I have examined a variety of materials.  The documents I considered in forming my opinions are cited below and/or listed in Exhibit 2.

6.     I am being compensated at my hourly rate of $600.  My compensation is not contingent upon the conclusions I reach or on the outcome of this matter.

## III.     Summary of Opinions

7.     Below is a brief summary of my preliminary findings in this matter.  The bases for each finding are detailed in the sections that follow.  My work in this matter is ongoing, and I reserve the right to supplement my current analysis if additional information becomes available.

- The economics underlying UL insurance policies is such that policy owners, and not the insurers, have discretion in determining the timing and magnitude of premium payments within limits specified in the policy.  This flexibility affords policy owners the ability to effectively administer their own policies to meet their individual financial needs.  If the insurer charges policy owners for exercising their economic right to determine the timing and level of premium payments in a manner consistent with what is described in the contract, the value of the policy decreases for the policy owner.  Effectively, if a policy owner has an option to determine the timing and level of premium payments, and either that option is taken away or the terms of exercising that option are reneged upon, the option is no longer as valuable to the owner.  In other words, for an in-force UL policy, if an insurer were permitted to increase charges (i.e., cost of insurance rates) based on a policy owner exercising his or her flexibility in premium payments, such an increase would diminish the value of the policy without compensating the policy owner.

- The policies at issue expressly provided that policy owners could exercise their discretion in determining the timing and level of premium payments.  These policies contained explicit contractual language identifying the manner in which this premium flexibility was limited.

- Pursuant to the letters sent by PHL Variable Insurance Company (together with its affiliate Phoenix Life Insurance Company, "Phoenix"), Phoenix increased the COI rate assessed in computing the monthly COI charges for the policies at issue.  Thirty out of the 33 policies at issue experienced a COI rate increase announced in 2010,

which became effective for those policies sometime in 2010 or early 2011. Two out of the 33 policies at issue experienced a COI rate increase announced in 2011, which became effective for those policies sometime in 2012. The effective date of these 2010 and 2011 COI rate increases varied by policy depending on the anniversary date of the policy.

- ◦ The 2010 increase in the COI rates was economically inconsistent with the terms of the policies and resulted in the non-uniform and discriminatory treatment of policy owners who had decided to exercise their right to minimally fund their policies. Before the 2010 rate increase, COI rates were the same for all policy owners that shared certain characteristics, but the new and complex formula meant that after the rate increase, policy owners with shared characteristics, but who had made different funding choices, experienced different COI rates.

- ◦ The 2011 increase in the COI rates was also economically inconsistent with the terms of the policy and resulted in discriminatory treatment of policy owners who had decided to exercise their economic right to minimally fund their policies. Whereas prior to this rate increase, COI rates were the same for all policy owners who shared certain characteristics, Phoenix now used policy funding—specifically, minimum funding—to determine which subgroups of policy owners would be subject to the 2011 rate increase.

- • As a result of the improper imposition of the rate increases, Phoenix unilaterally determined to usurp the value of the benefit of premium flexibility from policy owners. As of the date of this report, this decline in value plus prejudgment interest of 9% is reliably estimated to be between $10.6 million and $13.7 million.

- • As a result of the improper imposition of the rate increases, U.S. Bank has made additional premium payments to date that it would not have made had the rate increase not occurred. To date, U.S. Bank has paid more than $3.2 million in additional payments than it would have made had the improper rate increases not been applied, including prejudgment interest that has accrued on these overpayments.

## IV.    Background Information Relating to the Parties and Policies at Issue

8.      Lima Acquisition LP ("Lima") is a limited partnership whose general partner, Lima LS plc, purchased the 33 policies at issue through its acquisition of five limited liability companies from Pacifica Group LLC on or around December 2010.[1]  The policies are now held by U.S.

---

[1] Unit Purchase Agreement between Pacifica Group LLC and Lima LS PLC, dated as of November 10, 2010, and Schedule 1 to the Unit Purchase Agreement (USBCOI184454–816).

Bank, a national banking association.[2]  These policies were originally issued by defendant PHL

Variable Insurance Company, a life insurance company offering variable and fixed annuity and

non-participating life insurance products.[3]

9.      Exhibit 3 provides a summary of information pertaining to these policies.  Of the 33

policies, I understand that 21 are on policy form U606 and are referred to by Phoenix internally

as PAUL II policies.[4]  The remaining 12 policies are on policy form 05PAUL and are referred to

by Phoenix internally as PAUL III policies.[5]  Each of the policies is a universal life insurance

policy with a face amount, generally referred to as the death benefit, equal to or in excess of

$2 million.  The policies generally insured lives that were greater than 70 years of age at the time

of policy issuance.[6]

---

[2] PHL I Complaint, ¶9, ¶13.

[3] PHL Variable Insurance Company, Form 10-Q for the period ended March 31, 2010, filed on May 10, 2010, p. 7.

[4] Within the set of PAUL II policies at issue, Phoenix refers to these policies as PAUL IIc.  See, for example, 2008 Project X, Product Specifications Version 1, August 26, 2008, PHL0591573–79.  I note that while Phoenix has internally classified policies using this nomenclature, the policy forms associated with the policies at issue do not reveal this nomenclature to policy owners; see Deposition of Gina O'Connell, June 18, 2013 ("O'Connell Deposition, 6/18/13"), pp. 42–43 and 139.  Generally, policy documents refer to the products as Flexible Premium Life Insurance Policy, Phoenix Accumulator UL II, and PHLVIC Accumulator II.  In addition, certificate number 97535603 was written on form GU602 (USBCOI214816–77). Account summaries for this certificate refer to Phoenix Accumulator II (see, for example, Annual Summary for the period October 25, 2005 – October 24, 2006, USBCOI189799–801), and illustrations for this contract refer to it as form U606 (see, for example, "A Life Insurance Illustration" dated January 26, 2010 (USBCOI189812)).  I have seen no evidence to suggest that this certificate did not experience the rate increase announced in the letters from Phoenix. See letter dated March 19, 2010 (USBCOI189875).  I have been asked to assume this certificate written on form GU602 is also a PAUL IIc product because Phoenix treats it as a PAUL IIc product in its policy illustrations.

[5] Within the set of PAUL III policies at issue, Phoenix refers internally to different policies as PAUL III or PAUL III blank, PAUL IIIa, PAUL IIIb, or PAUL IIIc.  See, for example, O'Connell Deposition, 6/18/13, p. 49.  I note that while Phoenix has internally classified policies using this nomenclature, the policy forms associated with the policies at issue do not reveal to policy owners this nomenclature. Generally, policy documents refer to the products as Phoenix Accumulator UL, Phoenix Accumulator, PHLVIC Accumulator, and Universal Life Insurance Policy.

[6] The one exception is policy number 97528285, which was issued to Neil Miller when he was 66 years old.

10.     As shown in Exhibit 3, 30 out of the 33 policies at issue received notification that Phoenix would increase COI rates in 2010 based on some unidentified shortfall in their accumulated policy values.[7]  I understand that Plaintiff learned of this rate increase as to these policies in performing its due diligence related to the acquisition in December 2010.[8]  Additionally, one out of the 33 policies at issue received notification that it would be subject to the potential future rate increase in 2010 if its policy values did not continue to exceed some unspecified future hurdle.[9]  The remaining two policies at issue received notification that Phoenix would increase COI rates in 2011.[10]

11.     With respect to the 2010 COI rate increases, this notification generally took the following form (emphasis added): [11]

> We are sending you this letter to inform you that on April 1, 2010, *we are increasing cost of insurance rates on certain Phoenix Accumulator Universal Life policies*.  Your policy referenced above will be subject to this rate increase on your next policy anniversary beginning 11/12/2010 *unless your accumulated policy value is maintained at a sufficient level*.

> The amount of the increase will vary based on the accumulated amount of your policy value.  In general, maintaining higher levels of policy value in relation to the face amount will reduce or even eliminate the increase.

> As background, we review our cost of insurance rates periodically to determine whether they should be changed and take action only when the rates are too low

---

[7] These 30 policies were written on the U606 and 05PAUL policy forms, with the exception of certificate number 97535603, as discussed above in footnote 4.

[8] See the deposition of Douglas Joseph Cardoni, August 1, 2013, pp. 59–63.

[9] This policy was written on the U606 policy form.  See, for example, USBCOI000298, letter dated March 8, 2010, regarding policy 97513181.

[10] These two policies were written on the 05PAUL policy form.  See, for example, USBCOI000034, letter dated October 17, 2011, regarding policy 97522375 and USBCOI004064, letter dated October 10, 2011, regarding policy 97528285.

[11] Each policy received a separate letter.  These letters were not identical because, for example, each letter contains reference to a specific month and day that corresponds to the policy's anniversary date.  See, for example, USBCOI001262, letter dated March 19, 2010, regarding policy 97515342, and USBCOI002820, letter dated March 19, 2010, regarding policy 97519088.

relative to our current actuarial and financial expectations related to the policies. This increase is in accordance with the terms of your policy and the adjusted rates for the cost of insurance will remain below the maximum guaranteed cost of insurance rates we are permitted to charge your policy.[12]

12.     According to this correspondence, both the presence of the COI rate increase and the amount of the COI rate increase would vary based on whether the policies at issue had "accumulated policy value[s] maintained at a sufficient level."[13]  However, the letters did not identify what specific level of "accumulated policy value" would trigger a rate increase, only that the "amount of the increase will vary based on the accumulated amount of [the] policy value."[14] The letters also did not identify the rationale underlying the proposed rate increases.

13.     Phoenix sent a letter to one policy owner stating that the policy would not incur a COI rate increase in 2010, but warning that future rate increases might apply.  Specifically, for policy number 97513181, Phoenix's correspondence stated:

> We are sending you this letter to inform you that on April 1, 2010, we are increasing cost of insurance rates on certain Phoenix Accumulator Universal Life policies.
>
> As of February 1, 2010, you have sufficient accumulated policy value in your policy referenced above to avoid a rate increase during your next policy year beginning 5/12/2010.  However, should you reduce your accumulated policy value below a certain level, such as might occur if you made a partial withdrawal, you will be subject to the rate increase.  In order to avoid a rate increase in future years, you will need to continue to maintain sufficient accumulated policy value.
>
> Should your accumulated policy value fall below a certain level, the amount of the increase will vary based on the accumulated amount of your policy value.  In

---

[12] See USBCOI001262.
[13] See USBCOI001262.
[14] See USBCOI001262.

general, maintaining higher levels of policy value in relation to the face amount will reduce or even eliminate any increase.[15]

14.    Thus, even when Phoenix had determined not to increase the cost of insurance rate for a particular policy owner but warned of future rate increases, Phoenix still failed to identify the "certain level" of accumulated value that would in fact trigger a rate increase. Moreover, Phoenix stated that this policy may be subject to future COI rate increases without identifying the level of accumulated policy value that would trigger this potential rate increase.

15.    At or around the same time period of these letters, policy owners in New York also received similar letters from Phoenix.[16] The Department of Financial Services ("DFS") (formerly, the New York State Insurance Department) subsequently examined this rate increase on behalf of New York policy owners.[17] ███████████████████████████

███████████████████



---

[15] Letter dated March 8, 2010, for policy 97513181 (USBCOI000298).

[16] Letter dated February 22, 2010, from Joseph Bonfitto of Phoenix Life Insurance Company to Kathleen Nelligan of the New York Insurance Department (PHL016457).

[17] Letter dated September 6, 2011, from Michael Maffei of the State of New York Insurance Department to Kathleen McGah of Phoenix Life Insurance Company (PHL0564077–79).

[18] Letter dated September 6, 2011, from Michael Maffei of the State of New York Insurance Department to Kathleen McGah of Phoenix Life Insurance Company (PHL0564077–79).

[19] Letter dated September 6, 2011, from Michael Maffei of the State of New York Insurance Department to Kathleen McGah of Phoenix Life Insurance Company (PHL0564077–79).



16.     After this finding by the DFS, Phoenix reduced COI rates for the affected New York policies and credited the differences between COI rates paid and revised COI rates to the policy values of the affected New York policies.[23]

17.     

---

[20] Letter dated September 6, 2011, from Michael Maffei of the State of New York Insurance Department to Kathleen McGah of Phoenix Life Insurance Company (PHL0564077–79). I consider the terms policyholder and policy owner to be synonymous.

[21] Letter dated September 6, 2011, from Michael Maffei of the State of New York Insurance Department to Kathleen McGah of Phoenix Life Insurance Company (PHL0564077–79).

[22] Letter dated September 6, 2011, from Michael Maffei of the State of New York Insurance Department to Kathleen McGah of Phoenix Life Insurance Company (PHL0564077–79).

[23] See letter dated November 16, 2011, from Michael Maffei to Kathleen McGah (PHL015929).



18.     As a result of these findings,

19.     The staff of the State of Wisconsin's Office of the Commissioner of Insurance (the "Wisconsin Commissioner") also concluded that the 2010 COI rate increase was in violation of state law.  According to a Notice of Hearing dated April 30, 2013, the Wisconsin Commissioner charged that the COI rate increase was unfairly discriminatory and violated express terms of the UL insurance policy because:

> The 05PAUL Form Does Not Comply with Wisconsin's Readability Law
>
> …The definition of Net Amount at Risk is not coherent and is not explained in commonly understood language to inform policyholders that [Phoenix] may take into consideration the funding of account values relative to face amounts when deciding whether to increase COI rates.
>
> …The description of Cost of Insurance Charge…is not coherent and is not explained in commonly understood language, does not define the term

---

24 ███████████████████████████████████ (PHL0970831–32).

25 ███████████████████████████████████ (PHL0970831–32).

"persistency", and does not inform policyholders that accumulation values will be
used to determine COI rate increases.

…

The 2010 COI Rate Increase Discriminates Among Policyholders of the Same
Class

…By increasing the COI rates only on those policyholders who exercise their
right to maintain lower accumulated policy values, [Phoenix's] COI rate increase
unfairly discriminates among policyholders of the same class.[26]

20.     As a result of these findings, the Wisconsin Commissioner also found that Phoenix's acts
were sufficient grounds to order Phoenix to roll back the 2010 COI rate increase and ensure that
future practices are in compliance with state law:

The acts of [Phoenix] as set forth above constitute sufficient grounds to: order
[Phoenix] to reduce the 2010 COI rate increase for the affected policies to the
COI rate that was in effect prior to the increase; order [Phoenix] to provide
restitution to the policyholders affected by the improper rate increase; order
[Phoenix] to cease and desist considering the ratio of accumulation value to face
amount when deciding whether to increase COI rates among policyholders of the
same class; and to issue other remedial orders including penalties and forfeitures
pursuant to [Wisconsin statutes].[27]

21.     With respect to its subsequent 2011 COI rate increases, Phoenix again sent notification
letters to policy owners in 2011. The letters generally[28] stated:

We are sending you this letter to inform you that on November 1, 2011, we are
adjusting the cost of insurance rates on certain Phoenix Accumulator Universal
Life policies, including your policy referenced above. As a result, the rates used
to determine your cost of insurance will be increased from the current rates. This

---

[26] Notice of Hearing for Case No. 13-C35362, In the Matter of PHL Variable Insurance Company, dated
April 30, 2013, pp. 4–5.
[27] Notice of Hearing for Case No. 13-C35362, In the Matter of PHL Variable Insurance Company, dated
April 30, 2013, p. 6.
[28] Each policy received a separate letter. These letters were not identical because, for example, each letter
contains reference to a specific month and day that corresponds to the policy's anniversary date. See, for
example, USBCOI004064, letter dated October 10, 2011, regarding policy 97528285.

change will go into effect on your next policy anniversary on or after November 1, 2011.

As background, we review our cost of insurance rates periodically to determine whether they should be changed and take action only when the rates are too low or too high relative to our current actuarial and financial expectations related to the policies. This change is in accordance with the terms of your policy, and all currently payable rates for the cost of insurance remain below the maximum guaranteed rate contained in your policy contract.[29]

22.     According to this correspondence, affected policies would receive a COI rate increase on or after November 1, 2011.  The amount of the rate increase is not specified.  In an apparent explanation for the rate increase, Phoenix stated only that the proposed rate increase resulted from "current actuarial and financial expectations."[30]

## V.      Summary of Plaintiff's Allegations

23.     According to U.S. Bank, policy owners entered into agreements for universal life insurance coverage that allowed them the flexibility to choose how much to pay into the policy each month.  The Bank alleges that the policies permit the insurer (Phoenix) to adjust COI rates, but only based on specific factors.  Specifically, the Bank asserts that any change in COI rates is subject to restrictions including, for example, that changes in rates will be determined prospectively, will be made on a uniform basis for all insureds in the same class, and that Phoenix will not distribute past gains or recoup prior losses with COI rate increases.  U.S. Bank also alleges that the agreements provide that changes in COI rates will be based on certain enumerated factors, including expectations of future mortality, persistency, investment earnings, and expenses.

---

[29] Letter dated October 10, 2011, regarding policy 97528285 (USBCOI004064).
[30] Letter dated October 10, 2011, regarding policy 97528285 (USBCOI004064).

24.     U.S. Bank asserts claims against Phoenix including breach of contract and violations of state statutes prohibiting unfair trade practices and unfair insurance practices.  Specifically, U.S. Bank alleges that Phoenix breached the policy terms by raising COI rates for reasons other than those enumerated in these policies.  Plaintiff alleges that Phoenix raised COI rates based on "accumulated value" or "funding levels," which is not a factor enumerated in the policies, and that Phoenix did not apply these rate increases to the entire class of insureds as required by the policies.

## VI.     The Economic Principles Underlying Universal Life Insurance

25.     The economics underlying UL insurance policies is such that policy owners, and not the insurers, have discretion in the timing and magnitude of premium payments within limits specified in the policy.  This flexibility affords policy owners the ability to effectively design their own policies to meet their individual and potentially evolving financial needs.  To the extent that policy owners choose to fund their policies with low premiums, insurers are protected by placing explicit funding requirements in the policy.  Insurers are also protected by charging policy owners more for life insurance policies that provide greater amounts of pure life insurance coverage due to policyholder decisions resulting in lower premium funding relative to the death benefit than policies that have higher funding.  The amount that policy owners are charged increases as an explicitly stated function of the amount of the death benefit at risk to the insurer. Thus, policy owners effectively purchase a portfolio of options in which they determine whether to exercise the options based on predefined formulas that are in place at the time the contract is executed.

### A. UL Insurance Is Explicitly Designed to Permit Flexibility in the Timing and Size of Premium Payments

26.     Life insurance helps individuals provide for others, often their families, after their own death and in some cases also helps provide income during retirement.  Some policies, like term life insurance, provide protection only for mortality risk while others, like universal life insurance, combine protection for mortality risk with a cash value investment vehicle that can be used by policy owners as an internal savings vehicle if a policy owner desires.

27.     With UL insurance, the policy owner, not the insurer, determines within specified limits the amount of premium that will be paid to the insurer on premium due dates.  As a result, UL policy owners can alter the composition between the insurance and savings components of their policies.  Because of this flexibility, policy owners can effectively design their own policies to meet their individual needs.

### 1. UL Insurance Was Invented to Meet the Varied and Evolving Needs of Prospective Life Insurance Buyers

28.     UL insurance as recognized today began in the 1970s.  In 1975, James C.H. Anderson succinctly described how changes in the lifestyles of life insurance buyers resulted in the need for life insurers to create a flexible premium funding permanent life insurance policy:

> In summary, this paper advances the following arguments:
>
> ...that it is no longer realistic to assume that the typical life insurance buyer is one who will, for an extended period of time, remain married to the same [spouse], work at the same job and live in the same house situated in the same city; or that the financial security needs of this typical buyer and his [or her] ability to pay for them will remain constant and can be expressed in constant nominal dollars.
>
> ...that it is not realistic for the industry to address the needs of the typical buyer with traditional permanent life insurance products requiring fixed regular premiums and providing fixed benefits, both expressed in constant nominal dollars.

...that the traditional life insurance industry distribution and administrative systems are excessively and unnecessarily costly and place the industry at a competitive disadvantage by comparison with other savings media.

...that the industry should respond to the needs of the contemporary market by introducing a simplified, flexible and less costly product.[31]

29.     UL insurance was designed to meet these varying and evolving needs of policy owners by offering flexibility in premium payments and adjustability in death benefits.  For example:

Universal life gives you flexibility in setting premium payments and the death benefit.  Changes must be made within certain guidelines set by the policy; to increase a death benefit, the insurer usually requires evidence of continued good health.[32]

30.     By varying the amount of premium paid into the policy, the policy owner can effectively design his or her own financial plan.

### 2.     Policy Owners Design Their Policies by Determining How Much to Pay in Premiums

31.     In purchasing a UL insurance policy, the policy owner effectively purchases a series of options of renewable term life insurance coupled with an account that earns interest paid by the insurer and holds savings amounts the insured chooses to deposit.  More premiums result in more cash value accumulation (higher savings), which lowers the death benefit at risk to the insurer.[33]

---

[31] James C.H. Anderson, "The Universal Life Insurance Policy," published in *Emphasis* in November 1975.

[32] "What You Should Know About Buying Life Insurance," The American Council of Life Insurers, p. 3, https://www.acli.com/Consumers/Life%20Insurance/Documents/LI_Consumer_Broch_043012.pdf, last accessed September 10, 2013.

[33] UL insurance policies commonly offer two optional forms of death benefit:  Option A and Option B. The policies at issue all involved Option A, and as such, the discussion in this report focuses on this form of death benefit.  Under this form, the death benefit remains at the same level while the policy is in force, subject to changes influenced by possible policy riders or the election of policy owner to switch to Option B.  In the policies at issue, Option A has been, and I understand is to be, assumed to be the choice of the current policy owner going forward.

Less premiums result in less cash value accumulation, thereby increasing the death benefit at risk to the insurer. Thus, by varying the amount of premium paid into the policy, the policy owner effectively determines the amount of renewable term insurance purchased from the insurer relative to the amount funded by the internal savings component. Each period, the policy owner can vary the amount of renewable term life insurance he or she is purchasing by contributing more or less in premiums as long as the amount paid ensures the policy will not lapse.

32.     To better understand how premium flexibility permits policy owners to tailor their policies to meet their needs, it is useful to understand how policy value (sometimes referred to as cash value) changes over time. Exhibit 4a shows how policy value increases with net premiums and interest credited, and decreases with expense charges (i.e., service charges) and mortality charges (i.e., cost of insurance charges or "COI charges").

33.     For purposes of illustration, consider Jane, a 70-year-old female categorized as preferred health, who takes out a UL insurance policy with a $2 million death benefit (or face amount). Jane pays a $82,495 premium at the inception of the policy, which, net of commissions, contributes $74,246 to her policy's value.

34.     Exhibit 4b illustrates how Jane's policy value changed over the second month. Her policy value increases with the premium she paid and as the insurer credits interest to her internal savings account. The policy value decreases when the insurer deducts monthly expenses. Thus, every month, Jane's policy value is debited and credited based on her decision of how much to pay in premiums, the insurer's decision of how much to credit her account in interest, and the monthly expenses charged by the insurer.[34]

---

[34] For ease of exposition, this example ignores the effects of withdrawals (i.e., loans) against the account as permitted by certain policies.

35.     Policy owners are typically charged two types of monthly expenses: loading charges and mortality charges. Loading charges (sometimes called administrative expenses or service charges) are typically a flat dollar amount and are meant to cover certain of the insurer's future expected administrative expenses. Mortality charges (a dollar amount commonly referred to as the COI charge, which is not the COI rate) can be thought of as the charge levied against the policy to pay for the dollar amount of renewable term insurance purchased by the policy owner for the period.

36.     The COI charge is assessed to ensure that each policy owner pays for his or her cost of mortality risk. Under a UL policy, the insurer is responsible for making good on the death benefit.

37.     The COI charge is based on the net amount at risk ("NAR"), i.e., the difference between the policy's face amount and its policy value. The net amount at risk represents the amount of the death benefit that may be owed by the insurer in the event of death. The total dollar amount of COI charge is the product of the net amount at risk and the COI rate. The COI rate is common for all insured lives in the same risk class. An insured's risk class is commonly based on the insured's attained age, sex, smoking status, and other health-based factors.

38.     Exhibit 4b demonstrates how each month Jane's policy value is debited and credited during the month to arrive at the end-of-month policy value. For example, at the start of the second month of the policy's life, Jane's policy value equals $73,206.62. Since Jane did not pay any premiums into the account in this month, no premium is added to her policy value. Next, the insurer subtracts from the account value the monthly charges of $1,002.85, consisting of a mortality charge (COI charge) of $949.35 and an administrative expense charge of $53.50. The insurer adds $244.26 in interest credited to the account value. Jane's policy value at the end of

the month equals the sum of these additions and subtractions. Specifically, $72,448.03 equals $73,206.62 + $0 + $244.26– $53.50 – $949.35.

39.     Because the policy owner and not the insurer determines the amount of premium to be paid, the policy owner can vary the amount of premium paid to increase or decrease the amount of renewable term insurance purchased month by month. For example, Exhibit 5a graphs policy values for Jane and separately for Sue, another policyholder. For purposes of illustration, assume that both Jane and Sue are female classified as preferred plus. Additionally, both Jane and Sue purchase their UL insurance at age 70. Since both purchased their UL insurance at the same age, have the same gender, and are preferred plus, both experience the same COI rates each year as their policies age, because they pose the same mortality risk to the insurer.

40.     Between ages 70 and 75, both Jane and Sue pursue the same strategy with their policies. Both initially fund their policies via $82,495 in cash that was available to them at policy inception, and, as permitted, do not make additional premium payments for five years. This results in their policy values dropping to $1 at age 75, as shown in the chart. Following the fifth anniversary of their policies, Jane and Sue each decide to pay different premium amounts. Jane decides to pay just enough in premiums to keep her policy in force. Initially, she decides to repurchase the same amount of renewable term insurance in each successive month going forward to effectively maintain the net amount at risk at $2 million. She effectively decides to repurchase the same amount of renewable term insurance in each successive month going forward.[35] Sue, on the other hand, decides to pay a fixed premium each month that is sufficient to ensure that her policy value increases over time. Sue effectively decides to purchase a lesser and lesser amount of renewable term each month going forward.

---

[35] For ease of illustration, this example does not consider certain types of issues, for example, surrender charges.

41.     At age 85, Jane and Sue have tailored their policies to meet their individual needs.  As shown in Exhibits 5a and 5b, by age 85, Jane's policy has less cash value than Sue's policy and has more net amount at risk.  Because Jane's policy has a greater net amount at risk, Jane pays more in COI charges, in dollars, than does Sue even though both pay the same COI rate as expected given that they are in the same risk class (i.e., female nonsmoker with preferred health at age 75 with five years policy duration).  By paying the same COI rate but on a greater net amount at risk, Jane pays more for her greater amount of pure insurance coverage.  Because Jane's policy value is also lower than Sue's, Jane receives less in credited interest on this lower policy value than Sue even though both policy owners earn interest at the same interest rate determined by the insurer.  These amounts are summarized in Exhibit 5b.

### B.     UL Insurance Policies Explicitly Impose Certain Limitations on Premium Flexibility within the Policy

42.     Insurers can and do identify limitations to this premium flexibility within their policies.  For example, UL policies can contain explicit no-lapse guarantees that link coverage to a pre-specified premium payment.  In other policies, insurers may limit the maximum amount of premiums to be paid to, for example, ensure that the policy meets regulatory requirements for life insurance.

43.     When contractually imposed limitations on premium payments are clearly specified in the contract by the insurer, policy owners can make informed decisions as to the economic value of the premium flexibility afforded in UL insurance relative to the value of other life insurance products.  In the event that the insurer imposes restrictions on this flexibility after the policy owner enters into the contract, these ex-post restrictions can decrease the value of the policy for the policy owner.  Similarly, if the insurer charges policy owners for exercising their economic right to determine the timing and level of premium payments in a manner different from what is

described in the contract, the value of the policy can decrease for the policy owner. Effectively, if one has an option to determine the timing and level of premium payments, and either that option is taken away or the terms of exercising that option are reneged upon, the option is no longer as valuable to the owner. In other words, for an in-force UL policy, if an insurer were permitted to increase charges (i.e., cost of insurance rates) based on a policy owner exercising his or her flexibility in premium payments, such an increase would diminish the value of the policy without compensating the policy owner, and would set a precedent that should not exist.

### C.  Premium Financing and Life Settlements in UL Insurance

44.  The secondary market for life insurance allows policy owners to sell valuable policies to a third party, giving policy owners an additional way of exiting their policies.[36] Policy owners might be interested in selling a policy if their life circumstances had changed such that they no longer needed the policy (e.g., if income protection was no longer a consideration for that individual, or if a divorce or death impacted policy beneficiaries), they no longer were able to meet required premium payments, they needed an immediate financial benefit, or for any number of other individualized reasons. The modern secondary market for life insurance began in the 1980s, growing rapidly in the 1990s.[37] The life settlement market emerged in the late 1990s and life settlement firms emerged in the early 2000s to provide policy owners with greater access to the secondary market.[38] One research firm estimated that the life settlement market had grown to

---

[36] Policy owners may exit in other ways, such as by allowing their policies to lapse or by surrendering their policies.

[37] Neil A. Doherty and Hal J. Singer, "Regulating the Secondary Market for Life Insurance Policies," *Journal of Insurance Regulation* 21, no. 4 (Summer 2003), p. 67. See also Jim Aspinwall, Geoff Chaplin, and Mark Venn, *Life Settlements and Longevity Structures: Pricing and Risk Management* (West Sussex, UK: John Wiley & Sons Ltd, 2009), p. 14.

[38] Jim Aspinwall, Geoff Chaplin, and Mark Venn, *Life Settlements and Longevity Structures: Pricing and Risk Management* (West Sussex, UK: John Wiley & Sons Ltd, 2009), p. 14; "The Life Settlements Market: An Actuarial Perspective on Consumer Economic Value," Deloitte Consulting LLP and the University of Connecticut (2005), p. 3.

around $13 billion by early 2005.[39]  Life settlement firms provide potential benefits to policy

owners because they recognize that the economic value of policies may exceed their surrender

values, and by fostering an active and competitive secondary market, they enhance policy owner

and societal welfare.[40]  The life settlement industry provides more organization to the secondary

market, provides liquidity to an otherwise less liquid asset, enhances resale values in the

secondary market, and improves the economic welfare of policy owners and consumers in

general.[41]  In addition, "because the existence of a secondary market for life insurance improves

the liquidity of all life insurance policies that might potentially qualify for settlement, the

secondary market makes policies in the primary market more valuable for all consumers."[42]  A

survey in 2005 by the Life Insurance Settlement Association of 11 life settlement companies

representing approximately half the market found that these 11 companies alone provided policy

owners with $854 million more than the surrender value of settled policies.[43]

45.      By 2005, some industry participants had suggested that the "rapid expansion of [life]

settlements could alter some of the assumptions on which insurers base their profitability models,

including lapse rates and mortality experience."[44]  Phoenix was also aware of the impact of life

settlements on lapse rates and profitability.  Phoenix employees and internal documents have

---

[39] "Life Insurance Long View – Life Settlements Need Not Be Unsettling," Bernstein Research, March 4, 2005, p. 1.

[40] See Michael L. Frank, "Life Settlements – Understanding the Risks and the Benefits," *Insurance Journal West*, May 23, 2005.  See also Neil A. Doherty and Hal J. Singer, "Regulating the Secondary Market for Life Insurance Policies," *Journal of Insurance Regulation* 21, no. 4 (Summer 2003), pp. 63–64.

[41] "The Life Settlements Market: An Actuarial Perspective on Consumer Economic Value," Deloitte Consulting LLP and the University of Connecticut (2005), p. 3.

[42] Neil A. Doherty and Hal J. Singer, "Regulating the Secondary Market for Life Insurance Policies," *Journal of Insurance Regulation* 21, no. 4 (Summer 2003), p. 65.

[43] "Data Collection Report: 2004–2005," Life Insurance Settlement Association, pp. 4, 6.

[44] "Life Insurance Long View – Life Settlements Need Not Be Unsettling," Bernstein Research, March 4, 2005, p. 1.

acknowledged that Phoenix was aware by no later than 2005 that settled policies had the characteristics of not lapsing and of being minimally funded.[45]

46.     Premium financing of life insurance policies entails a policy owner borrowing funds from a third party  to make premium payments.  Premium financing may take two general forms:  non-recourse premium financing or recourse premium financing.  With non-recourse premium financing, the loan is collateralized only by the life insurance policy itself.  A policy owner who finances premiums for a new life insurance policy generally has three options at the end of the financing term.[46]  The policy owner can (1) repay the loan and continue to pay premiums without financing, (2) sell the policy to a third party and use the proceeds to repay the loan, or (3) assign the policy to his or her lender as repayment for the loan.  Although policy owners may generally choose any of these options, they generally choose to assign policies to their lenders due to the typical structure of these loans.[47]  Thus, premium-financed policies may become part of the life settlement market in this way.

47.     With recourse premium financing, the lender may pursue the policy or other of the policy owner's assets if the policy owner (i.e., the borrower) defaults on the loan.  Non-recourse premium financing began to take off in 2004 and grew rapidly through 2005.[48]  By no later than 2005 and 2006, Phoenix "sold a significant amount of the PAUL UL product in the non-recourse

---

[45] See, for example, Deposition of Stuart Kwassman, July 11, 2013, p. 120; Deposition of Philip Polkinghorn, July 23, 2013, pp. 115–17; Phoenix Product Strategy Committee Notes, August 17, 2005, p. 2 (PHL0582717).

[46] The financing term is generally two years.  See, for example, "Letting an Investor Bet on When You'll Die," *Wall Street Journal*, May 26, 2005; R. Marshall Jones, Stephan R. Leimberg, and Lawrence J. Rybka, "'Free' Life Insurance:  Risks and Costs of Non-Recourse Premium Financing," *Estate Planning* 33, no. 7 (July 2006).

[47] R. Marshall Jones, Stephan R. Leimberg, and Lawrence J. Rybka, "'Free' Life Insurance:  Risks and Costs of Non-Recourse Premium Financing," *Estate Planning* 33, no. 7 (July 2006).

[48] "Life Settlement Industry Poised for Growth as Financed Policies Hit Market; Welcome Funds CEO Advises Policyowners to Shop for Multiple Offers," *Business Wire*, August 22, 2006.

market."[49]  A
Phoenix document titled "Break the Barrier to Premium Financing with Phoenix Accumulator UL," a marketing piece, also discusses how a rider on the product can "provide high early cash value that can secure premium financing."[51]

## VII.  PAUL II and PAUL III Policies Expressly Provided for Premium Flexibility

48.    The PAUL II and PAUL III policies expressly provided that policy owners could exercise their discretion in determining the timing and level of premium payments.[53]  These policies contained explicit contractual language identifying the manner in which this premium flexibility was limited.  For example, these policies specifically identified contractual minimums and maximums related to premium payments.  PAUL II and PAUL III policies also provided for

---

[49] E-mail from Robert Lombardi to Diane Nemphos dated March 15, 2006 (PHL0882310).  See also e-mail from John Dinius to Amy Monemerlo et al., dated April 25, 2006, attaching a PWC memo dated April 20, 2006, p. 4 (PWC_USB_088776–83 at PWC_USB_088780).

[50] "Preliminary Product Approval Document, PEL III / PAUL II, Review of Term Rider Caps, Cost of Insurance Rates and Age 100+ Rider Rates," Version 4.0113 (at PHL0737554), and "Product Approval Document, PAUL II, Decrease in Cost of Insurance Rates," Version 2, June 9, 2004, p. 4 and p. 7 (PHL0875842 and PHL0875845).

[51] "Break the Barrier Premium Financing with Phoenix Accumulator UL," 2006 (PHL0176332).  Phoenix has identified this document as part of its marketing efforts.  See, for example, O'Connell Deposition, 6/19/13, pp. 268–269.

[52] E-mail chain from Byron Frank to Mitchell Katcher dated December 14, 2005 (PHL0792269–71 at PHL0792270).

[53] Unless otherwise noted, the policy form associated with the certificate number 97535603, which was written on the GU602 policy form, contains similar economic provisions to those described herein.  See, for example, USBCOI214816–77.

specific incentives to pay additional premiums (i.e., bonus interest).  The PAUL II and PAUL III policies did include specified contractual maximums that limited the amount of premiums that could be paid.

49.     These policies clearly indicated to policy owners that they could be charged for exercising this flexibility in a manner consistent with other UL insurance, but any increase, if appropriate, would be an increase to the COI charge, not an increase to the COI rate. Specifically, PAUL II and PAUL III policies explicitly informed policy owners that they would incur a monthly COI charge equal to a COI rate multiplied by the net amount at risk.  Nowhere in the policy forms did Phoenix state that the COI rate assessed against their policies would be affected by their choice of premium payment.

### A.     PAUL II and PAUL III Policies Explicitly Permitted Premium Flexibility

50.     The 33 policies at issue are UL insurance policies.  As with other UL insurance policies, flexible premium funding was a defining characteristic of these policies.  For example,[54] Phoenix policy forms associated with the PAUL II and PAUL III policies were clearly labeled:

FLEXIBLE PREMIUM LIFE INSURANCE POLICY[55]

Universal Life Insurance Policy
Flexible Premiums[56]

51.     Phoenix acknowledged in testimony that premium flexibility was a defining characteristic of the PAUL II and PAUL III products.  For example, Zafar Rashid, former senior vice president

---

[54] Policies written on the same policy form, e.g., policies written on form U606 or form 05PAUL, had identical language outside of the Schedule Pages, such that the economics underlying the policies were identical for policies written on that form.
[55] Policy 97515342, USBCOI001278.
[56] Policy 97528285, USBCOI022271.

in charge of the financial area for life and annuities and strategy advisor to James Wehr, the chief executive officer at the time, testified:[57]

> A. That is a premium that is not predefined and locked in.
> Q. Is that an element of PAUL policies?
> A. PAUL policies had premium flexibility so there was not an absolute requirement to pay premiums in any particular pattern.[58]
>
> Well, it's a benefit. The ability to adjust your premiums is a benefit under the policy.[59]

52.     Byron Frank, a vice president at Phoenix who was in charge of life insurance pricing,[60] also acknowledged that premium flexibility is an advantageous attribute of UL insurance:

> Q. And flexibility of premium payments is one of the main advantages of universal life, including PAUL, correct?
> A. Flexible premium could be seen as an advantage.[61]
>
> Q. He states "The beauty of universal life is flexibility." You have no reason to disagree with that statement, do you?
> A. That's what universal life has, flexible terms.[62]

> **B.      PAUL II and PAUL III Policies Stated that Policy Owners Would be Charged for This Flexibility Based on the Net Amount at Risk in Their Policies, Not By Changing the COI Rate Based on Their Choice of Premium Funding**

53.     For PAUL II and PAUL III policies, Phoenix stated that policy owners would be charged a monthly COI charge equal to the net amount at risk in their policy times the COI rate

---

[57] Deposition of Zafar Rashid, August 13, 2013 ("Rashid Deposition"), p. 11.

[58] Rashid Deposition, p. 85.

[59] Rashid Deposition, p. 86.

[60] Deposition of Byron Frank, July 16, 2013 ("Frank Deposition"), pp. 12–13.

[61] Frank Deposition, p. 286.

[62] Frank Deposition, p. 291, lines 17–22, citing to an e-mail from Swenson to Byron Frank dated February 13, 2004 (PLIC0774354–57).

applicable to their risk class.[63]  This COI charge as stated is consistent with what one would expect based on the economic principles underlying UL insurance and those economic concepts explicitly identified in their policies.  For example:

<u>PAUL II Policies:</u>

The cost of insurance is the amount We charge each month for providing the insurance coverage.  The cost of insurance is equal to:

(A x (B – C)) + D; where

A= the applicable cost of insurance rate for the Insured's risk class, based upon the Net Amount at Risk and Insured's risk class, including any applicable substandard mortality percentage extra.  The Net Amount at Risk is equal to (B–C) below:

B= the Death Benefit at the beginning of the Policy Month, divided by the Monthly Factor shown on the Schedule Pages;

C= the Policy Value at the beginning of the Policy Month, after the Monthly Service Charge and, when applicable, one-twelfth of the Issue Charge, and prior to subtracting the Cost of Insurance for that month;

D= the Substandard (Temporary or Permanent) Extra Charge, if any, shown, on the Schedule Pages.
…
The cost of insurance rate for each Policy Month is based on the Insured's age at issue, risk class and sex, and on policy duration.  The rate used in computing the cost of insurance is obtained from the Table of Guaranteed Maximum Cost of

---

[63] In each case, the net amount at risk was defined as an adjusted face amount minus the policy value. Specifically, the face amount was divided by a monthly factor that was identified in the policy form.  See, for example policy 97515342 at Schedule Page 4 (USBCOI001282), "Monthly Factor used in determining Cost of Insurance: 1.0032737," and at p. 10 (USBCOI001295), describing that the cost of insurance charge incorporates "the Death Benefit at the beginning of the Policy Month, divided by the Monthly Factor shown on the Schedule Pages." See also, for example, policy 97528285 at p. 7 (USBCOI022277), "The Monthly Factor used in determining Cost of Insurance is 1.0032737," and at p. 12 (USBCOI022282), describing that the Net Amount at Risk incorporates "the Total Face Amount divided by the applicable Monthly Factor shown in the footnote in Section 2."

Insurance Rates shown on the Schedule Pages for the insured risk classification(s), or such lower rate as We may declare.[64]

PAUL III Policies:

The Cost of Insurance Charge for a specific Policy Month is the charge for the Net Amount at Risk. The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk, and such rates will be based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions.[65]

54.     By charging an insured life with the same mortality risk the same COI rate multiplied by the dollar net amount at risk in an individual policy, a policy owner would compensate Phoenix for its proportionate share of expected death claims. As a result, policy owners were to be charged a mortality charge that would cover their proportionate share of the death claims expected by the insurer.

55.     The policies also stated that the COI rate was determined based on such factors as mortality, persistency, investment earnings, expense experience, or capital and reserve requirements or taxes.[66] Neither of the policies stated that the COI rate would be based on the timing or amount of premiums paid or policy value, much less some undefined threshold of accumulated policy value. For example:

PAUL II Policies

[The COI rate is]…the applicable cost of insurance rate for the Insured's risk class.…

---

[64] Policy 97515342, USBCOI001295.

[65] Policy 97528285, USBCOI022282.

[66] Policy form 05PAUL discusses "capital and reserve requirements, and tax assumptions" while form U606 does not. See, for example, Policy 97515342, USBCOI001295 and Policy 97528285, USBCOI22282.

The cost of insurance rate for each Policy Month is based on the Insured's age at issue, risk class and sex, and on policy duration….

…Any change in rates will be based on a change in Our expectations of future investment earnings, mortality, persistency and expense/administrative costs.[67]

PAUL III Policies

The Cost of Insurance Charge for a specific Policy Month is the charge for the Net Amount at Risk. The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk, and such rates will be based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions.[68]

56.     Importantly, none of the descriptions offered in the policies relating to the COI rate to be charged stated that a policy owner's choice of premium funding would affect their COI rate going forward. Moreover, Phoenix specifically stated that it would change its COI rates only in the event that there was a change in its expectations as to future investment earnings, mortality, persistency, and expense or administrative costs.[69] Any change in PAUL II policy rates would also be determined prospectively and would not distribute past gains or recoup future losses.[70]

57.     While the PAUL III policy form did not specify what reasons would constitute a justifiable change in the COI rate, it did enumerate the permitted bases on which a COI rate would be determined, and stated that any change would be determined prospectively and would not distribute past gains or recoup prior losses.[71] Both the PAUL II and PAUL III forms stated

---

[67] See, for example, policy 97515342, pp. 10–11 (USBCOI001295–96).
[68] See, for example, policy 97528285, p. 12 (USBCOI 022282).
[69] See, for example, policy 97515342, p. 11 (USBCOI001296).
[70] See, for example, policy 97515342, p. 11 (USBCOI001296).
[71] See, for example, policy 97528285, p. 12 (USBCOI022282).

that Phoenix would not change COI rates in a manner that resulted in either non-uniform or discriminatory treatment of insureds in the same class.[72]

### C. PAUL II and PAUL III Policies Explicitly Imposed Certain Limitations on Premium Flexibility and Incentivized Higher Funding through Payment of an Interest Bonus

58.     PAUL II and PAUL III policies explicitly described the limitations imposed by Phoenix on a policy owner's choice of the timing and size of premium payments.  These limitations related to contractually mandated limits on the minimum and maximum amounts of premium payments required by the policy.  Provided these limitations were met by the policy owner, policy owners had full discretion over the timing and magnitude of premium payments.

59.     For example, the PAUL II policy stated:

> Subject to the limitations stated below, You may pay additional premiums at any time prior to age 100 while this policy is in Force.…
>
> The minimum premium payment amount that We will accept is $25.…
>
> The total premium limit is shown on the Schedule Pages and is applied to the sum of all premiums received by Us to date, excluding premiums applied to debt repayment, reduced by the sum of all partial withdrawals paid by Us to date.  If the total premium limit is exceeded, We will refund the excess with interest at an annual rate of not less than 4%, not later than 60 days after the end of the Policy Year in which the limit was exceeded.  The Policy Value will be adjusted to reflect such refund.[73]

60.     The total premium limit referenced in that section of the PAUL II policy is identified in the Schedule Page of the policy, for example:

---

[72] See, for example, policy 97515342, p. 11 (USBCOI001296), and policy 97528285, p. 12 (USBCOI022282).
[73] Policy 97515342, p. 6 (USBCOI001291).

Total Premium Limit:  Greater of $1,208,007.46 and result of $163,644.50 multiplied by the number of elapsed policy years (or fraction thereof) after November 12, 2005.[74]

61.    The PAUL III policy stated:

Subject to these limitations, you may pay additional premiums at any time prior to the Age 100 Anniversary and while this policy is in force.  Unless we agree otherwise, maximum premium payments are subject to the Maximum Annual Premium shown in Section 1.…

…The minimum premium payment that we will accept is $25.[75]

62.    The Maximum Annual premium referenced in that section of the PAUL III policy is identified in the Schedule Pages of each policy.  For example, in one policy, the Maximum Annual premium was set at $1 million.[76]

63.    In addition to these contractually specified minimums and maximums, PAUL II and PAUL III policies contained no-lapse provisions that provide further guidance to policy owners regarding the timing and amount of premiums required for the policy to remain in force. Generally, PAUL II and PAUL III policies required that the policy value be large enough to cover monthly deductions charged against the policy value.  As long as the policy value was large enough to cover these monthly deductions, the policy would not lapse.

64.    For example, the PAUL II policies granted policy owners a 61-day grace period to pay additional premiums in the event that either the policy value (less policy debt) or the surrender value was less than the scheduled monthly deduction.[77]  If a policy entered this grace period,

---

[74] Policy 97515342, Schedule Page 1 (USBCOI001279).

[75] See, for example, policy 97528285, p. 14 (USBCOI022284).

[76] Policy 97528285, p. 6 (USBCOI022276).

[77] See, for example, policy 97515342, p. 7 (USBCOI001292).  During the first seven Policy Years, the Policy Value less any Policy Debt had to exceed the required monthly deduction to avoid entering a grace

within the 61 days, policy owners could pay additional premium sufficient to cover three monthly deductions to maintain the policy in force.

65.     PAUL III policies had similar provisions.  However, within the first five years of the policy a separate no-lapse condition applied.  Specifically, within the first five years, the face amount, supplemental face amount, and rider benefits would not terminate provided policy owners paid sufficient premiums to satisfy a total cumulative premium test.[78]  This total cumulative premium test required policy owners to pay or have paid premiums equal to or greater than the cumulative to-date sum of a contractually specified monthly guarantee premium, which was less than the planned premium amount.[79]

66.     Provided policy owners made premium payments within the minimum and maximum limits specified and provided these payments were sufficient to guarantee that the policy would not lapse, policy owners had full discretion to determine the magnitude and timing of premium payments.  This flexibility was consistent with the economic principles underlying UL insurance.

67.     Phoenix included a separate provision, ostensibly designed to encourage additional premium payments by policy owners, within the PAUL II and PAUL III policies.  Specifically, these policies stated that policy owners would receive an interest bonus in addition to the interest credited under the policy.  This interest bonus would be paid on amounts in excess of the Policy Benchmark Amount, which equaled the Policy Value Benchmark Percentage multiplied by the Face Value of the policy.  For example:

> On each Monthly Calculation Date beginning on the Interest Bonus Start Date, (shown in Section 1), in addition to interest being credited under the policy, we

---

period.  In later Policy Years, the Surrender Value had to exceed the required monthly deduction to avoid entering a grace period.
[78] See, for example, policy 97528285, p. 14 (USBCOI022284).
[79] See, for example, policy 97528285, p. 11 (USBCOI022281) and p. 3 (USBCOI022273).

will also credit an Interest Bonus on amounts in excess of the Policy Value Benchmark Amount, defined as follows

> The Policy Value Benchmark Amount is equal to the Policy Value Benchmark Percentage (shown in Section 1) multiplied by the sum of the Total Face Amount at issue and the insurance amount then in effect on any applicable riders attached to this policy.[80]

> Beginning in the third Policy Year of this policy, in addition to interest being credited under the policy on each Monthly Calculation Day, We will also credit an interest bonus on each Monthly Calculation Day on amounts in excess of the Policy Value Benchmark Amount, shown on the Schedule Page.[81]

68.     The economic import of these policy provisions is that policy owners would be paid a bonus if they contributed premiums such that a Policy Value Benchmark was reached, as opposed to suffering additional costs if the Policy Value Benchmark was not reached.  Based on my extensive review of the policies at issue, I have found no reference to a Policy Value Benchmark that would suggest that policy owners would pay more in monthly expenses (specifically COI rates) based on their funding relative to this Policy Value Benchmark.

## VIII.    The Policies at Issue Were Charged Monthly COI Charges in a Manner Consistent with That Expressed in the Policy Forms Prior to the 2010 and 2011 Rate Increases

69.     Prior to the announced rate increases scheduled for 2010 and 2011, the policies at issue incurred monthly COI charges in a manner consistent with what was expressed in the policy forms and with what would have been expected given the economic principles underlying UL insurance.  That is, policy owners were charged a monthly COI charge that equaled a COI rate multiplied by the monthly net amount at risk in their policy.  This COI rate did not vary

---

[80] Policy 97528285, p. 13 (USBCOI022283).
[81] Policy 97515342, p. 9 (USBCOI001294).

depending on the funding history or policy value.[82]  Rather, the COI rate was identified based on the age, sex, and risk classification of the insured life and the face amount and duration of the policy at issue.

70.     For purposes of illustration, Exhibits 6a through 6e provide a stylized example to demonstrate how the monthly COI charge was assessed for a policy owner prior to the 2010 COI rate increase.  Exhibit 6a demonstrates that the policy owner's policy value changed monthly depending on the amount of premium paid, the amount of interest credited, and the amount of monthly deductions charged.  For example, based on the annual summary reporting account activity, the policy value for this policyholder as of November 12, 2008, was $8,395.77.  Over the next monthly period, November 13, 2008, to December 12, 2008, the policy owner did not pay any monthly premiums, earned $30.43 in accrued interest, and was charged $3,364.51 in monthly deductions.  As of the end of the period on December 12, 2008, the policy value had decreased to $5,061.69, where $5,061.69 equals $8,395.77 + $0 + $30.43 − $3,364.51.

71.     Exhibit 6b shows that the monthly deduction was the sum of two components:  a monthly service charge and a monthly COI charge.  For example, the monthly deduction mentioned above equaled $3,364.51.  Of this amount, $3.50 resulted from the monthly service charge and $3,361.01 resulted from the monthly COI charge.[83]

72.     Exhibit 6c describes how the monthly COI charge of $3,361.01 was determined.  Recall that Phoenix's policy forms state that the COI charge is equal to the COI rate multiplied by the net amount at risk.  The COI rate is typically reported in a footnote of the annual summary.[84]

---

[82] To make this determination, I analyzed the policy values, interest crediting amounts, and monthly deductions reported in the annual summaries.

[83] This monthly COI charge was not reported separately by Phoenix to policy owners in their annual summaries.

[84] Prior to the 2010 COI rate increase, Phoenix reported the effective COI rate per $1,000 assessed, which had remained the same throughout the year.  This reported effective COI rate per $1,000 generally

The net amount at risk utilized by Phoenix in its calculation equaled the face amount (equivalently, death benefit) divided by a monthly factor (which was identical across all of the policies at issue) minus the policy value.[85]  For example, for the month ending December 12, 2008, for this policy, the relevant inputs were:

- COI rate equal to 0.0016903

- Face amount divided by monthly factor equal to $1,993,473.96 = $2,000,000 / 1.0032737

- Policy Value equal to $5,061.66

73.    Based on these inputs, the net amount at risk equaled $1,988,412.30 = $1,993,473.96 – $5,061.66.  The monthly COI charge equaled this net amount at risk multiplied by the COI rate. Specifically, $3,361.01 = $1,988,412.30 * 0.0016903.

74.    For example, Exhibits 6d and 6e illustrate how Phoenix determined the relevant COI rate. Given that the insured life was a female aged 75 at policy issue, classified as preferred plus, and the face value of the policy was $2 million, Phoenix applied the table rates found in Exhibit 6e.

---

equaled the COI table rate times 1,000 times the banding factor.  However, following the 2010 COI increase, the reported effective rate resulted from the application of a formula that required three inputs that were unknown to policy owners:  the old effective rate that would have applied but for the increase, the new COI table rate, and the target funding ratio.  As discussed below in Section IX.A, this new effective rate changed monthly and varied across individuals depending on their funding experience to date.  Following the 2010 COI rate increase, Phoenix stopped reporting to policy owners the effective COI rate charged against their policy value.  Based on information received from Phoenix—including essential information concerning banding factors, COI table rates, and target funding ratios that I understand was provided by Phoenix during the last week of discovery (*see* U.S. Bank Ex. 6; U.S. Bank Ex. 217 at 2, 5; U.S. Bank Ex. 218; U.S. Bank Ex. 219; Deposition of Gina O'Connell, August 29, 2013, pp. 668–669, 686–688, 837–838, 850–855)—I was able, with a significant amount of work, to understand how the COI rates were determined after the 2010 and 2011 COI rate increases and how these rates related to monthly deductions for the policies at issue.  Based upon this understanding, I was able to provide estimates of the value decline to policy owners caused by the rate increase and the excess premiums paid to date by Plaintiff using commonly accepted economic methods.  Significant amount of work and analysis was required because, for example, Phoenix's annual summaries provide only bundled monthly deductions, and these deductions were based, in part, upon the monthly net amount at risk figures, which were not provided in the annual summaries.

[85] The face amount was equal to the base policy death benefit for policy owners choosing death benefit Option A, as was the case for all 33 policies at issue.

As of December 12, 2008, the policy had a duration of four years. The table rate is found by reading across the row for policies with an issue age of 75 to the column for policies with a four-year duration. As shown in Exhibit 6e, this COI table rate is 0.0018781.

75.     The COI rate of ███████ identified in Exhibit 6c is equal to the table rate times a banding factor.[86] The banding factor applied to this policy equaled ███. Exhibit 6d demonstrates this calculation. For the period ending December 12, 2008, Phoenix used a COI rate equal to ███████, calculated as ███████████

76.     For the policy year spanning November 12, 2008, to November 11, 2009, the COI rate used by Phoenix to determine the monthly COI charges over this period remained the same. Because the insured life was still 75 years old at policy issuance, female, and classified as preferred plus, and given that the policy itself was still in its fourth year of duration and the face amount remained equal to $2 million, the COI rate did not change.

77.     At the next policy anniversary date, November 12, 2009, the policy duration becomes five years. During the fifth policy year, Phoenix used the same COI rate each month in calculating the monthly COI charge. As it did in the prior year, Phoenix identified this rate using the table rates identified in Exhibit 6e. Specifically, Phoenix used the same table of table rates and simply followed the row for issue age 75 to the column for policy duration five years.

78.     This annual increase in the applicable COI rate (i.e., moving across the COI table one column at a time) as the policy duration increases each year is as expected, and this is reflected in the policy language. For example, policy schedule pages describe maximum COI rates that increase each policy year and policies state that COI rates are based on policy duration, which

---

[86] ████████████████████████████████████████████████

increases every year as the attained age of the insured life increases and the policy remains in force.[87]  For each insured life, the probability of death is higher at older attained ages; therefore, the probability that the insurance company must pay a death benefit on an in-force policy is also greater, as is the COI rate.

## IX.  The 2010 and 2011 COI Rate Increases Were Economically Inconsistent with the Contractual Terms and Resulted in Non-uniform and Discriminatory Treatment between Policy Owners

79.    Pursuant to the letters sent by Phoenix, Phoenix increased the COI rate assessed in computing the monthly COI charges for the policies at issue.  Thirty out of the 33 policies at issue experienced a COI rate increase announced in 2010, which became effective for those policies sometime in 2010 or early 2011.[88]  Two out of the 33 policies at issue experienced a COI rate increase announced in 2011, which became effective for those policies sometime in 2012.[89]  The effective date of these 2010 and 2011 COI rate increases varied by policy depending on the anniversary date of the policy.

---

[87] See, for example, policy 97515342, Schedule Page 4 (USBCOI001282).

[88] According to O'Connell Deposition, 6/18/13, pp. 179–80, the policies at issue that were affected by the 2010 COI rate increase were policies that Phoenix referred to internally as PAUL IIc and PAUL III blank. Using the annual summaries associated with policies, I was able to analyze the monthly deductions assessed in 2010 and 2011 to determine that 28 out of the 30 policies in fact experienced the improper 2010 COI rate increase described in this section.  For 2 of the 30 policies, I was unable to analyze the monthly deductions assessed in 2010 and 2011; however, I have seen no evidence to suggest that these policies did not experience the rate increase announced in the letters from Phoenix.  See letters dated March 8, 2010 (USBCOI189781) and March 19, 2010 (USBCOI189875).

[89] According to an August 24, 2011 letter sent from Phoenix to the State of New York Insurance Department (PHL020885), the policies at issue that were affected by the 2011 COI rate increase were policies that Phoenix had referred to internally as PAUL IIIa, PAUL IIIb, and PAUL IIIc.  Using the annual summaries associated with one out of the two policies, I was able to analyze the monthly deductions assessed in 2012 to determine that these policies had in fact experienced the improper 2011 COI rate increase described in this section.  For one out of the two policies, I did not have annual summaries associated with this year of increase.  However, it is consistent to assume that this policy in fact did experience this rate increase based on the letter to the State of New York Insurance Department and the fact this policy received a letter notifying the policy owner of the pending 2011 COI rate increase. See PHL020885 and USBCOI000034.

**A.** **The 2010 COI Rate Increase Was Economically Inconsistent with the Terms of the PAUL II and PAUL III Policies**

80.     The 2010 increase in the COI rates was economically inconsistent with the terms of the policies and resulted in the non-uniform and discriminatory treatment of policy owners who had decided to exercise their right to minimally fund their policies.  As demonstrated in Section VIII, prior to this COI rate increase, Phoenix determined the effective COI rate to apply in calculating a monthly deduction by identifying the relevant preexisting table rate and multiplying that rate by a banding factor.  Had Phoenix continued to apply this methodology, it would have simply looked up the next relevant table rate along the row associated with the insured life's age at issue.

81.     For example, for the policy examined in Section VIII, Phoenix would have applied the table rate of ███████ found in the row labeled 75 to the policy duration column labeled 6.  This table rate corresponded to a female, preferred plus insured risk that was 75 years old as of the policy issuance date and whose policy had a face value of $2 million and a duration of six years.  Multiplying this table rate of ███████ by the banding factor of ████ gives the effective COI rate for November 2010, which would have been ███████  However, instead of ███████ Phoenix used an effective COI rate of ███████ for this policy for the month ending November 12, 2010.

82.     This new effective COI rate resulted from the introduction of an entirely new set of table rates, the use of an undisclosed target funding ratio, and the use of a complicated undisclosed formula.  Exhibit 7a demonstrates how Phoenix determined the applicable COI rate for policies affected by the 2010 COI rate increase.

83.     As detailed above, before the 2010 rate increase, the effective COI rates applied to policies were equal to COI table rates multiplied by a banding factor.[90]  This is shown in the top portion of Exhibit 7a.  After the 2010 rate increase, the effective COI rates applied to policies were no longer equal to these "old" effective COI rates ("old COI rate(s)").  The "new" effective COI rates ("new COI rate(s)") were equal to or greater than the old COI rates and equal to or less than the new table COI rates introduced by Phoenix.  In other words, the old COI rates and the new table COI rates bounded a range of possible new COI rates.  The specific rate within that range that Phoenix applied to any given policy owner depended on that policy owner's funding ratio relative to a "target funding ratio" determined by Phoenix.[91]  Phoenix calculated the difference between the new table COI rate and the old COI rate, multiplied this by a percentage based on funding ratios, and added this figure to the old COI rate to determine the new COI rate.  This is shown in the bottom portion of Exhibit 7a.[92]

84.     The 2010 COI rate increase resulted in non-uniform and discriminatory treatment of policy owners.  Before the 2010 rate increase, COI rates were the same for all policy owners that shared certain characteristics, but this new and complex formula meant that after the rate increase, policy owners with shared characteristics, but who had made different funding choices,

---

[90] Banding factors were based on policy face amount.  Prior to the 2010 COI rate increase, when PAUL III policies had policy values at least 50% of face amounts, and the attained age of the insured was greater than age 90, the monthly COI rates were reduced by 5% (PHL0776367–70).  In addition, some policy owners may have received a COI rate discount called a "Healthy Measure Reward" discount.  See Project X, Product Specifications Version 1, dated August 26, 2008 (PHL0591573–79).  Neither of these discounts appears  to have applied to the policies at issue; thus, for exposition purposes, I do not discuss them further.

[91] A policy owner's funding ratio is equal to the policy value on any given date divided by the policy's face amount.  Because policy values change each month with credits and debits, such as monthly deductions and interest credited, funding ratios also change each month.  See Deposition of Christopher A. Macklem, July 30, 2013 ("Macklem Deposition"), p. 33; Deposition of Gina O'Connell, June 19, 2013 ("O'Connell Deposition, 6/19/13"), pp. 290–91.

[92] After the 2010 COI rate increase, if a policy's funding ratio exceeded the target funding ratio, no increase to the old COI rate applied.  This was not the case for the example policy shown in Exhibit 7a; thus, I omit this portion of the formula for exposition purposes.

experienced different COI rates. For example, before the 2010 rate increase, two policy owners who were both female, age 70 at policy issuance, preferred plus, had policy duration of four years, and had $2 million face amount on their policies, would have the same COI rates applied to their policies in any given policy period. Following the rate increase, if these two policy owners had made different choices about funding, they would experience different COI rates. Our hypothetical policy owners Jane and Sue, in Exhibit 5, would have different COI rates applied to determine their COI charges. A policy owner who had minimally funded a policy, i.e., only paid premiums sufficient to cover monthly deductions and keep the policy in force, was subject to greater COI rate increases than a policy owner who had funded a policy to a greater extent following the rate change. Phoenix never identified target funding ratios as a factor that might be applied to determine the COI rate assessed in determining the monthly COI charge. Phoenix acknowledged the use of target funding ratios in the determination of the COI rate and also acknowledged that policies did not identify target funding ratios as a basis for a possible change in COI rates.[93]

85.     Furthermore, while the old COI rate and the new COI table rate remained constant over the policy year after the rate increase, the effective COI rates used to determine COI charges changed each month. This is because each month, any given policy owner's funding ratio changed, and the relationship of this funding ratio to Phoenix's "target funding ratio" also changed. Every policy owner experienced an *entirely individualized* COI rate each month.[94] Neither funding ratios, target funding ratios, nor the applicable COI rates actually used each month were printed on policy owners' annual summaries. Whereas in the past, policy owners

---

[93] See Macklem Deposition, p. 34; O'Connell Deposition, 6/19/13, pp. 286–87.
[94] Phoenix acknowledged this. See O'Connell Deposition, 6/19/13, pp. 290–291.

had been told what effective COI rate had been applied to their policy, policy owners no longer received this information.

86.    In addition, the 2010 COI rate increase did not apply to all policy owners, only to certain policy owners with issue ages of 68 and above and face amounts of $1 million and above.[95]

### B.    The 2011 COI Rate Increase Was Economically Inconsistent with the Terms of the PAUL III Policy

87.    The 2011 increase in the COI rates was economically inconsistent with the terms of the policy and resulted in discriminatory treatment of policy owners who had decided to exercise their economic right to minimally fund their policies.  Phoenix has acknowledged that, with the 2011 rate increase, new COI table rates were introduced for the products it internally identifies as PAUL IIIa, PAUL IIIb, and PAUL IIIc, but only for policy owners with issue ages and face amounts above certain levels.[96]  The 2011 rate applied only to these subgroups of policy owners who owned these products.  This rate increase is depicted in Exhibit 7b, which shows that, for the subject policies, COI rates were calculated in the same manner before and after the rate increase, with the new COI table rates applied after the increase.

88.    Phoenix used policy funding, i.e., "the ratio of total account value to total face amount," to determine which subgroups of policy owners were subject to the 2011 rate increase.[97]  In addition, Phoenix has stated a criterion for the 2011 rate increase was "premium persistency"[98] and that "funding level and premium persistency are the same thing."[99]

---

[95] See Macklem Deposition, p. 33.
[96] See O'Connell Deposition, 6/19/13, p. 302.
[97] See O'Connell Deposition, 6/19/13, pp. 298-301; Macklem Deposition, pp. 35–40.
[98] See O'Connell Deposition, 6/19/13, pp. 294–96.
[99] See Frank Deposition, p. 100.

89.     The terms "premium persistency" and "persistency" are not the same.  "Persistency" refers to policy lapses and the extent to which policies lapse or persist.  Persistency, in other words, is the percentage of policies not terminated by policy owners by allowing them to lapse or by surrendering them.[100]  Phoenix's 10-Ks make clear that "persistency" relates to policy lapse and not premium or funding patterns:

> 2007 10-K: Pricing of our products is also based in part upon the expected persistency of these products, which is the probability that a policy or contract will remain in force from one period to the next.[101]

> 2008 10-K: We set prices for many of our insurance and annuity products based upon expected investment returns, claims, expected persistency of these policies and the expected level and pattern of premium payments into these policies.… Recent trends in the life insurance industry may affect our mortality, persistency and funding levels.[102]

> 2009 10-K: Our results may be negatively impacted if investment returns, mortality rates, persistency rates, funding levels, expenses or other factors differ significantly from our assumptions used in pricing products.[103]

90.     In its quarterly earnings calls and investor presentations, Phoenix also makes clear that "persistency" is something conceptually distinct from "funding levels" and that "persistency" refers to policy lapse rates:

> 3Q2006:  …In addition to strong mortality, persistency was very good across the life product lines, with lapse ratios below 5% in both VUL and UL, which is consistent with our experience over the past few years.[104]

---

[100] For clarity of exposition, I do not continue to explicitly discuss surrendered policies as part of persistency, and only explicitly discuss lapsed policies.
[101] 2007 PHL 10-K, p. 7.
[102] 2008 PHL 10-K, p. 11.
[103] 2009 PHL 10-K, p. 13.
[104] Phoenix, Q3 2006 Earnings Call at p. 2, October 26, 2006.

4Q2006: …Persistency, at lapse rate of less than 5%, remains favorable to our pricing assumptions.  After three quarters of below trend investment income, the fourth quarter benefited from 9 million pre-tax of make hold premiums and partnership gains.[105]

1Q2010: …the possibility that mortality rates, persistency rates, funding levels or other factors may differ significantly from our assumptions used in pricing products.[106]

2006 Keefe, Bruyette, and Woods Insurance Conference:  This slide shows our overall insurance fundamentals and you can see that we enjoy strong persistency rates, lapse rates of only 4% or 5% in our key line, strong investment margins on our universal life line and our insurance margins basically the difference between what we're charging cost of insurance rates and our net claim is high.[107]

## X.     Phoenix's COI Rate Increases Resulted in Economic Losses to Policy Owners

### A.      The COI Rate Increases Resulted in Losses to Policy Owners Caused by the Decline in the Value of the Policy

91.     No later than the date that the COI rate increase began to be charged to each policy owner, Phoenix unilaterally determined to usurp the value of the benefit of premium flexibility from policy owners.  At that point, Phoenix was uniquely situated to understand the expected amount of value usurped because it uniquely knew the COI rates that were expected to be charged to policy owners before and after the rate increase.

92.     The expected amount of value usurped by Phoenix caused a decrease in the value of the policy to policy owners.[108]  Other things equal, the COI charges applied to a policy subject to a COI rate increase would be lower but for the COI rate increase.  Similarly, the premiums

---

[105] Phoenix, Q4 2006 Earnings Call at p. 2, February 1, 2007.

[106] Phoenix, Earnings Review First Quarter 2010, May 4, 2010.

[107] Transcript of the 2006 Keefe, Bruyette, and Woods Insurance Conference, September 7, 2006, p. 3.

[108] This decrease in value can serve as a reliable conservative estimate for the decrease in the resale value of a policy.  For example, to the extent that market participants believe that the rate increase signals additional improper rate increases in the future, the resale value would be diminished by an amount greater than the decline estimated herein.

required to maintain a desired level of insurance benefit would be lower, other things equal, but for the COI rate increase. In other words, to prevent higher COI charges from eroding policy value, a policy owner subject to a COI rate increase would have to pay greater premiums than would have been required without the rate increase. Every month in which the policy is in force after the COI rate increase, until the insured life either dies or reaches an attained age of 100,[109] the policy owner will be required to pay excess premiums necessitated by the COI rate increase. Thus, the expected decrease in value can be estimated by analyzing the expected future increase in the amount of premium payments required to maintain the policies in force. As a matter of economics, the expected decrease in the value of the policy to policy owners can be estimated using a discounted cash flow analysis.

93.     For each policy at issue, I estimated the decrease in policy value attributable to the increase in COI rate using a discounted cash flow analysis. Specifically, for each policy, I estimated the amount of future monthly premiums that policy owners would have to pay to keep the policy in force with and without the COI rate increase.[110] For each policy, I estimated these future monthly premiums assuming that Phoenix would pay interest credits on account values at the contractual minimum of 4%. I also assumed that no loans or withdrawals would be taken

---

[109] Each of the 21 PAUL II policies at issue, including certificate number 97535603 written on form GU602, contains an "AGE 100+ RIDER" which, among other benefits, states that "Monthly Service Charges and Cost of Insurance Charges will not be deducted after this anniversary [the policy anniversary nearest the Insured's 100th birthday]." See, for example, Policy 97515342 (USBCOI001308). Similarly, Section 8 of each of the 12 PAUL III policies at issue states, "[O]n or after the Age 100 Anniversary…[w]e will cease to take Monthly Deductions specified in Section 1, and we will not accept any further premium payments." See, for example, Policy 97528285 (USBCOI022281).

[110] The minimum funding level required to keep the policies from lapsing, or from entering a grace period, is defined in the policy contracts. I assume that policyholders would pay premiums sufficient to prevent lapse and also to prevent entering a grace period. I also assume that U.S. Bank intended to minimally fund these policies going forward. That is, U.S. Bank intended to, over time, pay premiums sufficient to maintain the policy in force pursuant to the contractual provisions identified in the policy forms. This assumption is consistent with the evidence I have reviewed relating to U.S. Bank's decisions to date.

against the value of the policies after the COI rate increase and that policy owners continue with Death Benefit Option A over the remaining duration of the policy.[111]

94.    To estimate the future monthly COI charge had Phoenix not increased the COI rates improperly, I followed the procedure that had been in place at Phoenix prior to the rate increase. Specifically, on each policy anniversary, I assumed that the relevant COI table rate equaled the rate identified by following the applicable row in the applicable COI rate table that had been in use prior to the rate increase. I calculated the COI rate assessed against the net amount at risk in the policy also following the procedures that had been in place prior to the rate increase. Given this COI rate, I estimated the future monthly COI charge by multiplying the COI rate, the applicable banding factor, and the expected net amount at risk.

95.    To estimate the future monthly COI charge given Phoenix's improper increase in COI rates, I followed the procedure used by Phoenix following the rate increase. Specifically, on each policy anniversary, I identified the relevant old COI rate and the new COI table rate. For the 2010 rate increase, I calculated the change in COI rate used by applying the formula as described above in Section IX.A. For the 2011 rate increase, I identified the new COI rate using the new table rates applicable to the policy. Given this COI table rate , I estimated the future monthly COI charge by multiplying the COI table rate, applicable banding factor, and the expected net amount at risk.

96.    Given the estimates of the future monthly COI charges with and without the COI rate increases, the service charges identified in the policies, and the assumption that Phoenix would credit monthly interest at the annualized rate of 4%, I calculated the monthly premiums required

---

[111] Exhibit 3 shows that, at the effective dates of the COI rate increase, the Option A Death Benefit applied to the 33 policies at issue. I assume that U.S. Bank did not intend to change the death benefit option and that it did not intend to make withdrawals from the policy. Both assumptions are consistent with the evidence I have reviewed relating to U.S. Bank's decisions to date.

to maintain the policy in force.  The difference between the estimated monthly premium required to maintain the policy in force with and without the rate increase equals the future monthly excess premium produced by the improper COI rate change.  The likelihood that a policy owner would be required to make this excess premium payment on a particular premium due date depends on whether the insured life would survive to that date.  Thus, the expected future monthly excess premium equals the likelihood of the insured life having survived up until the time of the requisite excess premium payment times the amount of the excess premium payment. I use the ultimate mortality tables compiled by the Society of Actuaries that are publicly available on its website to form estimates of the likelihood of survival.[112]

97.     The expected future monthly excess premium payments necessitated by the COI rate increases are expected to occur in the months following the imposition of the rate increase. Thus, the expected future monthly excess premium payments need to be discounted back to the time of the imposition of the rate increase to ensure comparability.  I discount the expected future monthly excess premium payments at both the then-expected risk free rates and at a discount rate that incorporates a risk premium.  A risk premium is only relevant to the extent that the expected future monthly excess premium payments co-vary with systematic risk.[113]  I use the

---

[112] See "Appendix C-Primary Tables (Excel Spreadsheet) – revised 02.16.09, including temporary smoking status unknown tables" found at http://www.soa.org/research/experience-study/ind-life/valuation/2008-vbt-report-tables.aspx.

[113] As a matter of economic principles, investors are compensated for systematic risk.  Systematic risk relates to the risk that the future expected additional monthly premium payments would be expected to increase or decrease coincident with overall increases or decreases in the value of a broadly diversified portfolio of other market investments.  To the extent that future COI rate changes or interest rate crediting in excess of 4% are related to overall market conditions, some exposure to systematic risk may be warranted.  However, I note that this exposure is expected to be limited because, for example, the amount of interest credited must be equal to or greater than 4% regardless of market fluctuations, and Phoenix had not changed COI rates in the past despite the fact that there were historical market fluctuations (see, for example, the fluctuations in the performance of the S&P 500 available under the ticker GSPC at http://finance.yahoo.com/).

then-promised yields on U.S. Treasury Zero Coupon Strips as a proxy for the then-expected risk free rate, and an equity risk premium based on a practitioner survey.[114]

98.    Exhibit 8 presents the results of my discounted cash flow analysis.  As of the date of my report, applying a prejudgment interest rate of 9% to the policy-specific estimate of the decline in value[115] results in a total expected decrease in policy values, across all policies, with prejudgment interest, of $13.7 million when discounting at the risk free rate, and $10.6 million when discounting at the risk free rate plus a premium.[116]

### B.    Plaintiff Has Paid Excess Premium Payments to Date Due to the Improper COI Rate Increases

99.    As a result of the imposition of the rate increases, U.S. Bank has made additional premium payments to date that it would not have made had the rate increase not occurred.  The additional out-of-pocket expenses incurred by U.S. Bank can be estimated using information pertaining to the actual premiums paid to date by U.S. Bank and monthly estimates of the future premium payments that would have resulted had Phoenix not improperly changed the COI rates assessed against these policies.

100.    I understand that pursuant to its acquisition of the policies, Plaintiff either made premium payments or was required to reimburse the prior policy owners for premium payments made as of October 21, 2010, forward.  U.S. Bank prepared a file identifying the amount and date of premium payments made for each of the policies at issue.[117]  The actual premiums paid to date varied policy by policy and month by month.

---

[114] John R. Graham and Campbell R. Harvey, "The Equity Risk Premium in 2010," Duke University, National Bureau of Economic Research, Version August 9, 2010, Table 1.

[115] I  was asked by counsel to assume a rate of 9% simple interest for the purposes of this calculation.

[116] These figures, which include prejudgment interest, are summarized in Exhibit 8b.

[117] See Complete Premium Payment History identified in USBCOI1259577–82.

101.    To estimate the monthly amount of the future premium payments that would have resulted had Phoenix not improperly changed the COI rates assessed against these policies, I use a method similar to that employed in Section X.A.  Specifically, I assumed that U.S. Bank would have paid monthly premium payments sufficient to maintain the policy in force given the contractual terms found in the policy forms.  However, whereas in Section X.A I assumed that Phoenix would credit interest at the contractual minimum obligation of 4%, in this calculation I use the rate of interest actually credited by Phoenix.  Moreover, whereas Section X.A dealt with the expected future additional premiums to be paid, this calculation deals with the actual additional premium paid to date.  Since whether an insured life survived or died is known, this calculation does not require an estimate of the probability of survival to date of the insured life.

102.    Exhibit 9 provides estimates of the actual amount of additional premiums paid to date by U.S. Bank as a result of the improper rate increases.  As of the date of my report, applying a prejudgment interest rate of 9% to the additional premiums paid to date results in a total to date of $3.2 million.

Executed this 4th day of October, 2013, in Menlo Park, California.

Mark Browne, Ph.D.

Exhibit 1

# VITA: MARK JOSEPH BROWNE
## Robert Clements Distinguished Chair in Risk Management and Insurance

**OFFICE ADDRESS**                                    **HOME ADDRESS**

School of Risk Management                             191 Villard Avenue
Tobin College of Business                             Hastings-on-Hudson, NY 10706
St. John's University                                 608-334-5514
101 Murray Street, Suite 425
New York, NY  10007
brownem1@stjohns.edu
212-277-5175

## ACADEMIC SUMMARY

**Ph.D.**        University of Pennsylvania, 1989
                 Major Area:        Risk Management and Insurance (The Wharton School)
                 Minor Area:        Economics, Statistics
                 Dissertation Title: "Evidence of Adverse Selection in the Individual Health Insurance Market"

**M.A.**         University of Pennsylvania, 1986
                 Major Area:        Risk Management and Insurance (The Wharton School)

**B.S.**         University of Pennsylvania, 1981
**Economics**    Major Area:        Risk Management and Insurance (The Wharton School)


## ACADEMIC EXPERIENCE

<u>Primary Appointment</u>


September 2013 – present      Department Chair, School of Risk Management
                             Tobin College of Business, St. John's University

June 2001 – August 2013      Professor of Risk Management and Insurance,
                             School of Business, University of Wisconsin–Madison

August 2010 – Dec. 2012      Dept Chair, Actuarial Science, Risk Management, and Insurance
                             School of Business, University of Wisconsin–Madison

January 2005 – May 2007      Associate Dean of Undergraduate Programs, School of Business
                             University of Wisconsin–Madison

June 2001 – August 2006      Dept Chair, Actuarial Science, Risk Management, and Insurance
                             School of Business, University of Wisconsin–Madison

June 1995 – June 2001        Associate Professor of Risk Management and Insurance
                             School of Business, University of Wisconsin–Madison

August 1992 – June 1995      Assistant Professor of Risk Management and Insurance
                             School of Business, University of Wisconsin–Madison

January 1988 – July 1992     Assistant Professor of Risk Management and Insurance
The University of Georgia

Summer 1986, 1987     Health Economics Lecturer, Rutgers University–Camden

<u>Secondary Appointments</u>

Associate Member, Munich Risk and Insurance Center, Ludwig Maximilians Universitat (Munich, Germany)

Board Member, International Research Advisory Board, Risk and Insurance Research Center,
National Chengchi University (Taipei, Taiwan)

**SPECIAL HONORS AND AWARDS**

Huebner Foundation Fellowship, 1983–1987
CPCU - Harry J. Loman Foundation Award, 1991
International Insurance Society, Research Award, 1997
Beta Gamma Sigma Dean's Award for Teaching Excellence, 2000
Larsen Award for Teaching Excellence, 2002
Vilas Research Fellow, 2000–2002
Shin Research Award, International Insurance Society, 2000, 2002, 2004
ARIA Award for Teaching Excellence, American Risk and Insurance Association, 2008
Erskine Fellowship, University of Canterbury (Christchurch, NZ), 2012

**PUBLICATIONS**

**Journal Articles**

Mark J. Browne and James S. Trieschmann, "Salary and Benefit Compensation at American Research Universities," *Journal of Risk and Insurance,* September 1991, Vol. 58, No. 3, 513–524.

Mark J. Browne, "Evidence of Adverse Selection in the Individual Health Insurance Market," *Journal of Risk and Insurance*, March 1992, Vol. 59, No. 1, 13–33.

Mark J. Browne, "State Restrictions on Health Insurance Underwriting Criteria: The Effect on the Uninsured Population," *Journal of Insurance Regulation*, Summer 1992, Vol. 10, No. 4, 585–597.

Mark J. Browne and Robert Hoyt, "Excess Returns and the Underwriting Cycle in the Property-Liability Insurance Market," *Journal of Insurance Regulation*, Fall 1992, Vol. 11, No. 1, 67–78.

Mark J. Browne and Helen Doerpinghaus, "Information Asymmetries and Adverse Selection in the Market for Individual Medical Expense Insurance," *Journal of Risk and Insurance*, June 1993, Vol. 60, No. 2, 300–312.

Mark J. Browne and Kihong Kim, "An International Analysis of Life Insurance Demand," *Journal of Risk and Insurance*, December 1993, Vol. 60, No. 4, 616–634.

Mark J. Browne, "The Definition of Insurance: Implications for a Health Insurance Demand Model," *Journal of Actuarial Practice*, 1993, Vol. 1, No. 2, 71–95.

Han Duck Lee, Mark J. Browne, and Joan T. Schmit, "How Does Joint and Several Tort Reform Affect the Rate of Tort Filings? Evidence from the State Courts," *Journal of Risk and Insurance,* June 1994, Vol. 61, No. 2, 295–316.

Mark J. Browne and Robert E. Hoyt, "Economic and Market Predictors of Insolvencies in the Property-Liability Insurance Industry," *Journal of Risk and Insurance,* June 1995, Vol. 62, No. 2, 309–327.

Mark J. Browne and Helen Doerpinghaus, "Asymmetric Information and the Demand for Medigap Insurance," *Inquiry,* Winter 1994/95, Vol. 31, No. 4, 445–450.

Mark J. Browne and Robert Puelz, "Statutory Rules, Attorney Involvement, and Automobile Liability Claims," *Journal of Risk and Insurance,* March 1996, Vol. 63, No. 1, 77–94.

Dan R. Anderson and Mark J. Browne, "Managed Care in Workers Compensation," *CPCU Journal*, Fall 1996, Vol. 49, No. 3, 22–39.

Mark J. Browne, "Health Insurance for the 'Uninsurable': State High Risk Pools," *Journal of Insurance Regulation,* Summer 1997, Vol. 15, No. 4, 524–539.

Joan T. Schmit, Mark J. Browne, and Han Duck Lee, "The Effect of State Tort Reforms on Claim Filings," *Risk Management and Insurance Review,* Summer 1997, Vol. 1, No. 1, 1–17.

Virginia R. Young and Mark J. Browne, "Explaining Insurance Policy Provisions via Adverse Selection," *The Geneva Papers on Risk and Insurance Theory,* 1997, Vol. 22, 121–134.

Mark J. Browne and Brenda P. Wells, "Claims Adjudication in the Personal Automobile Insurance Residual Market," *Journal of Risk and Insurance,* June 1999, Vol. 66, No. 2, 275–290.

Mark J. Browne and Robert Puelz, "The Effect of Legal Rules on the Value of Economic and Non-Economic Damages and the Decision to File," *Journal of Risk and Uncertainty,* 1999, Vol. 18, No. 2, 189–213.

Mark J. Browne, James C. Carson, and Robert E. Hoyt, "Economic and Market Predictors of Insolvencies in the Life-Health Insurance Industry," *Journal of Risk and Insurance,* December 1999, Vol. 66, No. 4, 643–659.

Mark J. Browne, Jaewook Chung, and Edward W. Frees, "International Property-Liability Insurance Consumption," *Journal of Risk and Insurance,* March 2000, Vol. 67, No. 1, 73–90.

Mark J. Browne and Robert E. Hoyt, "The Demand for Flood Insurance: Empirical Evidence," *Journal of Risk and Uncertainty,* May 2000, Vol. 20, No. 3, 291–306.

Virginia R. Young and Mark J. Browne, "Equilibrium in Competitive Insurance Markets Under Adverse Selection and Yaari's Dual Theory of Risk," *The Geneva Papers on Risk and Insurance Theory,* 2000, Vol. 25, No. 2.

Mark J. Browne, James C. Carson, and Robert E. Hoyt, "Dynamic Financial Models of Life Insurers," *North American Actuarial Journal,* 2001, Vol. 5, No. 2.

Margie Rosenberg and Mark J. Browne, "The Impact of the Inpatient Prospective Payment System and Diagnosis Related Groups: A Survey of the Literature," *North American Actuarial Journal*, 2001, Vol. 5, No. 4.

Mark J. Browne and Joan T. Schmit, "Insurance Claims and Legal Filings: Trends from 1977–1997," *International Insurance Society Seminar Proceedings,* 2002. Recipient of the Shin Award for Research Excellence.

Mark J. Browne, "Risk Management and Insurance Research: 1980–2002," *Risk Management and Insurance Review,* February 2003, Vol. 6, No. 1.

Mark J. Browne, Ellen Pryor, and Robert Puelz, "The Effect of Bad Faith Laws on the Value of Economic and Non-Economic Damages," *Journal of Legal Studies,* 2004, Vol. 33.

Yu-Luen Ma and Mark J. Browne, "Subsidization and Choice in the Group Health Insurance Market," *Journal of Risk and Insurance,* September 2005, Vol. 72, No. 3, 413–439.

Mark J. Browne, "Adverse Selection in the Long-Term Care Insurance Market," in Competitive Failures in Insurance Markets: Theory and Policy Implications, editors Pierre-André Chiappori and Christian Gollier, (MIT Press, 2006), 97–112.

Wenjiu Liu and Mark J. Browne, "First-Best Equilibrium in Insurance Markets with Transaction Costs and Heterogeneity," *Journal of Risk and Insurance,* December 2007, Vol. 74, No. 4, 739–760.

Mark J. Browne and Joan T. Schmit, "Litigation Patterns in Automobile Bodily Injury Claims 1977–1997," *Journal of Risk and Insurance,* March 2008, Vol. 75, No. 1, 83–100.

Yu Lei and Mark J. Browne, "Medical Malpractice Insurance Market Entry and Exit: 1994–2006," *Journal of Insurance Regulation*, Fall 2008, Vol. 27, No. 1, 47–72.

Mark J. Browne, Yu-Luen Ma, and Ping Wang, "Stock-Based Compensation and Reserve Errors in the Property and Casualty Insurance Industry," *Journal of Insurance Regulation*, Summer 2009, Vol. 27, No. 4, 35–54.

Tian Zhou-Richter, Mark J. Browne, and Helmut Grundl, "Don't They Care? Or, Are They Just Unaware? Risk Perception and the Demand for Long-Term Care Insurance," *Journal of Risk and Insurance*, December 2010, Vol. 77, No. 4, 715–747.

M. Browne, L. Ju, and Y. Lei, "Reinsurance Purchases, Contingent Commission Payments and Insurer Reserve Estimation," *The Geneva Papers on Risk and Insurance - Issues and Practice,* 2012, Vol. 37, No. 3, 452–466.

Mark Browne and Shinichi Kamiya, "A Theory of the Demand for Underwriting," *Journal of Risk and Insurance*, June 2012, Vol. 79, No. 2, 334–349.

Annette Hoffman and Mark Browne, "One-sided commitment in dynamic insurance contracts: Evidence from private health insurance in Germany," *Journal of Risk and Uncertainty*, February 2013, Vol. 46, No. 1, 81–112.

**Refereed Articles in Books**

Mark J. Browne, "Adverse Selection in the Long-Term Care Insurance Market," in Competitive Failures in Insurance Markets: Theory and Policy Implications, editors Pierre-André Chiappori and Christian Gollier, (MIT Press, 2006), 97–112.

Mark J. Browne and Martin Halek, "Managing Flood Risk: The National Flood Insurance Program and Alternatives," Public Insurance and Private Markets, editor Jeffrey R. Brown, American Enterprise Institute for Public Policy Research (Washington, DC, 2010), 143–172.

**Refereed Proceedings**

Mark J. Browne, Jaewook Chung, and Edward W. Frees, "International Property-Liability Insurance Consumption," Seminar Proceedings of the 1997 meeting of the International Insurance Society.

Mark J. Browne, "Adverse Selection on the Long-Term Care Insurance Market," Seminar Proceedings of the 2000 meeting of the International Insurance Society.

Mark J. Browne, Yuluen Ma, and Ping Wang, "Stock Options and Reserve Errors," Proceedings of the International Insurance Society, International Insurance Society Shin Award for Research Excellence, 2004.

**Conference Papers and Presentations**

"The Definition of Insurance: Implications for a Health Insurance Demand Model," American Risk and Insurance Association Annual Meeting, August 1988.

"Seasonality and the Incidence of Automobile Insurance Claims," Southern Risk and Insurance Association Annual Meeting, November 1988 (with Kihong Kim).

"Theory and Evidence of Subsidization by Income Class in Group Health Insurance," American Risk and Insurance Association Annual Meeting, August 1989.

"National Economic Growth and the Insurance Sector of a Nation's Economy," Southern Risk and Insurance Association Meeting, November 1989 (with Kihong Kim).

"Real and Nominal Salary and Benefit Compensation of Faculty at American Research Universities," Western Risk and Insurance Association Annual Meeting, January 1990 (with James Trieschmann).

"Excess Returns and the Underwriting Cycle in the Property and Liability Insurance Industry," American Risk and Insurance Association Annual Meeting, August 1990 (with Robert Hoyt).

"The Effects of the Coinsurance and Deductible Provisions on Pooling in an Insurance Market with Adverse Selection," American Risk and Insurance Association Annual Meeting, August 1990.

"Adverse Selection in the Individual Medical Expense Insurance Market," American Risk and Insurance Association Annual Meeting, August 1991 (with Helen Doerpinghaus).

"Economic and Market Predictors of Insolvencies in the Property-Liability Insurance Industry," Southern Risk and Insurance Association, Annual Meeting, November 1991 (with Robert Hoyt).

"A Direct Test for Information Asymmetries in the Individual Health Insurance Market," Risk Theory Seminar, April 1992 (with Helen Doerpinghaus).

"Market Asymmetries and the Demand for Medigap Insurance," American Risk and Insurance Association Annual Meeting, August 1992 (with Helen Doerpinghaus).

"Economic and Market Predictors of Insolvencies in the Property-Casualty Insurance Industry," American Risk and Insurance Association, Annual Meeting, August 1992 (with Robert Hoyt).

"The Impact of Tort Reform on Litigation Frequency," American Risk and Insurance Association Annual Meeting, August 1992 (with Han Duck Lee and Joan Schmit).

"State Tort Reform Initiatives and the Rate of Tort Filings," American Risk and Insurance Association, August 1993 (with Han Duck Lee and Joan Schmit).

"State Health Care Pools for High-Risks," American Risk and Insurance Association Annual Meeting, August, 1993.

"Joint and Several Tort Reform: Evidence from the State Courts," Western Risk and Insurance Association, January 1994 (with Han Duck Lee and Joan Schmit).

"The Demand for Flood Insurance: Empirical Evidence," American Risk and Insurance Association, August 1995 (with Robert Hoyt).

"Optimal Pooling Insurance and Adverse Selection," American Risk and Insurance Association, August 1995 (with Virginia Young).

"The Effect of Statutory Rules and Attorney Involvement on Automobile Liability Claims," University of Minnesota, January 1996 (with Robert Puelz).

"Optimal Insurance Contracts and Adverse Selection," Risk Theory Society, April 1996 (with Virginia Young).

"Joint Underwriting Associations and Assigned Risk Plans: Claims Adjudication in the Personal Automobile Insurance Market," American Risk and Insurance Association, August 1996 (with Brenda Wells).

"International Property-Liability Insurance Consumption," International Insurance Society, Mexico City, 1997 (with Jaewook Chung and Edward W. Frees).

"Economic and Market Predictors of Insolvencies in the Life Insurance Industry," 5th International Conference on Insurance Solvency and Finance, London, 1997 (with James M. Carson and Robert E. Hoyt).

"Workers Compensation and Managed Care," Southern Methodist University, 1997 (with Dan Anderson).

"Dynamic Financial Models of Life Insurers," American Risk and Insurance Association, San Diego, 1997 (with James M. Carson and Robert E. Hoyt).

"The Effect of Legal Rules on the Value of Economic and Non-Economic Damages and the Decision to File," American Risk and Insurance Association, Boston, 1998 (with Robert Puelz).

"The Demand for Flood Insurance: Empirical Evidence," Geneva Association Annual Meeting, Vienna, 1998 (with Robert E. Hoyt).

"Prohibitions on Health Insurance Underwriting: A Means of Making Health Insurance Available or a Cause of Market Failure," American Risk and Insurance Association, Vancouver, 1999 (with Edward W. Frees).

"The Effect of Bad Faith Laws on the Value of Economic and Non-Economic Damages," Southern Risk and Insurance Association, Orlando, 1999 (with Ellen Pryor and Robert Puelz).

"Insurance Claims and Legal Filings: Trends from 1977–1997," American Risk and Insurance Association, Baltimore, 2000 (with Joan T. Schmit).

"Adverse Selection in the Long-Term Care Insurance Market," International Insurance Society, Inc., Vancouver, B.C., Canada, 2000.

"Insurance Claims and Legal Filings: Trends from 1977–1997," International Insurance Society, Singapore, 2002 (with Joan T. Schmit).

"The Effect of Bad Faith Laws on the Value of Economic and Non-Economic Damages," Annual Meeting of the Geneva Association, Nottingham, England, 2002 (with Ellen Pryor and Robert Puelz).

"Reserve Errors and Stock Options," American Risk and Insurance Association, Denver, 2003 (with Yuluen Ma and Ping Wang).

"Adverse Selection in the Long-Term Care Insurance Market," CESifo Conference, Venice, 2003.

"Insurance Claims and Legal Filings: Trends from 1977-1997," European Group of Risk and Insurance Economists, Marseille, France, 2004 (with Joan T. Schmit).

"Stock Options and Reserve Errors," International Insurance Society, London, 2004 (with Yuluen Ma and Ping Wang).

"On the Escalating Medical Malpractice Insurance Premium Rates," American Risk and Insurance Association, Chicago, 2004 (with Yuluen Ma and Joan T. Schmit).

"The Bowman Paradox in the U.S. Property and Casualty Insurance Industry," WRIEC, Salt Lake City, 2005.

"Executive Stock Option Compensation and Reserve Errors in the Property and Casualty Insurance Industry," European Group of Risk and Insurance Economists (EGRIE), Barcelona, 2006 (with Yuluen Ma and Ping Wang).

"Property - Casualty Insurer Reserve Errors: A Holistic Analysis in Commercial Lines," American Risk and Insurance Association, Washington, DC, 2006 (with Lan Ju).

"Reinsurance Purchases as a Financial Market Signal: Evidence from Reserve Estimation," SCOR, Paris, France, September 2007 (with Lan Ju).

"Contingent Commissions and Market Cycles," American Risk and Insurance Association, Quebec City, Canada, August 2007 (with Lan Ju).

"Do They Know At All? Analyzing Children's Exposure to Their Parents' Long-Term Care Risk," American Risk and Insurance Association, Quebec City, Canada, August 2007 (with Helmut Grundl, and Roman Schulze).

"Reinsurance Purchases as a Financial Market Signal: Evidence from Reserve Estimation," American Risk and Insurance Association, Quebec City, Canada, August 2007 (with Lan Ju).

Browne, Mark (Presenter & Author), "Insurance Economics and Social Policy," NCCU RMI, Taipei, Taiwan (October 14, 2008).

Browne, Mark (Author Only), Kamiya, Shinichi (Presenter & Author), "The Demand for Underwriting," European Group of Risk and Insurance Economists, Toulouse, France (September 2008).

Browne, Mark (Author Only), Kamiya, Shinichi (Presenter & Author), "Adverse Selection with Underwriting Costs," American Risk and Insurance Association, San Diego (August 2008).

Browne, Mark (Presenter & Author), Ju, Lan (Author Only), Kamiya, Shinichi (Presenter & Author), "Coalition Proof Incentives and the Use of Contingent Commissions: Evidence from the Insurance Underwriting Cycle," American Risk and Insurance Association, San Diego (August 2008).

Browne, Mark (Presenter & Author), Ma, Yuluen (Presenter & Author), Wang, Ping (Presenter & Author), "Executive Compensation and Reserve Errors in the Property and Casualty Insurance Industry," American Risk and Insurance Association, San Diego (August 2008).

Luan, Cuncun (Presenter & Author), Browne, Mark (Author Only), "The Effect of Organizational Form and Market Concentration on Automobile Insurance Claims Settlement," American Risk and Insurance Association, San Diego (August 2008).

Halek, Martin (Presenter & Author), Browne, Mark (Presenter & Author), "Managing Flood Risk: A Discussion of the National Flood Insurance Program and Alternatives," American Enterprise Institute for Public Policy Research, Washington, DC (January 15, 2009).

Browne, Mark, "Are they aware, do they care? Analyzing adult children's demand for insuring their parents' long-term care risk," Berlin, Germany (March 4, 2009).

Browne, Mark (Author Only), Zhou-Richter, Tian (Presenter & Author), Grundl, Helmut (Author Only), "Don't They Care? Or, Are They Just Unaware? Risk Perception and the Demand for Long-Term Care Insurance," EGRIE, Bergen, Norway (November 22, 2009).

Browne, Mark (Presenter & Author), "Market Imperfections and the Demand for Long-Term Care Insurance," The University of Georgia, Athens, GA (April 2, 2010).

Browne, Mark (Author Only), Kamiya, Shin-ichi (Presenter & Author), "A Theory of the Demand for Underwriting," Risk Theory Society, Athens, GA (April 18, 2010).

Browne, Mark (Author Only), Lan Ju, and Yu Lei, "Insurer Reserve Estimation: Reinsurers, Brokers and the Taxman," World Risk and Insurance Economics Conference, Singapore (July 25-29, 2010).

Browne, Mark, Carolyn A. Dehring, David L. Eckles, and William D. Lastrappes, "Does National Flood Insurance Program Participation Induce Excessive Development in High-Risk Areas? Evidence from Florida Counties," American Real Estate and Urban Economic Association, Denver (January 2011).

Browne, Mark, and Annette Hofmann, "One-Sided Commitment in Dynamic Insurance Contracts: Evidence from Private Health Insurance in Germany," American Risk and Insurance Association, Denver (January 2011).

Browne, Mark, and Annette Hofmann, "One-Sided Commitment in Dynamic Contracts: Evidence from Private Health insurance in Germany," Goethe University, Frankfurt, Germany (May 2011).

Browne, Mark (Presenter & Author), "One-Sided Commitment in Dynamic Contracts: Evidence from Private Health Insurance in Germany," Temple University, Philadelphia (February 2011).

Browne, Mark, "Insurance Economics and Bad Faith," Rutgers University–Camden (February 2012).

Lei, Yu, and Mark Browne, "Underwriting Strategy and the Underwriting Cycle in the Medical Malpractice Insurance Industry," American Risk and Insurance Association, Minneapolis (August 2012).

Browne, Mark, Christian Knoller, and Andreas Richter, "Insuring my Bicycle or my House? Behavioral Biases and the Demand for Flood Insurance," European Group of Risk and Insurance Economists, Palma de Mallorca (September 2012).

## RESEARCH AND PUBLICATIONS IN PROGRESS

### Articles in Review

Lan Ju and Mark J. Browne, "Coalition-Proof Incentives and the Use of Contingent Commissions: Evidence from the Insurance Underwriting Cycle."

Mark Browne, Carolyn A. Dehring, David L. Eckles, and William D. Lastrappes, "Does National Flood Insurance Program Participation Induce Excessive Development in High-Risk Areas? Evidence from Florida Counties."

Shinichi Kamiya and Mark Browne, "Active Screening in Insurance Markets."

Mark Browne, Christian Knoller, and Andreas Richter, "Insuring my Bicycle or my House? Behavioral Biases and the Demand for Flood Insurance."

### Research in Progress

Yu Lei and Mark Browne, "Underwriting Strategy and the Underwriting Cycle in the Medical Malpractice Insurance Industry."

## RESEARCH SUPPORT

"Economic and Market Predictors of Insolvencies in the Property and Casualty Insurance Industry," CPCU - Harry J. Loman Award, 1992 (with Robert E. Hoyt), $2,500.

"State Restrictions on Health Insurance Underwriting Criteria," University of Georgia Foundation for Research, 1992, $3,900.

"Prohibitions on Health Insurance Underwriting: A Means of Making Health Insurance Available and Affordable or a Cause of Market Failure?" University of Wisconsin–Madison, 1996, $17,224.

"Economic and Market Predictors of Insolvencies in the Life Insurance Industry," Society of Actuaries, 1996 (with Robert E. Hoyt and James Carson), $38,000.

"Prohibitions on Health Insurance Underwriting: A Means of Making Health Insurance Available and Affordable or A Cause of Market Failure?" Agency for Health Care Policy and Research (National Institutes of Health) (with Edward W. Frees), $230,283.

$94,378 grant with Employers Reinsurance – GE Insurance Solutions to conduct and publish a survey of primary insurance companies to arrive at a Reinsurance Price Index, 2004 (with Dan Anderson & Joan Schmit).

## TEACHING

| **Undergraduate** | **MBA** |
|---|---|
| Employee Benefits Management | Health Insurance Seminar |
| Government Insurance Programs | Property Risk Management |
| Property Risk Management | |
| Introduction to Insurance | **Ph.D.** |
| Commercial Lines Insurance | |
| Advanced Property Insurance | Property and Casualty Insurance Seminar |
| Health Insurance Financing | Life and Health Insurance Seminar |
| Corporate Risk Management | |

**Dissertation Committees**

Robert Puelz, Ph.D., 1991, Committee Member, completed
Kihong Kim, Ph.D., 1992, Committee Chair, completed
Han-Duck Lee, Ph.D., 1992, Committee Member, completed
James Michael Carson, Ph.D., 1993, Committee Member, completed
Linda Leetch, Ph.D., 1994, Committee Member, completed
Jaewook Chung, Ph.D., 1996, Committee Chair, completed
David Mott, Ph.D., 1997, Committee Member, completed
Yu Luen Ma, Ph.D., 1999, Committee Chair, completed
Nat Pope, Ph.D., 1999, Committee Member, completed
Julie M. Ganther, Ph.D., 2000, Committee Member, completed
Yu (Jack) Luo, Ph.D., 2000, Committee Member, completed
Jia-Hsing (Jason) Yeh, Ph.D., 2000, Committee Member, completed
Wenjiu (Jerry) Liu, 2001, Committee Chair, completed
Richard Cline, Ph.D., 2001, Committee Member, completed
Dana Kerr, Ph.D., 2002, Committee Member, completed
Yu Lei, Ph.D., 2004, Committee Chair, completed
Ping Wang, Ph.D., 2005, Committee Co-Chair, completed
Yayuan Ren, Ph.D., 2006, Committee Member, completed
Jie Gao, Ph.D., 2007, Committee Member, completed
Lan Ju, Ph.D., 2008, Committee Chair, completed
Ray Gilmore, Ph.D., 2010, Committee Chair, completed
Yunjie (Winnie) Sun, Ph.D., 2010, Committee Member, completed
Cuncun Luan, Committee Chair, current.
Chunyan Zhang, Committee Chair, current
Joyce Lin, Committee member, current

**PROFESSIONAL AFFILIATIONS**
American Economics Association
American Risk and Insurance Association
European Group of Risk and Insurance Economists
Risk Theory Society

# Testimony of Mark Joseph Browne in the Previous Four Years

1. *Conseco Life Insurance Co. Lifetrend Insurance Sales and Marketing Litigation*
   Case No. 3:10-md-2124-SI
   United States District Court, Northern District of California, San Francisco Division
   October 26, 2012, Deposition
   Description: Life Insurance Class Action

2. *Aetna Better Health, Inc. v. Michael B. Colbert et al.*
   Case No. 12-CV-7968
   In the Court of the Common Pleas, Franklin County, OH
   August 7, 2012, Deposition
   Attorney: Mark Chilson
   Description: Medicaid Managed Care

3. *Southern Family Insurance Company v. United State of America,*
   Case No. 8:05-CV-2158-T-26-MAP,
   United States District Court for the Middle District of Florida, Tampa Division
   September 10, 2010, Deposition
   Attorney: Michael Wilcove
   Description: Insurance industry practices

4. *Molecular Biology Resources, Inc. v. Cincinnati Insurance Company*
   Case No. 09-CV-017515
   State of Wisconsin, Circuit Court, Milwaukee County
   July 14, 2010, Deposition
   Attorney: Jennifer Baumann
   Description: Business income insurance

5. *Miller, et al. v. Safeco Insurance Company*
   Federal Case No. 06-C-1021
   January 15, 2010, Deposition
   Attorney: Anthony Murdock
   Description: Homeowners' Insurance

# Exhibit 2
## Documents Considered

| Document Title/Description | Date Bates Range |
|---|---|
| **Legal Documents** | |
| Complaint for: 1. Breach of Contract; 2. Breach of the Implied Covenant of Good Faith and Fair Dealing; 3. Violation of Cal. Bus. & Prof. Code § 17200; 4. Violation of Cal. Bus. & Prof. Code § 17500.; and 5. Declaratory Relief | 11/16/2011 |
| Martin Fleisher et al., v. Phoenix Life Insurance Company, Case No. 11 Civ. 8405 - Memorandum of Law in Support of Plaintiffs' Motion for Class Certification | 1/11/2013 |
| Martin Fleisher et al., v. Phoenix Life Insurance Company, Case No. 11 Civ. 8405 - Declaration of Larry N. Stern in Support of Plaintiffs' Motion for Class Certification, with Exhibits A-B | 1/11/2013 |
| Martin Fleisher et al., v. Phoenix Life Insurance Company, Case No. 11 Civ. 8405 - Declaration of Brian P. Perryman in Support of Defendant Phoenix Life Insurance Company's Opposition to Plaintiffs' Motion for Class Certification, with Exhibit B | 2/1/2013 |
| Martin Fleisher et al., v. Phoenix Life Insurance Company, Case No. 11 Civ. 8405 - Declaration of Douglas A. French in Support of Defendant Phoenix Life Insurance Company's Opposition to Plaintiffs' Motion for Class Certification, with Exhibits 1-3 | 2/1/2013 |
| Martin Fleisher et al., v. Phoenix Life Insurance Company, Case No. 11 Civ. 8405 - Declaration of Gina Collopy O'Connell in Support of Defendant Phoenix Life Insurance Company's Opposition to Plaintiffs' Motion for Class Certification, with Exhibits A-E | 2/1/2013 |
| Martin Fleisher et al., v. Phoenix Life Insurance Company, Case No. 11 Civ. 8405 - Declaration of Robert Mills, with Appendices A-B and Exhibit 1 | 2/15/2013 |
| State of Wisconsin - Notice of Hearing for Case No. 13-C35362, In the Matter of PHL Variable Insurance Company | 4/30/2013 |
| Second Amended Complaint | 5/14/2013 |
| **Depositions** | |
| Transcript of the Deposition of Gina O'Connell (Day 1), with Exhibits | 6/18/2013 |
| Transcript of the Deposition of Gina O'Connell (Day 2), with Exhibits | 6/19/2013 |
| Transcript of the Deposition of Stuart Kwassman, with Exhibits | 7/11/2013 |
| Transcript of the Deposition of Byron Frank, with Exhibits | 7/16/2013 |
| Transcript of the Deposition of Philip Polkinghorn, with Exhibits | 7/23/2013 |
| Transcript of the Deposition of Nick Fegan, with Exhibits | 7/24/2013 |
| Transcript of the Deposition of Brian Lemek, with Exhibits | 7/25/2013 |
| Transcript of the Deposition of Douglas Thomas, with Exhibits | 7/26/2013 |
| Transcript of the Deposition of Thomas Buckingham, with Exhibits | 7/29/2013 |
| Transcript of the Deposition of Christopher A. Macklem, with Exhibits | 7/30/2013 |
| Transcript of the Deposition of Douglas Joseph Cardoni, with Exhibits | 8/1/2013 |
| Transcript of the Deposition of Louis DiGiacomo, with Exhibits | 8/6/2013 |
| Transcript of the Deposition of Ola Eriksson (Day 1), with Exhibits | 8/6/2013 |
| Transcript of the Deposition of Ola Eriksson (Day 2), with Exhibits | 8/7/2013 |
| Transcript of the Deposition of Rodney Hutter, with Exhibits | 8/12/2013 |
| Transcript of the Deposition of Zafar Rashid, with Exhibits | 8/13/2013 |
| Transcript of the Deposition of Shiela Companie, with Exhibits | 8/14/2013 |
| Transcript of the Deposition of Anthony  Jacobson, with Exhibits | 8/19/2013 |
| Transcript of the Deposition of Scott Rose, with Exhibits | 8/22/2013 |
| Transcript of the Deposition of Gina O'Connell (Day 3), with Exhibits | 8/28/2013 |
| Transcript of the Deposition of Gina O'Connell (Day 4), with Exhibits | 8/29/2013 |
| Transcript of the Deposition of Dona Young, with Exhibits | 8/30/2013 |
| **Academic Literature** | |
| Anderson, James C. H., "The Universal Life Insurance Policy," published in *Emphasis*  in November 1975 | |
| Aspinwall, Jim, Geoff Chaplin, and Mark Venn, *Life Settlements and Longevity Structures: Pricing and Risk Management* (West Sussex, UK: John Wiley & Sons Ltd, 2009) | |
| Atkinson, David B., and James W. Dallas, *Life Insurance Products and Finance: Charting a Clear Course*  (Schaumburg, IL: The Society of Actuaries, 2000) | |
| Black, Kenneth, Jr., Harold D. Skipper, and Kenneth Black III, *Life Insurance* , 14th ed. (Lucretian LLC, 2013) | |
| Graham, John R., and Campbell R. Harvey, "The Equity Risk Premium in 2010," Duke University, National Bureau of Economic Research, Version August 9, 2010 | |
| Doll, Douglas C., "A Brief History of Universal Life" | |
| **Public Documents** | |
| Press Release: "Phoenix Introduces New Universal Life Insurance Policies with Guaranteed Death Benefit and New Surrender Value Rider," *Business Wire* | 6/19/2003 |
| Press Release: "Phoenix Accumulator UL Balances Protection and Cash Accumulation; Phoenix Expands on Its Heritage of Insurance Product Innovation with the Launch of Phoenix Accumulator," *Business Wire* | 4/3/2006 |
| Phoenix Companies - Keefe, Bruyette & Woods Insurance Conference Transcript, | 9/7/2006 |

# Exhibit 2
# Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| Phoenix Q3 2006 Earnings Call | 10/26/2006 | |
| Phoenix Q4 2006 Earnings Call | 2/1/2007 | |
| PHL Variable Insurance Company Form 10-K for the Fiscal Year Ended December 31, 2007 | 3/18/2008 | |
| PHL Variable Insurance Company Form 10-K for the Fiscal Year Ended December 31, 2008 | 3/30/2009 | |
| PHL Variable Insurance Company Form 10-K for the Fiscal Year Ended December 31, 2009 | 3/23/2010 | |
| Phoenix Companies Q1 2010 Earnings Call Transcript, Bloomberg | 5/4/2010 | |
| The Phoenix Companies, Inc. Form 10-Q for the Quarterly Period Ended March 31, 2010 | 5/10/2010 | |
| Case Materials | | |
| Letters to State Insurance Departments, Re: New Submission, U606.1, UR77, UR79 | 1/8/2002 | PHL0656841-PHL0656948 |
| PHL Variable Insurance Company - Actuarial Memorandum (NY) | 2/5/2002 | PHL0032502-PHL0032513 |
| Phoenix Accumulator Trademark Registration | 2/25/2003 | |
| "Phoenix Introduces New Universal Policies with Guaranteed Death Benefit and New Surrender Value Rider," Business Wire | 6/19/2003 | |
| Certification of Compliance NAIC Life Illustrations Model Regulation & Actuarial Standard of Practice No. 24 - Policy Form U606/U607 - Marketing Name:  Phoenix Accumulator Universal Life (PAUL) | 10/30/2003 | PHL0775693-PHL0775698 |
| Email from S. Kwassman, to R. Priest, Subject:  Phoenix - NY Audit - File No. 0211129 | 12/22/2003 | PHL0574391-PHL0574393 |
| E-mail from Swenson to Byron Frank | 2/13/2004 | PLIC0774354-PLIC0774357 |
| Certification of Compliance NYS Reg 4228 & Actuarial Standards of Practice No. 24 - Policy Form U606/U607 - Marketing Name:  Phoenix Accumulator Universal Life (PAUL) | 3/15/2004 | PHL0174526-PHL0174534 |
| Illustration Actuary Testing - Self-Support & Lapse Support Tests | 9/21/2004 | PHL0580136-PHL0580136 |
| Email exchange from M. Katcher and S. Kwassman, Subject:  Illustration Actuary Testing - Sensitivity Tests PAUL and PEL | 9/28/2004 | PHL0580133-PHL0580135 |
| PAUL II No. 97513181 - Policy | 5/12/2005 | USBCOI000311-USBCOI000357 |
| PAUL II No. 97513959 - Policy | 7/20/2005 | USBCOI191214-USBCOI191275 |
| PAUL II No. 97513963 - Policy | 7/20/2005 | USBCOI191276-USBCOI191337 |
| PAUL II No. 97513947 - Policy | 7/22/2005 | USBCOI000753-USBCOI000804 |
| PAUL II No. 97514311 - Policy | 8/13/2005 | USBCOI188537-USBCOI188612 |
| PAUL II No. 97514213 - Policy | 8/23/2005 | USBCOI000559-USBCOI000622 |
| PAUL II No. 97514277 - Policy | 8/25/2005 | USBCOI000932-USBCOI000980 |
| PAUL II No. 97514279 - Policy | 8/25/2005 | USBCOI001100-USBCOI001148 |
| Flexible Premium Life Insurance Policy for Policy 97514279 | 8/25/2005 | USBCOI001100 -USBCOI001148 |
| PAUL II No. 97535603 - Policy | 10/25/2005 | USBCOI214816-USBCOI214877 |
| Annual Policy Summary - Phoenix Accumulator II, Policy No. 97303991, 11/1/09 - 10/31/10 | 11/1/2005 | PLIC0818872-PLIC0818874 |
| Annual Policy Summary - Phoenix Accumulator II, Policy No. 97303991, 11/1/10 - 10/31/11 | 11/1/2005 | PLIC0818875-PLIC0818878 |
| Annual Policy Summary - Phoenix Accumulator II, Policy No. 97303991, 11/1/11 - 10/31/12 | 11/1/2005 | PLIC0818879-PLIC0818882 |
| PAUL II No. 97515342 - Policy | 11/12/2005 | USBCOI001277-USBCOI001332 |
| PAUL II No. 97515795 - Policy | 11/12/2005 | USBCOI008188-USBCOI008246 |
| Flexible Premium Life Insurance Policy for Policy 97515342 | 11/12/2005 | USBCOI001277 -USBCOI001332 |
| Flexible Premium Life Insurance Policy for Policy 97515795 | 11/12/2005 | USBCOI008188 -USBCOI008246 |
| PAUL II No. 97516376 - Policy | 11/30/2005 | USBCOI191928-USBCOI191975 |
| PAUL II No. 97515596 - Policy | 12/9/2005 | USBCOI001438-USBCOI001497 |
| PAUL II No. 97515597 - Policy | 12/9/2005 | USBCOI001609-USBCOI001668 |
| Flexible Premium Life Insurance Policy for Policy 97515596 | 12/9/2005 | USBCOI001438 -USBCOI001497 |
| Flexible Premium Life Insurance Policy for Policy 97515597 | 12/9/2005 | USBCOI001609 -USBCOI001668 |
| Email from M. Katcher to B. Frank, Subject: Urgent response required - Product decision required | 12/14/2005 | PHL0792269-PHL0792271 |
| Email from M. Katcher to T. Marzik and P. Polkinghorn, Re: prepare to forward edited version to RMDs or have a call, have Mitch review | 12/18/2005 | PHL0792561-PHL0792562 |
| PAUL II No. 97515743 - Policy | 12/22/2005 | USBCOI192469-USBCOI192520 |
| PAUL II No. 97515745 - Policy | 12/22/2005 | USBCOI192521-USBCOI192572 |
| Email from B. Frank to B. Lautensack, Subject: PAUL II - older age pricing (70-79) | 1/13/2006 | PHL0584080-PHL0584082 |
| PAUL II No. 97516379 - Policy | 1/25/2006 | USBCOI192818-USBCOI192865 |
| Phoenix Accumulator Universal Life (III) - Product and Pricing Review | 1/27/2006 | PHL0508566-PHL0508589 |
| PAUL II No. 97515667 - Policy | 2/2/2006 | USBCOI190661-USBCOI190710 |
| PAUL II No. 97516375 - Policy | 2/7/2006 | USBCOI188387-USBCOI188452 |
| PAUL II No. 97516389 - Policy | 2/8/2006 | USBCOI193246-USBCOI193293 |
| PAUL II No. 97516394 - Policy | 2/10/2006 | USBCOI193099-USBCOI193141 |
| 2005 Certification of Compliance with the Illustration Actuary Self Support Tests | 2/27/2006 | PHL0564947-PHL0564960 |
| Email from R. Lombardi to D. Nemphos, Subject: UL Earnings- February GAAP Closing | 3/15/2006 | PHL0882310-PHL0882311 |
| 2005 Certification of Compliance with the Illustration Actuary Self Support Tests | 3/28/2006 | PHL0564345-PHL0564359 |
| 2005 Certification of Compliance with the Illustration Actuary Self Support Tests | 3/28/2006 | PHL0564961-PHL0564975 |
| 2005 Certification of Compliance with the Illustration Actuary Self Support Tests | 3/28/2006 | PHL0775201-PHL0775215 |
| 2005 Certification of Compliance with the Illustration Actuary Self Support Tests | 4/20/2006 | PHL0756072-PHL0756086 |

# Exhibit 2
# Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| Email from J. Dinius to A. Montemerlo, Subject: Phoenix - Draft of 1st Qtr. Actuarial Report | 4/25/2006 | PwC_USB_088776-<br>PwC_USB_088783 |
| PAUL III No. 97518600 - Policy | 7/12/2006 | USBCOI191557-USBCOI191592 |
| PAUL III No. 97518606 - Policy | 7/12/2006 | USBCOI191593-USBCOI191628 |
| PAUL III No. 97519065 - Policy | 10/10/2006 | USBCOI189182-USBCOI189224 |
| PAUL III No. 97518647 - Policy | 10/10/2006 | USBCOI191456-USBCOI191489 |
| PAUL III No. 97519064 - Policy | 10/10/2006 | USBCOI191490-USBCOI191523 |
| PAUL III No. 97519088 - Policy | 11/3/2006 | USBCOI007745-USBCOI007786 |
| Flexible Premium Life Insurance Policy for Policy 97519088 | 11/3/2006 | USBCOI007745 -USBCOI007786 |
| Non-Guaranteed Element Update from the American Academy of Actuaries' Life Reserves Work Group; Presented to the National Association of Insurance Commissioners' Life and Health Actuarial Task Force | 11/6/2006 | TW-PF-00001182-00001187 |
| PAUL III No. 97519155 - Policy | 11/15/2006 | USBCOI191524-USBCOI191556 |
| PAUL III No. 97519664 - Policy | 11/29/2006 | USBCOI191348-USBCOI191383 |
| PAUL III No. 97519674 - Policy | 11/29/2006 | USBCOI191384-USBCOI191419 |
| PAUL III No. 97519675 - Policy | 11/29/2006 | USBCOI191420-USBCOI191455 |
| 2006 Certification of Compliance with the Illustration Actuary Self Support Tests | 3/19/2007 | PHL0564360-PHL0564374 |
| 2006 Certification of Compliance with the Illustration Actuary Self Support Tests | 3/19/2007 | PHL0564753-PHL0564767 |
| 2006 Certification of Compliance with the Illustration Actuary Tests | 3/19/2007 | PHL0564768-PHL0564783 |
| 2006 Certification of Compliance with the Illustration Actuary Tests | 3/19/2007 | PHL0564784-PHL0564799 |
| 2006 Certification of Compliance with the Illustration Actuary Self Support Tests | 3/19/2007 | PHL0564976-PHL0564990 |
| 2006 Certification of Compliance with the Illustration Actuary Tests | 3/19/2007 | PHL0564991-PHL0565004 |
| 2006 Certification of Compliance with the Illustration Actuary Tests | 3/19/2007 | PHL0565005-PHL0565018 |
| 2006 Certification of Compliance with the Illustration Actuary Tests | 3/19/2007 | PHL0775241-PHL0775255 |
| 2006 Certification of Compliance with the Illustration Actuary Tests | 3/19/2007 | PHL0775762-PHL0775776 |
| PAUL III No. 97522375 - Policy | 5/25/2007 | USBCOI183487-USBCOI183522 |
| Annual Policy Summary - Phoenix Accumulator, Policy No. 97304872, 10/12/09 - 10/11/10 | 10/12/2007 | PLIC0821108-PLIC0821111 |
| Annual Policy Summary - Phoenix Accumulator, Policy No. 97304872, 10/12/10 - 10/11/11 | 10/12/2007 | PLIC0821112-PLIC0821115 |
| Email from P. Matson to B. Frank and M. Zhu, Re: EC project: PAUL III_Illustration data for premium schedule | 1/15/2008 | PLIC0734495-PLIC0734498 |
| 2007 Certification of Compliance with the Illustration Actuary Tests | 2/12/2008 | PHL0564410-PHL0564425 |
| 2007 Certification of Compliance with the Illustration Actuary Tests for in Force Policies | 2/22/2008 | PHL0032780-PHL0032787 |
| 2007 Certification of Compliance with the Illustration Actuary Tests | 2/22/2008 | PHL0564426-PHL0564442 |
| 2007 Certification of Compliance with the Illustration Actuary Tests | 2/22/2008 | PHL0564443-PHL0564458 |
| 2007 Certification of Compliance with the Illustration Actuary Tests | 2/22/2008 | PHL0564800-PHL0564815 |
| 2007 Certification of Compliance with the Illustration Actuary Tests | 2/22/2008 | PHL0564816-PHL0564831 |
| 2007 Certification of Compliance with the Illustration Actuary Tests | 2/22/2008 | PHL0564832-PHL0564847 |
| 2007 Certification of Compliance with the Illustration Actuary Tests | 2/22/2008 | PHL0564868-PHL0564883 |
| 2008 Certification of Compliance with the Illustration Actuary Tests | 2/22/2008 | PHL0564884-PHL0564902 |
| 2008 Certification of Compliance with the Illustration Actuary Tests | 2/22/2008 | PHL0564903-PHL0564921 |
| 2007 Certification of Compliance with the Illustration Actuary Tests | 2/22/2008 | PHL0565019-PHL0565034 |
| 2007 Certification of Compliance with the Illustration Actuary Tests for in Force Policies | 2/22/2008 | PHL0574669-PHL0574676 |
| 2007 Certification of Compliance with the Illustration Actuary Tests | 2/22/2008 | PHL0598356-PHL0598381 |
| 2007 Certification of Compliance with the Illustration Actuary Tests | 2/22/2008 | PHL0598778-PHL0598803 |
| PAUL III No. 97528285 - Policy | 2/25/2008 | USBCOI022270-USBCOI022314 |
| 2008 Project X, Product Specifications Version 1 | 8/26/2008 | PHL0591573–PHL0591579 |
| Email from J. Guillotte to B. Lemek, Subject: Project X - Interim Rates | 10/23/2008 | PHL0592347-PHL0592352 |
| PAUL IIC - Inforce | 12/31/2008 | PHL0648006-PHL0648006 |
| PAUL IIC - Inforce 1% COI Increase pol Year 6 Grading to 10% year 10+ for Ages 68+, Face $3M+ | 12/31/2008 | PHL0648007-PHL0648007 |
| PAUL IIC - Inforce 15% COI Increase for Ages 68+, Face $3M+, Policy Years 16+ | 12/31/2008 | PHL0648008-PHL0648008 |
| PAUL IIC - Inforce - 50% COI Increase for Ages 68+, Face $3M+, Policy Years 13+ | 12/31/2008 | PHL0648010-PHL0648010 |
| Email Exchange between K. Underwood and B. Frank, Subject: Annual Illustration Actuary Certification | 2/26/2009 | PHL0598352-PHL0598355 |
| 2008 Certification of Compliance with the Illustration Actuary Tests | 3/4/2009 | PHL0564922-PHL0564942 |
| Email from C. Macklem, to B. Frank, Subject: Illustration Actuary | 3/5/2009 | PHL0648009-PHL0648009 |
| 2009 Certification of Compliance with the Illustration Actuary Tests | 3/6/2009 | PHL0564375-PHL0564394 |
| 2008 Certification of Compliance with the Illustration Actuary Tests | 3/6/2009 | PHL0564848-PHL0564867 |
| 2008 Certification of Compliance with the Illustration Actuary Tests | 3/6/2009 | PHL0598506-PHL0598506 |
| Illustration Actuary - Specification for Changes to Credited Interest Rate and Cost of Insurance Rates | 3/12/2009 | PHL0600867-PHL0600868 |
| Illustration Actuary - Specification for Changes to Credited Interest Rate and Cost of Insurance Rates | 3/12/2009 | PHL0656086-PHL0656087 |
| Appendices A - D - Illustration Actuary Annual Certification for Calendar Year 2008 | 3/23/2009 | PHL0598770-PHL0598777 |
| Illustration Actuary - Specification for Changes to Credited Interest Rate and Cost of Insurance Rates - Version 1.1 | 3/25/2009 | PHL0649757-PHL0649757 |

# Exhibit 2
# Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| Illustration Actuary - Specification for Changes to Credited Interest Rate and Cost of Insurance Rates, Version 1.1 | 3/25/2009 | PHL0026197-PHL0026198 |
| Illustration Actuary - Specification for Changes to Credited Interest Rate and Cost of Insurance Rates | 4/29/2009 | PHL0653094-PHL0653095 |
| Illustration Actuary - Specification for Changes to Credited Interest Rate and Cost of Insurance Rates | 5/7/2009 | PHL0603022-PHL0603023 |
| Email from K. Shannon to J. Baillargeon et al., Re: EC Documentation, with attachments | 6/19/2009 | PLIC0734957-PLIC0734957 |
| UL & VUL Mortality Study 2004 – 2009q2 | 6/30/2009 | TW-PF 1229-TW-PF 1233 |
| Email from David Whittemore to Shiela Companie, et al. re: Towers Perrin Proposal to Phoenix Life – Potential Redetermination of COI ; [Attachment] A Proposal to Provide Universal Life Re-determination of Cost of Insurance Rates Support to Phoenix Life Insurance Company | 10/2/2009 | PHL0882889; PHL0882890-0882907 |
| Towers Perrin Letter to Shiela Companie re: Engagement of Towers Perrin for Consulting Services | 10/12/2009 | PHL0882709-0882741 |
| Redetermination Project Towers Perrin | 10/13/2009 | TW-PF 1157-TW-PF 1163 |
| Redetermination Project: Towers Perrin | 10/13/2009 | TW-PF-00001157-000001163 |
| Memorandum re Litigation Related to Non-Guaranteed Elements | 10/14/2009 | TW-PF 12-23; TW-PF 1142-1153 |
| Memorandum from Stewart Citroen to Litigation File re: Litigation Related to Non-Guaranteed Elements | 10/14/2009 | TW-PF-00000012-00000023; TW-PF-00001142-00001153 |
| Email from Brian Lemek to Stephanie Grass re: File Upload | 10/19/2009 | PHL0882950-0882953 |
| Phoenix Life Insurance Company Redetermination Project Notes from Status Call | 10/19/2009 | TW-PF 1166-TW-PF 1167 |
| Phoenix Life Insurance Company Redetermination Project Notes from Status Call | 10/19/2009 | TW-PF-00001166-00001167 |
| Memorandum re Phoenix Redetermination Project | 10/22/2009 | TW-PF 1037-TW-PF 1040 |
| Email from Karen King to David Whittemore, et al. re: Phoenix Redetermination Project; [Attachment] 10/22/2009 Memorandum from Karen King to NOTE TO FILE - Phoenix Redetermination Project re: Phoenix Redetermination Project; [Attachment] PAUL COI Redetermination Data Log | 10/23/2009 | TW-FTP000865 ; TW-FTP000866-000869 ; TW-FTP000870-000877 |
| Email from David Weinsier to Karen King, et al. re: Phoenix Redetermination Project; [Attachment] March 2007 Memorandum from David Weinsier to Note to File re: Responses to Deutsche Bank and CIBC as to Risk of Carriers Raising COI's | 10/26/2009 | TW-FTP000879-000880; TW-FTP000881-000884 |
| Memorandum on Non-Guaranteed Cost of Insurance Rates – Paul II and Paul III | 10/29/2009 | TW-PF 2-TW-PF 10 |
| Memorandum from David G. Whittemore to Phoenix Life File re: Non-Guaranteed Cost of Insurance Rates – PAUL II and III | 10/29/2009 | TW-PF-00000002-00000010 |
| Email from David Weinsier to Stephanie Grass and Karen King re: Phoenix Nov 2006 Standard Pricing Mortality Assumption | 11/3/2009 | TW-FTP000889-000890 |
| Draft Report from David Whittemore to Shiela Companie | 11/9/2009 | TW-FTP000131-000145 |
| Draft Report from David Whittemore to Shiela Companie | 11/9/2009 | TW-PF-00133342-00133345 |
| Mapping Projected Funding Types in to Ultimate States | 11/10/2009 | TW-PF 1215-TW-PF 1227 |
| Mapping Projected Funding Types in to Ultimate States | 11/10/2009 | TW-PF 1228-TW-PF 1228 |
| Email from Stewart Citroen/Towers Perrin to Karen King re: Phoenix; [Attachment] Handwritten Notes; [Attachment] 3/2/2006 Memorandum from John Fenton/Towers Perrin to Duncan Briggs and David Whittemore re: COI Increases; [Attachment] Document Placeholder | 11/11/2009 | TW-FTP000891 ; TW-FTP000892; TW-FTP000893-000896; TW-FTP000897-0001708 |
| Review of Policy Form Language | 11/13/2009 | TW-PF-00133346-00133354 |
| Draft Report from David Whittemore and Karen King to John Flores | 11/17/2009 | TW-FTP000019-000034 |
| Email from John Flores to Karen King, et al. | 11/17/2009 | TW-PF-00001141 |
| Email from Karen King to John Flores, et al. ; [Attachment] 11/18/2009 Draft Report from David Whittemore and Karen King to John Flores | 11/18/2009 | PHL0882954-0882955; PHL0882956-0882972 |
| Letter to John Flores | 11/19/2009 | TW-PF 1105-TW-PF 1141 |
| Email from Karen King to John Flores, et al.; [Attachment] 11/19/2009 Draft Report from David Whittemore and Karen King to John Flores; [Attachment] 11/19/2009 Draft Report from David Whittemore and Karen King to John Flores with Redline | 11/20/2009 | PHL0882973-0882975; PHL0882976-0882994; PHL0882995-0883013 |
| Email from David Whittemore to Karen King re: NGE Memo;[Attachment] 10/29/2009 Memorandum from David Whittemore to Phoenix Life File re: Non-Guaranteed Cost of Insurance Rates – PAUL II and III | 11/23/2009 | TW-FTP001774; TW-FTP001775-001783 |
| Appendix C | 11/23/2009 | TW-PF-00133355-00133356 |
| Email from Karen King to Gina O'Connell, et al. re: Final Report; [Attachment] pic12428.gif | 11/25/2009 | TW-FTP001784-001785; TW-FTP001786 |
| Email from Brian Lemek to Karen King re: Final Report | 11/30/2009 | TW-FTP001793-001797 |
| Email from Jack Gibson to Karen King, et al. re: Phoenix – summary of call with Gina O'Connell | 12/6/2009 | TW-FTP001798-001799 |
| Handwritten Notes | 12/14/2009 | TW-PF 1168-TW-PF 1175 |
| Calculation of COI Thresholds for PAUL IIc and PAUL III | 12/14/2009 | TW-PF 1203-TW-PF 1214 |
| Draft Report from David Whittemore and Karen King to John Flores | 12/16/2009 | TW-FTP00007023-00007038 |
| Email from Ollie Sherman/Towers Perrin to Karen King, et al. re: Phoenix Outside Counsel – Response Requested | 12/18/2009 | TW-FTP001800-001801 |
| Email from Pat Brooks to Karen King, et al. re: 104751: Phoenix CSA for legal review | 1/6/2010 | TW-FTP001834 |

# Exhibit 2
## Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| Email from Karen King to David Whittemore/Towers Perrin and Stephanie Grass re: Phoenix Call; [Attachment] Appendix A and B; [Attachment] 11/19/2009 Draft Report from David Whittemore and Karen King to John Flores | 1/12/2010 | TW-FTP001835-001836; TW-FTP001837-001838; TW-FTP001839; TW-FTP001840-001856 |
| Email from Mary Dronitsky/Towers Perrin to Karen King re: 104751: Phoenix CSA for legal review – Update Needed | 1/14/2010 | TW-FTP001893-001896 |
| Email from Karen King to Stephanie Grass and David Whittemore/Towers Perrin re: Phoenix Draft; [Attachment] 1/21/2010 Draft Report from David Whittemore and Karen King to John Flores with Redline | 1/19/2010 | TW-FTP001966; TW-FTP001967-001986 |
| Draft Report from David Whittemore and Karen King to John Flores | 1/21/2010 | TW-PF-00133510-00133526 |
| Phoenix Accumulator UL II - Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration, Designed for Martin Willick | 1/26/2010 | USBCOI189812-USBCOI189832 |
| PAUL II No. 97535603 - Illustration | 1/26/2010 | USBCOI189812-USBCOI189832 |
| Email from Karen King to Elinor Friedman and Stephanie Grass re: Phoenix Re-Determination of COI Rates Report draft for Peer Review; [Attachment] 1/27/2010 Draft Report from David Whittemore and Karen King to John Flores with Redline | 1/26/2010 | TW-FTP001998; TW-FTP001999-002017 |
| Draft Report from David Whittemore and Karen King to John Flores with Redline | 1/27/2010 | TW-FTP000170-000188 |
| Draft Report from David Whittemore and Karen King to John Flores | 1/27/2010 | TW-PF-00007077-00007094 |
| Email from Karen King to Stephanie Grass, et al. re: Phoenix Draft of Final Report; [Attachment] Attachment A; [Attachment] 2/3/2010 Draft Report from David Whittemore and Karen King to John Flores | 2/1/2010 | TW-FTP002018; TW-FTP002019; TW-FTP002020; TW-FTP002021-002039 |
| Email from Gina O'Connell to Karen King and Shiela Companie re: Checking in | 2/2/2010 | TW-FTP002040-002041 |
| Email from B. Frank to R. Stone, Subject: Older Age UL Business - COI Rate Increase | 2/3/2010 | PHL0760765-PHL0760765 |
| Draft Report from David Whittemore and Karen King to John Flores | 2/3/2010 | TW-FTP000101-000116 |
| Draft Report from David Whittemore and Karen King to John Flores with Redline | 2/3/2010 | TW-FTP000208-000226 |
| Email from Karen King to Kathleen McGah and Gina O'Connell re: Phoenix Draft Report; [Attachment] 2/16/2010 Draft Report from David Whittemore and Karen King to Kathleen McGah | 2/16/2010 | PHL0884007; PHL0884008-0884023 |
| Draft Report from David Whittemore and Karen King to Kathleen McGah | 2/16/2010 | TW-FTP000117-000130 |
| Letter from J. Bonfitto, Phoenix, to K. Nelligan, New York Insurance Department, Subject: Informational Submission | 2/22/2010 | PHL016457-PHL016457 |
| Letter from J. Bonfitto (Phoenix) to K. Nelligan (NYID), Re: Revised Current Non-Guaranteed Cost of Insurance Rates for Forms 05PAUL, 05ITR, U607 NY, and UR88 NY, with attachments | 2/22/2010 | PHL016457, PHL016458-566, PHL016567-639 |
| Email from Karen King to Stephanie Grass, et al. re: Phoenix Updated Draft for Review; [Attachment] 2/23/2010 Draft Report from David Whittemore and Karen King to Kathleen McGah with Redline | 2/23/2010 | TW-FTP002129; TW-FTP002130-002144 |
| Draft Report from David Whittemore and Karen King to Kathleen McGah | 2/23/2010 | TW-PF-00133606-00133618 |
| Email from David Weinsier to David Whittemore, et al. re: Phoenix Updated Draft for Review | 2/25/2010 | TW-FTP002145-002146 |
| Email from B. Frank to G. O'Connell, Subject: PAUL 2C and PAUL 3 rates | 2/26/2010 | PHL0724096-PHL0724096 |
| Draft Report from David Whittemore and Karen King to Kathleen McGah with Redline | 3/3/2010 | TW-FTP000464-000478 |
| Draft Report from David Whittemore and Karen King to Kathleen McGah | 3/3/2010 | TW-PF-00133619-00133631 |
| Email from B. Lemek, to G. O'Connell, Subject: Illustration Actuary Testing | 3/4/2010 | PHL0756071-PHL0756071 |
| Letter from Customer Care Center to Policyholder, Re: Policy 97513181 | 3/8/2010 | |
| PAUL II No. 97513181 - COI Letter | 3/8/2010 | USBCOI000298-USBCOI000298 |
| PAUL II No. 97515667 - COI Letter | 3/8/2010 | USBCOI188912-USBCOI188912 |
| PAUL II No. 97516375 - COI Letter | 3/8/2010 | USBCOI189388-USBCOI189388 |
| PAUL II No. 97516379 - COI Letter | 3/8/2010 | USBCOI189781-USBCOI189781 |
| PAUL II No. 97516394 - COI Letter | 3/8/2010 | USBCOI189895-USBCOI189895 |
| PAUL II No. 97516389 - COI Letter | 3/8/2010 | USBCOI189918-USBCOI189918 |
| Draft Report from David Weinsier and Karen King to Kathleen McGah | 3/9/2010 | TW-PF-00133677-00133689 |
| Email from Jack Gibson to David Weinsier and Karen King re: Phoenix 9another draft report) – response requested | 3/11/2010 | TW-FTP002164-002167 |
| Illustration Actuary - Specification for Changes to Credited Interest Rate and Cost of Insurance Rates | 3/12/2010 | PHL0174519-PHL0174520 |
| Email from Stephanie Grass to Karen King re: Phoenix (for Peer Review) | 3/13/2010 | TW-FTP002168-002170 |
| Draft Report from David Weinsier and Karen King to Kathleen McGah | 3/15/2010 | TW-PF-00133703-00133715 |
| Email from David Weinsier to Karen King re: PHX; [Attachment] 3/15/2010 Draft Report from David Weinsier to Kate McGah; [Attachment] 3/15/2010 Draft Report from David Weinsier to Kate McGah with Redline | 3/16/2010 | TW-FTP002171; TW-FTP002172-002179; TW-FTP002180-002194 |
| Illustration Actuary - Specification for Changes to Credited Interest Rate and Cost of Insurance Rates | 3/19/2010 | PHL0174521-PHL0174522 |
| Letter from Customer Care Center to Policyholder, Re: 97303991 | 3/19/2010 | PLIC 000289-PLIC 000289 |
| PAUL II No. 97514213 - COI Letter | 3/19/2010 | USBCOI000533-USBCOI000533 |
| PAUL II No. 97513947 - COI Letter | 3/19/2010 | USBCOI000740-USBCOI000740 |
| PAUL II No. 97514277 - COI Letter | 3/19/2010 | USBCOI000921-USBCOI000921 |
| PAUL II No. 97514279 - COI Letter | 3/19/2010 | USBCOI001097-USBCOI001097 |

# Exhibit 2
# Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| PAUL II No. 97515342 - COI Letter | 3/19/2010 | USBCOI001262-USBCOI001262 |
| PAUL II No. 97515596 - COI Letter | 3/19/2010 | USBCOI001427-USBCOI001427 |
| PAUL III No. 97519088 - COI Letter | 3/19/2010 | USBCOI002820-USBCOI002820 |
| PAUL II No. 97515597 - COI Letter | 3/19/2010 | USBCOI003002-USBCOI003002 |
| PAUL II No. 97515795 - COI Letter | 3/19/2010 | USBCOI003819-USBCOI003819 |
| PAUL No. 97514311 - COI Letter | 3/19/2010 | USBCOI188532-USBCOI188532 |
| PAUL II No. 97519664 - COI Letter | 3/19/2010 | USBCOI188688-USBCOI188688 |
| PAUL III No. 97519674 - COI Letter | 3/19/2010 | USBCOI188765-USBCOI188765 |
| PAUL II No. 97519675 - COI Letter | 3/19/2010 | USBCOI188840-USBCOI188840 |
| PAUL III No. 97518600 - COI Letter | 3/19/2010 | USBCOI189032-USBCOI189032 |
| PAUL II No. 97518606 - COI Letter | 3/19/2010 | USBCOI189101-USBCOI189101 |
| PAUL II No. 97513959 - COI Letter | 3/19/2010 | USBCOI189145-USBCOI189145 |
| PAUL II No. 97513963 - COI Letter | 3/19/2010 | USBCOI189181-USBCOI189181 |
| PAUL II No. 97516376 - COI Letter | 3/19/2010 | USBCOI189436-USBCOI189436 |
| PAUL II No. 97519064 - COI Letter | 3/19/2010 | USBCOI189499-USBCOI189499 |
| PAUL III No. 97519065 - COI Letter | 3/19/2010 | USBCOI189566-USBCOI189566 |
| PAUL III No. 97518647 - COI Letter | 3/19/2010 | USBCOI189624-USBCOI189624 |
| PAUL II No. 97515743 - COI Letter | 3/19/2010 | USBCOI189683-USBCOI189683 |
| PAUL II No. 97515745 - COI Letter | 3/19/2010 | USBCOI189733-USBCOI189733 |
| PAUL II No. 97535603 - COI Letter | 3/19/2010 | USBCOI189875-USBCOI189875 |
| PAUL III No. 97519155 - COI Letter | 3/19/2010 | USBCOI189939-USBCOI189939 |
| Email from Jack Gibson to Karen King, et al. re: Phoenix COI Re-Determination Draft | 3/19/2010 | TW-FTP002195-002196 |
| Letter from David Weinsier to Kate McGah re: Amendment to Consulting Services | 3/19/2010 | TW-PF-00001237-00001244 |
| Email from Elinor Friedman to Karen King re: Phoenix draft report for peer review; [Attachment] 3/19/2010 Draft Report from David Weinsier and Karen King to Kathleen McGah | 3/21/2010 | TW-FTP002197; TW-FTP002198-002211 |
| Email to Kathleen McGah from Karen King re Phoenix Draft Report | 3/22/2010 | TW-PF 1087-TW-PF 1102 |
| Email from Karen King to Kathleen McGah and Gina O'Connell re: Phoenix Draft Report; [Attachment] 2/22/2010 Draft Report from David Weinsier and Karen King to Kathleen McGah | 3/22/2010 | TW-PF-00001087; TW-PF-00001088-00001102 |
| Email from David Weinsier to Karen King and Stephanie Grass re: Phoenix Draft Report | 3/23/2010 | TW-FTP002228-002229 |
| Draft Report from David Weinsier and Karen King to Kathleen McGah with Redline | 3/26/2010 | TW-FTP000593-000624 |
| Draft Report from David Weinsier and Karen King to Kathleen McGah | 3/26/2010 | TW-PF-00133743-00133756 |
| Illustration Actuary - Specification for Changes to Credited Interest Rate and Cost of Insurance Rates | 4/1/2010 | PHL0026661-PHL0026662 |
| Email from Kathleen McGah to Karen King, et al. re: Phoenix Draft Report; [Attachment] Draft Report from David Weinsier and Karen King to Kathleen McGah | 4/1/2010 | PHL0883588-0883589; PHL0883590-0883605 |
| Email from Karen King to Kathleen McGah, et al. re: Phoenix Draft Report; [Attachment] 3/31/2010 Draft Report from David Weinsier and Karen King to Kathleen McGah | 4/1/2010 | TW-FTP002230; TW-FTP002231-002246 |
| Email from Winston Hall to Karen King and Gina O'Connell re: Summary Report - Policy data on in-force PAUL as of 10/30/2009; [Attachment] Unreadable File | 4/5/2010 | PHL0883606; PHL0883607 |
| Draft Report from David Weinsier and Karen King to Kathleen McGah with Redline | 4/6/2010 | TW-FTP000684-000698 |
| Email to Kathleen McGah from Karen King re Phoenix Draft Report | 4/6/2010 | TW-PF 1071-TW-PF 1086 |
| Email from Karen King to Kathleen McGah, et al. re: Phoenix Draft Report; [Attachment] 4/6/2010 Draft Report from David Weinsier and Karen King to Kathleen McGah | 4/6/2010 | TW-PF-00001071; TW-PF-00001072-00001086 |
| Draft Report from David Weinsier and Karen King to Kathleen McGah | 4/6/2010 | TW-PF-00133817-00133829 |
| Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration for Policy | 4/8/2010 | USBCOI000168-USBCOI000184 |
| Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration for Policy | 4/8/2010 | USBCOI000422-USBCOI000459 |
| Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration for Policy | 4/8/2010 | USBCOI000623-USBCOI000639 |
| Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration for Policy | 4/8/2010 | USBCOI001159 -USBCOI001176 |
| Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration for Policy | 4/8/2010 | USBCOI001336 -USBCOI001356 |
| Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration for Policy | 4/8/2010 | USBCOI003066 -USBCOI003086 |
| Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration for Policy | 4/8/2010 | USBCOI003828 -USBCOI003845 |
| Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration for Policy | 4/9/2010 | USBCOI000805-USBCOI000822 |
| Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration for Policy | 4/9/2010 | USBCOI000981 -USBCOI000998 |
| Draft Report from David Weinsier and Karen King to Thomas Buckingham with Redline | 4/14/2010 | TW-FTP000755-000767 |
| Email to Thomas Buckingham from Karen King re Phoenix Final Report | 4/14/2010 | TW-PF 1055-TW-PF 1070 |
| Email from Karen King to Thomas Buckingham, et al. re: Phoenix Final Report; [Attachment] 4/14/2010 Draft Report from David Weinsier and Karen King to Thomas Buckingham | 4/14/2010 | TW-PF-00001055; TW-PF-00001056-00001070 |
| Draft Report from David Weinsier and Karen King to Thomas Buckingham | 4/14/2010 | TW-PF-00133901-00133913 |
| Phoenix Earnings Review - First Quarter 2010 | 5/4/2010 | |
| Email from A. Ericson to D. Horowitz, Re: Answers to your follow up questions | 5/19/2010 | PLIC017819-PLIC017827 |
| Email chain between G. O'Connell and P. Hoffman (Phoenix), Re: Current cost of insurance | 5/20/2010 | PHL0710606-PHL0710610 |
| Email chain between R. Priest/D. Lauzon (NYID) and B. Frank (Phoenix), Re: Current cost | 5/20/2010 | PHL0772126-PHL0772129 |
| Letter from R. Priest (NYID) to B. Frank (Phoenix), Re: Forms U607 and 05PAUL, File No. 1005160 | 5/28/2010 | PHL016214-PHL016215 |

# Exhibit 2
## Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| Email from R. Priest (NYID) to B. Frank (Phoenix), Re: Current cost of insurance, with attachments | 6/1/2010 | PHL0574687-PHL0574688 |
| Letter from B. Frank (Phoenix) to R. Priest (NYID), Re: Forms U607 NY and 05PAUL NY, NY File No. 1005160, with attachments | 6/24/2010 | PHL024793-95, PHL024796, PHL024797-98, PHL024799-801, PHL024802-08, PHL024809-14 |
| Letter from R. Priest (NYID) to B. Frank (Phoenix), Re: Universal Life forms U607 NY and 05PAUL NY, File No. 1005160 | 7/2/2010 | PHL024815-PHL024817 |
| Letter from NY Insurance Department to Phoenix, Re: Universal Life Forms U607 NY and 05PAUL NY, File No. 1005160 | 7/2/2010 | PHL0692469-PHL0692471 |
| Letter from B. Frank (Phoenix) to R. Priest (NYID), Re: Forms U607 NY and 05PAUL NY, NY File No. 1005160, with attachment | 7/23/2010 | PHL0776367-69, PHL0776370 |
| Letter from R. Priest (NYID) to B. Frank (Phoenix), Re: Universal Life forms U607 NY and 05PAUL NY, File No. 1005160 | 7/29/2010 | PHL016209-PHL016210 |
| Letter from NY Insurance Department to Phoenix, Re: Universal Life Forms U607 NY and 05PAUL NY, File No. 1005160 | 7/29/2010 | PHL0692467-PHL0692468 |
| Email exchange between R. Priest (NYID) to J. Bonfitto (Phoenix), Re: Forms 05PAUL and U607, with attachments | 8/11/2010 | PHL016227, PHL016228-31, PHL016232, PHL016233, PHL016234-35 |
| Letter from B. Frank (Phoenix) to R. Priest (NYID), Re: Forms U607 NY and 05PAUL NY, NY File No. 1005160 | 8/13/2010 | PHL0656529-PHL0656531 |
| Email exchange between R. Priest (NYID) to J. Bonfitto (Phoenix), Re: Forms 05PAUL and U607, with attachments | 8/18/2010 | PHL016402-03, PHL016404-56 |
| Email to M. Bobersky, Re: Phoenix Illustrations | 8/18/2010 | PLIC017858-PLIC017862 |
| Letter from R. Priest (NYID) to B. Frank (Phoenix), Re: Forms U607 NY and 05PAUL NY, File No. 1005160 | 8/26/2010 | PHL016197-PHL016199 |
| Letter from Phoenix to NY Insurance Department, Re: Forms U607 NY and 05PAUL NY, NY File No. 1005160 | 9/10/2010 | PHL0564639-PHL0564647 |
| Email chain between B. Frank (Phoenix) and R. Priest (NYID), Re: Forms U607 NY and 05PAUL #1005160 | 9/22/2010 | PHL0574692-PHL0574693 |
| Review of Assumptions for Older Age PAUL | 9/24/2010 | PHL025239-PHL025243 |
| Memorandum from A. Greenhalgh and A. Corne to File, Re: UL/VUL GAAP Assumption Review, Q3 2010 | 9/24/2010 | PHL025244-PHL025247 |
| Email from J. Bonfitto (Phoenix) to R. Priest (NYID) | 10/4/2010 | PHL024829-PHL024829 |
| Internal Phoenix email regarding communications with NYID | 10/19/2010 | PHL0771766-PHL0771771 |
| Phoenix Accumulator UL II - Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration, Designed for Martin Willick | 11/1/2010 | USBCOI189833-USBCOI189846 |
| Unit Purchase Agreement Between Pacifica Group LLC and Lima LS PLC | 11/10/2010 | USBCOI184454-USBCOI184816 |
| Fax from R. Gumaer (NYID) to B. Frank (Phoenix), with attachment | 12/1/2010 | PHL016195-PHL016196 |
| Email chain between B. Frank (Phoenix) and R. Gumaer☐ (NYID), Re: Request by New York State Insurance Department for Meeting on COI Increases on Low Funded Accumulator Policies | 12/6/2010 | PHL0574702-PHL0574704 |
| Email from J. Sirrine (Phoenix) to R. Gumaer (NYID), Re: Phoenix Meeting Tomorrow, with attachments | 12/13/2010 | PHL0692500, PHL0692501-03 |
| Phoenix - New York Insurance Department - Summary of Cost of Insurance Change | 12/14/2010 | PHL0692501-PHL0692503 |
| Email from K. McGah (Phoenix) to J. Lucashuk (NYDFS), Re: Copy of Phoenix Correspondence from Third Party | 12/15/2010 | PHL0000131-PHL0000131 |
| Email from K. McGah (Phoenix) to R. Gumaer (NYID), Re: 12-22-10 Phoenix Response, with attachments | 12/22/2010 | PHL0000132, PHL0000133-35, PHL0000136, PHL0000137, PHL0000138-51, PHL0000152-65 |
| Letter to NY Insurance Department | 12/22/2010 | PHL0759932-PHL0759934 |
| Email from R. Priest (NYID) to K. McGah (Phoenix), Re: Form 05 PAUL COI Rate Increase | 12/28/2010 | PHL0000176-PHL0000177 |
| Email from R. Gumaer (NYID) to K. McGah (Phoenix), Re: Additional Request from NYSID on the COI Increase on the Phoenix Accumulator Policy | 1/4/2011 | PHL0000179-PHL0000181 |
| Email from Y. Yao (NYID) to K. McGah (Phoenix), Re: FOIL Request No. 2010-002033-NYC, with attachments | 1/5/2011 | PHL0574712-13, PHL0574714, PHL0574715-63, PHL0574764, PHL0574765-66, PHL0574767-80, PHL0574781-821 |
| Email from R. Gumaer (NYID) to K. McGah (Phoenix), Re: Additional Request from NYSID on the COI Increase on the Phoenix Accumulator Policy - Phoenix Request for Extension of Response Date | 1/7/2011 | PHL0000294-PHL0000297 |
| Email from R. Gumaer to K. McGah, Re: Additional Request from NYSID on the COI Increase on the Phoenix Accumulator Policy - Phoenix Request for Extension of Response Date | 1/7/2011 | PLIC 000889-PLIC 000892 |

# Exhibit 2
# Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| Email from K. McGah (Phoenix) to R. Priest (NYID), Re: Phoenix Response to your 12/28/10 Email requesting additional information, with attachments | 1/12/2011 | PHL0000299-300, PHL0000301-314, PHL0000315-329, PHL0000330, PHL0000331, PHL0000332 |
| Email from R. Gumaer to K. McGah (Phoenix), Re: Additional Request from NYSID on the COI Increase on the Phoenix Accumulator Policy - Phoenix Request for Extension of Response Date | 2/3/2011 | PHL0000334-PHL0000337 |
| Email from K. McGah (Phoenix) to R. Gumaer (NYID), Re: Response to Additional Request from NYSID on the COI Rate Increase..., with attachments | 2/8/2011 | PHL0000343, PHL0000344-366, PHL0000367-372, PHL0000373-382, PHL0000383-388, PHL0000389, PHL0000390-399, PHL0000400-401, PHL0000402-407 |
| Email from E. Bernier to J. Hurwitz, Subject: Current COIs | 2/17/2011 | PHL0698775-PHL0698775 |
| Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration for Policy | 3/1/2011 | USBCOI004124-USBCOI004138 |
| Email from R. Gumaer (NYID) to K. McGah (Phoenix), Re: Phoenix's 2/8/11 Response to the Department on the COI Rate Increase | 3/17/2011 | PHL0000409-PHL0000411 |
| Email from Karen King to Gina O'Connell re: Draft Cover letter for NYID; [Attachment] Draft Cover Letter from Kathleen McGah to Ruth Gumaer; [Attachment] Draft Cover Letter from Kathleen McGah to Ruth Gumaer | 3/29/2011 | PHL0884083-0884084; PHL0884085-0884086; PHL0884087-0884088 |
| Email from Karen King to Robert Matczak re: Draft Cover letter for NYID; [Attachment] Draft Cover Letter from Kathleen McGah to Ruth Gumaer; [Attachment] Draft Report from David Weinsier and Karen King to Thomas Buckingham | 3/29/2011 | TW-FTP002280-002281; TW-FTP002282-002283; TW-FTP002284-002298 |
| Email from Robert Matczak to Gina O'Connell, et al. re: Draft Cover for NYID; [Attachment] Draft Cover Letter from Kathleen McGah to Ruth Gumaer with Redline | 3/29/2011 | TW-FTP002305-002307; TW-FTP002308-002309 |
| Letter form K. McGah (Phoenix) to R. Gumaer (NYID) Re:  Response to Request Dated March 17, 2011 from NYSID on the COI Rate Increase on the Phoenix Accumulator Policy | 3/30/2011 | PHL025096-PHL025097 |
| Email from Gina O'Connell to Robert Matczak, et al. re: Draft Cover Letter for NYID | 3/30/2011 | TW-FTP002321-002324 |
| Email from Kathleen McGah to Robert Matczak, et al. re: Draft Cover letter for NYID; [Attachment] Draft Cover Letter from Kathleen McGah to Ruth Gumaer | 3/30/2011 | TW-FTP002389-002394; TW-FTP002395-002396 |
| Email from Robert Matczak to Kathleen McGah, et al. re: Draft Cover letter for NYID; [Attachment] Draft Cover Letter from Kathleen McGah to Ruth Gumaer with Redline | 3/30/2011 | TW-FTP002426-002429; TW-FTP002430-002431 |
| Email from Kathleen McGah to Robert Matczak, et al. re: Final Cover letter and Report; [Attachment] Final Cover Letter from Kathleen McGah to Ruth Gumaer; [Attachment] Report from David Weinsier and Karen King to Thomas Buckingham | 3/30/2011 | TW-FTP002432; TW-FTP002433-002434; TW-FTP002435-002449 |
| Illustration Actuary - Specification for Changes to Credited Interest Rate and Cost of Insurance Rates | 5/16/2011 | PHL0564397-PHL0564398 |
| Illustration Actuary - Specification for Changes to Credited Interest Rate and Cost of Insurance Rates | 5/16/2011 | PHL0564944-PHL0564945 |
| Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration for Policy | 7/26/2011 | USBCOI002827-USBCOI002837 |
| Phoenix Accumulator UL II - Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration, Designed for Martin Willick | 7/27/2011 | USBCOI189847-USBCOI189858 |
| Email from M. Kennedy (NYID) to D. Fernez, D. Lauzon, et al., Re:  In-Person Meeting | 8/2/2011 | PHL0000413-PHL0000413 |
| Email from G. O'Connell (Phoenix) to D. Lauzon (NYID) Re:  Time-frame for 2011 COI Rate Increases | 8/5/2011 | PHL0000414-PHL0000414 |
| Email from K. Thomas (Phoenix) to N.Y. Insurance Department Re:  Phoenix Presentation Materials for Our Meeting at 3pm Today, with attachment | 8/5/2011 | PHL0692958-PHL0692982 |
| Meeting with New York State Insurance Department | 8/5/2011 | PLIC0677627-PLIC0677650 |
| Meeting with New York State Insurance Department | 8/5/2011 | PHL0692959-PHL0692982 |
| Letter from G. O'Connell (Phoenix) to D. Lauzon (NYID) Re:  New COI Rate Increases, with Exhibits A-T | 8/24/2011 | PHL020885-91; PHL020892-5; PHL020896-953; PHL0755520-1 |
| Letter from Phoenix to NYID, Re: Informational Submission - Revised Current Non-Guaranteed Cost of Insurance Rates for Forms 05PAULNY and 05ITR | 8/24/2011 | PLIC014160-PLIC014166 |
| Letter from Phoenix to NY Insurance Department, Re: Informational Submission - Revised Current Non-Guaranteed Cost of Insurance Rates for Forms 05PAULNY and 05ITR | 8/24/2011 | PHL0575846-PHL0575852 |
| Email from A. Ericson to D. Pellerin, Re: Project Z | 9/1/2011 | PHL0575799-PHL0575802 |
| Letter from M. Maffei (NYID) to K. McGah (Phoenix) Re:  NYID's Investigation into Phoenix's 2010 COI Rate Increase, with attachment | 9/6/2011 | PHL0564077-9, PHL057803 |
| Letter from M. Maffei, State of New York Insurance Department, to K. McGah, Phoenix Life Insurance Company, Subject: COI Increase - U607 NY and 05PAUL - File No. 1005160 | 9/6/2011 | PHL0564077-PHL0564079 |
| Letter from NYID to K. McGah, Re: Phoenix Life Insurance Company, COI Increase - U607 NY and 05PAUL, File No. 1005160 | 9/6/2011 | PLIC018368-PLIC018370 |
| Letter from NY Insurance Department to Phoenix, Re: COI Increase - U607 NY and 05PAUL, File No. 1005160 | 9/6/2011 | PHL0575804-PHL0575806 |

# Exhibit 2
# Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| Email chain between D. Lauzon/W. Carmello (NYID) and G. O'Connell (Phoenix) Re: Phoenix Life Insurance Company - Informational Submission for Cost of Insurance Rate Change, with attachment | 9/9/2011 | PHL0630558-PHL0630564 |
| Email from G. O'Connell (Phoenix) and D. Lauzon (NYDFS) Re: Phoenix Life Insurance Company - Informational Submission for Cost of Insurance Rate Change, with attachment | 9/21/2011 | PHL0630566-PHL0630567 |
| Email chain between G. O'Connell (Phoenix) and D. Lauzon (NYDFS) Re: Phoenix Life Insurance Company - Informational Submission for Cost of Insurance Rate Change, with attachments | 9/23/2011 | PHL0630573-PHL0630597 |
| Email chain between G. O'Connell (Phoenix) and D. Lauzon (NYDFS) Re: Phoenix Life Insurance Company - Informational Submission for Cost of Insurance Rate Change, with attachments | 9/23/2011 | PHL0730973-PHL0730977 |
| Email between D. Lauzon, G. O'Connell, and W. Carmello, Re: Phoenix Life Insurance Company - Informational Submission for Cost of Insurance Rate Change, with attachments | 9/23/2011 | PHL0575834-PHL0575837 |
| Email chain between G. O'Connell (Phoenix) to D. Lauzon (NYDFS) Re: Phoenix Life Insurance Company - Informational Submission for Cost of Insurance Rate Change, NY Approved Project Z | 9/26/2011 | PHL0578915-PHL057896 |
| Email from G. O'Connell (Phoenix) to D. Lauzon (NYDFS) Re: Phoenix Life Insurance Company - Informational Submission for Cost of Insurance Rate Change, with attachments | 9/26/2011 | PHL0630580-PHL0630583 |
| Email from W. Carmello to G. O'Connell, Re: Phoenix Life Insurance Company - Informational Submission for Cost of Insurance Rate Change - PAUL 3 A/B/C | 9/26/2011 | PLIC0615239-PLIC0615239 |
| PAUL III No. 97528285 - COI Letter | 10/10/2011 | USBCOI004064-USBCOI004064 |
| PAUL III No. 97522375 - COI Letter | 10/17/2011 | USBCOI000034-USBCOI000034 |
| Letter from G. O'Connell (Phoenix) Re: Dauzon (NYDFS) Re: Informational Submission Revised Current Non-Guaranteed Cost of Insurance Rates for Forms | 10/21/2011 | PHL025106-15, PHL025118 |
| Letter from Phoenix to NYID, Re: Informational Submission - Revised Current Non-Guaranteed Cost of Insurance Rates for Forms U607NY and 05PAULNY | 10/21/2011 | PLIC018381-PLIC018390 |
| Letter from Phoenix to Policyholder, Re: 97304872 | 10/24/2011 | MF000349-MF000349 |
| Letter from Phoenix to Policyholder, Re: 97304872 | 10/24/2011 | PLIC 000551-PLIC 000551 |
| Email chain between K. McGah (Phoenix) and M. Maffei (NYDFS) Re: Phoenix COI | 10/27/2011 | PHL0576113-PHL0576117 |
| Level Prem to Maturity - Phoenix Accumulator UL II - Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration, Designed for Martin Willick | 10/27/2011 | USBCOI214736-USBCOI214752 |
| Phoenix Accumulator UL II - Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration, Designed for Martin Willick | 10/27/2011 | USBCOI189859-USBCOI189874 |
| PAUL II No. 97515342 - COI Error Letter | 11/1/2011 | USBCOI001829-USBCOI001833 |
| PAUL II No. 97515596 - COI Error Letter | 11/1/2011 | USBCOI002970-USBCOI002973 |
| PAUL II No. 97515597 - COI Error Letter | 11/1/2011 | USBCOI002998-USBCOI003001 |
| Email from G. O'Connell (Phoenix) to D. Lauzon (NYDFS) Re: Confidential: Re Phoenix Life Insurance Company - Informational Submission for Cost of Insurance Rate Charge, with attachment | 11/2/2011 | PHL0630708-PHL0630733 |
| Email from A. Ericson to D. Horowitz, Re: A new round of COI increases? | 11/3/2011 | PLIC0679115-PLIC0679118 |
| Email between D. Horowitz and A. Ericson, Re: A new round of COI increases? | 11/3/2011 | PHL0576130-PHL0576134 |
| Email chain between N.Y. Department Financial Services and Phoenix Re: 1110127 Informational Submission - Revised Cost of Insurance Rates | 11/9/2011 | PHL0000415 -PHL0000420 |
| Email from D. Lauzon to G. O'Connell, Re: 1110127 Informational Submission - Revised Cost of Insurance Rates | 11/9/2011 | PLIC0685031-PLIC0685035 |
| Email from K. McGah (Phoenix) to M. Maffei (NYDFS) Re: Phoenix Life Insurance Company 2010 COI Rate Increase-U607NY and 05PAUL NY Effective April 1, 2011 Your File No. 1005160, with attachment | 11/10/2011 | PHL0731875 -PHL0731897 |
| Draft Letter from Phoenix to NY Department of Financial Services, Re: COI Increase - U607 NY and 05PAUL NY, Your File No. 1005160 | 11/10/2011 | PHL0578997-PHL0578907 |
| Email between K. McGah and M. Maffei (with additional CCs), Re: Phoenix Life Insurance Company 2010 COI Rate Increase-U607NY and 05PAUL NY Effective April 1, 2011, Your File No. 1005160, with attachments | 11/10/2011 | PHL0710958-PHL0710961 |
| Draft Letter Template from Customer Care Center to Policyholder | 11/10/2011 | PHL0710967-PHL0710969 |
| Email from M. Maffei (NYDFS) to K. McGah (Phoenix) Re: Phoenix Life Insurance Company 2010 COI Rate Increase-U607NY and 05PAUL NY Effective April 1, 2011 Your File No. 1005160, with attachment | 11/14/2011 | PHL0731898 -PHL0731905 |
| Email from K. McGah (Phoenix) to M. Maffei (NYDFS) Re: Phoenix Life Insurance Company 2010 COI Rate Increase-U607NY and 05PAUL NY Effective April 1, 2011 Your File No. 1005160, with attachment | 11/14/2011 | PHL0776389 -PHL0776406 |
| Letter from Phoenix to NYID, Re: Phoenix Life Insurance Company, COI Increase - U607 NY and 05PAUL NY, Your File No. 1005160 | 11/15/2011 | PLIC0761058-PLIC0761068 |
| Exhibit A - Plan for Subject Policies | 11/15/2011 | PLIC0761069-PLIC0761069 |
| Exhibit A-1 | 11/15/2011 | PLIC0761070-PLIC0761073 |

# Exhibit 2
# Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| Letter from M. Maffei, State of New York Insurance Department, to K. McGah, Phoenix Life Insurance Company, Subject: COI Increase - U 607 NY and 05 PAUL NY - File No. 1005160 | 11/16/2011 | PHL015929-PHL015929 |
| Email between P. Hoffmann and J. Nakano (with additional CCs), Re: Paul Series UL Product, with attachments | 11/17/2011 | PHL0576156-PHL0576157 |
| COI Rate Increase for Certain PLIC Policies - Effective January 1, 2012 - Talking Points and Q&A | 11/18/2011 | PLIC 000721-PLIC 000725 |
| COI Rate Increase for Certain PLIC Policies - Effective January 1, 2012 - Talking Points and Q&A | 11/18/2011 | PHL0000126-PHL0000130 |
| Letter Template from Customer Care Center to Policyholder (Letter 1: Active policies) | 11/23/2011 | PLIC0817274-PLIC0817275 |
| Email from K. McGah (Phoenix) to M. Maffei (NYDFS) Re:  Article in Life Settlements Report Regarding NY Class Action Complaint | 11/28/2011 | PHL0576169 -PHL0576172 |
| Letter from L. Hoffman (NYDFS) to G. O'Connell (Phoenix) Re:  Freedom of Information Law ("FOIL") Request Number 2011-001832-NYC Life Bureau File N. 1111026 | 11/29/2011 | PHL0782061 -PHL0782062 |
| Email from K. McGah (Phoenix) to M. Maffei (NYDFS) Re:  Phoenix Life Insurance Company 2010 COI Rate Increase-U607NY and 05PAUL NY Effective April 1, 2011 Your File No. 1005160 | 11/30/2011 | PHL0000001 -PHL0000002 |
| Email from K. McGah (Phoenix) to M. Maffei (NYDFS) Re:  Article in Life Settlements Report Regarding NY Insurance Department Response to Claimant | 11/30/2011 | PHL0576173 -PHL0576178 |
| Exhibit A-1 - November 15, 2011 Letter to New York State Department of Financial Services | 11/30/2011 | PLIC018375-PLIC018378 |
| Letter from K. McGah (Phoenix) to NYDFS Re:  Phoenix Life Insurance Company Request for Records Under New York Freedom of Information Law | 12/2/2011 | PHL006978-PHL006980 |
| Email from A. Greenhalgh to N. Zhang (with additional CCs), Re: PHLVIC CFT - UL future and COI increase assumption | 12/16/2011 | PHL0579033-PHL0579035 |
| Letter from G. O'Connell (Phoenix) to L. Hoffman (NYDFS) Re:  Freedom of Information Law Request Number 2011-001832-NYC, with attachment | 12/20/2011 | PHL006970-PHL006975 |
| Letter from K. McGah (Phoenix) to Y. Yao (NYSDFS) Re:  Phoenix COI FOIL Request from D. Horowitz | 12/20/2011 | PHL006987 -PHL006992 |
| Letter from L. Hoffman (NYDFS) to G. O'Connell (Phoenix) Re:  Freedom of Information Law ("FOIL") Notice of Determination | 12/30/2011 | PHL006993 -PHL006996 |
| Letter from S. Geisel (NYDFS) to K. McGah (Phoenix) Re:  Freedom of Information Law ("FOIL") Notice of Determination | 1/5/2012 | PHL006959 -PHL006961 |
| Letter from L. Hoffman (NYDFS) to K. McGah (Phoenix) Re:  Freedom of Information Law ("FOIL") Request No. 2011-002004-NYC Life Bureau File No. 1112035 | 1/11/2012 | PHL006957 -PHL006957 |
| Email from D. Lewis (NYDFS) to K. McGah (Phoenix) Re:  Phoenix Life Insurance Company Request for Records, with attachment | 1/11/2012 | PHL0579095 -PHL0579103 |
| Letter from Y. Yao (NYDFS) to K. McGah (Phoenix) Re:  Freedom of Information Law ("FOIL") Request No. 2011-002004-NYC | 1/19/2012 | PHL006958-PHL006958 |
| Phoenix Accumulator UL II - Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration, Designed for Martin Willick | 3/9/2012 | USBCOI214704-USBCOI214721 |
| First Amended Complaint, with Exhibits 1-3 | 5/21/2012 | |
| Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration for Policy | 5/30/2012 | USBCOI000145-USBCOI000158 |
| Email from L. Hoffman (NYDFS) to K. McGah Re:  FOIL Request 2012-002004-NYC (1112035), with attachments | 7/18/2012 | PHL0757774-856; PHL0771352-53 |
| Email from L. Hoffman (NYDFS) to K. McGah Re:  FOIL Request 2012-002004-NYC (1112035), with attachments | 7/20/2012 | PHL0630525-33; PHL0630537-733 |
| Letter from Phoenix to Office of the Commissioner of Insurance, State of Wisconsin, Re: Your File No. 227907, with exhibits | 8/1/2012 | PHL0709063-PHL0709205 |
| Phoenix Accumulator UL II - Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration, Designed for Martin Willick | 12/12/2012 | USBCOI214753-USBCOI214769 |
| Phoenix Accumulator UL II - Flexible Premium Adjustable Life Insurance - A Life Insurance Illustration, Designed for Martin Willick | 12/12/2012 | USBCOI214798-USBCOI214813 |
| Defendant's Written Response to Plaintiffs' Second Amended Notice of Rule 30(b)(6) Deposition of Person Most Knowledgeable at Phoenix Life Insurance Company, with Supporting Documents | 6/7/2013 | |
| Letter from F. De La Merced, State of California Department of Insurance, to R. Mallick, Phoenix Life Insurance Co., Subject: RUS-6723791 (PHL Variable Insurance Company) | 6/21/2013 | PHL0970831-PHL0970832 |
| PAUL II No. 97516379 - Annual Policy Summary | 1/25/06 - 1/24/07 | USBCOI193430-USBCOI193431 |
| PAUL II No. 97516379 - Annual Policy Summary | 1/25/07 - 1/24/08 | PHL0973291-PHL0973294 |
| PAUL II No. 97516379 - Annual Policy Summary | 1/25/08 - 1/24/09 | USBCOI192914-USBCOI192916 |
| PAUL II No. 97516379 - Annual Policy Summary | 1/25/09 - 1/24/10 | USBCOI192917-USBCOI192919 |
| PAUL II No. 97516379 - Annual Policy Summary | 1/25/10 - 1/24/11 | USBCOI189760-USBCOI189762 |
| PAUL III No. 97519064 - Annual Policy Summary | 10/10/06 - 10/9/07 | USBCOI189437-USBCOI189439 |
| PAUL III No. 97518647 - Annual Policy Summary | 10/10/06 - 10/9/07 | USBCOI189440-USBCOI189442 |
| PAUL III No. 97519065 - Annual Policy Summary | 10/10/06 - 10/9/07 | USBCOI189500-USBCOI189502 |
| PAUL III No. 97519065 - Annual Policy Summary | 10/10/07 - 10/9/08 | PHL0973433-PHL0973435 |

# Exhibit 2
## Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| PAUL III No. 97518647 - Annual Policy Summary | 10/10/07 - 10/9/08 | USBCOI189625-USBCOI189627 |
| PAUL III No. 97519064 - Annual Policy Summary | 10/10/07 - 10/9/08 | USBCOI189940-USBCOI189942 |
| PAUL III No. 97519065 - Annual Policy Summary | 10/10/07 - 10/9/08 | USBCOI189943-USBCOI189945 |
| PAUL III No. 97519064 - Annual Policy Summary | 10/10/08 - 10/9/09 | USBCOI189443-USBCOI189445 |
| PAUL III No. 97519065 - Annual Policy Summary | 10/10/08 - 10/9/09 | USBCOI189503-USBCOI189505 |
| PAUL III No. 97518647 - Annual Policy Summary | 10/10/08 - 10/9/09 | USBCOI189567-USBCOI189569 |
| PAUL III No. 97518647 - Annual Policy Summary | 10/10/09 - 10/9/10 | PHL0973401-PHL0973403 |
| PAUL III No. 97519064 - Annual Policy Summary | 10/10/09 - 10/9/10 | PHL0973420-PHL0973422 |
| PAUL III No. 97519065 - Annual Policy Summary | 10/10/09 - 10/9/10 | PHL0973439-PHL0973441 |
| PAUL III No. 97519064 - Annual Policy Summary | 10/10/10 - 10/9/11 | USBCOI189446-USBCOI189448 |
| PAUL III No. 97518647 - Annual Policy Summary | 10/10/10 - 10/9/11 | USBCOI189570-USBCOI189572 |
| PAUL III No. 97519065 - Annual Policy Summary | 10/10/10 - 10/9/11 | USBCOI192094-USBCOI192096 |
| PAUL III No. 97518647 - Annual Policy Summary | 10/10/11 - 10/9/12 | PHL0973407-PHL0973409 |
| PAUL III No. 97519064 - Annual Policy Summary | 10/10/11 - 10/9/12 | PHL0973426-PHL0973428 |
| PAUL III No. 97519065 - Annual Policy Summary | 10/10/11 - 10/9/12 | PHL0973445-PHL0973447 |
| PAUL II No. 97535603 - Annual Policy Summary | 10/25/05 - 10/24/06 | USBCOI189799-USBCOI189801 |
| PAUL II No. 97535603 - Annual Policy Summary | 10/25/06 - 10/24/07 | USBCOI189802-USBCOI189804 |
| PAUL II No. 97535603 - Annual Policy Summary | 10/25/07 - 10/24/08 | USBCOI189805-USBCOI189807 |
| PAUL II No. 97535603 - Annual Policy Summary | 10/25/08 - 10/24/09 | PHL0973601-PHL0973604 |
| PAUL II No. 97535603 - Annual Policy Summary | 10/25/09 - 10/24/10 | USBCOI189808-USBCOI189810 |
| PAUL II No. 97535603 - Annual Policy Summary | 10/25/10 - 10/24/11 | USBCOI205775-USBCOI205777 |
| PAUL II No. 97535603 - Annual Policy Summary | 10/25/11 - 10/24/12 | PHL0973613-PHL0973616 |
| PAUL II No. 97515342 - Annual Policy Summary | 11/12/05 - 11/11/06 | USBCOI001229-USBCOI001231 |
| PAUL II No. 97515795 - Annual Policy Summary | 11/12/05 - 11/11/06 | USBCOI003790-USBCOI003792 |
| PAUL II No. 97515342 - Annual Policy Summary | 11/12/06 - 11/11/07 | USBCOI001232-USBCOI001234 |
| PAUL II No. 97515795 - Annual Policy Summary | 11/12/06 - 11/11/07 | USBCOI003793-USBCOI003795 |
| PAUL II No. 97515342 - Annual Policy Summary | 11/12/07 - 11/11/08 | USBCOI001235-USBCOI001237 |
| PAUL II No. 97515795 - Annual Policy Summary | 11/12/07 - 11/11/08 | USBCOI003796-USBCOI003798 |
| PAUL II No. 97515342 - Annual Policy Summary | 11/12/08 - 11/11/09 | USBCOI001238-USBCOI001241 |
| PAUL II No. 97515795 - Annual Policy Summary | 11/12/08 - 11/11/09 | USBCOI003799-USBCOI003802 |
| PAUL II No. 97515342 - Annual Policy Summary | 11/12/09 - 11/11/10 | USBCOI001242-USBCOI001244 |
| PAUL II No. 97515795 - Annual Policy Summary | 11/12/09 - 11/11/10 | USBCOI003803-USBCOI003805 |
| PAUL II No. 97515342 - Annual Policy Summary | 11/12/10 - 11/11/11 | USBCOI001822-USBCOI001824 |
| PAUL II No. 97515795 - Annual Policy Summary | 11/12/10 - 11/11/11 | USBCOI003806-USBCOI003808 |
| PAUL II No. 97515342 - Annual Policy Summary | 11/12/11 - 11/11/12 | PHL0973092-PHL0973094 |
| PAUL II No. 97515795 - Annual Policy Summary | 11/12/11 - 11/11/12 | PHL0973234-PHL0973237 |
| PAUL III No. 97519155 - Annual Policy Summary | 11/15/06 - 11/14/07 | USBCOI189225-USBCOI189227 |
| PAUL III No. 97519155 - Annual Policy Summary | 11/15/07 - 11/14/08 | USBCOI189302-USBCOI189304 |
| PAUL III No. 97519155 - Annual Policy Summary | 11/15/08 - 11/14/09 | USBCOI189228-USBCOI189230 |
| PAUL III No. 97519155 - Annual Policy Summary | 11/15/09 - 11/14/10 | USBCOI189231-USBCOI189233 |
| PAUL III No. 97519155 - Annual Policy Summary | 11/15/10 - 11/14/11 | USBCOI189234-USBCOI189236 |
| PAUL III No. 97519155 - Annual Policy Summary | 11/15/11 - 11/14/12 | PHL0973487-PHL0973490 |
| PAUL III No. 97519664 - Annual Policy Summary | 11/29/06 - 11/28/07 | USBCOI190475-USBCOI190478 |
| PAUL III No. 97519675 - Annual Policy Summary | 11/29/06 - 11/28/07 | USBCOI190483-USBCOI190486 |
| PAUL III No. 97519674 - Annual Policy Summary | 11/29/06 - 11/28/07 | USBCOI193393-USBCOI193396 |
| PAUL III No. 97519664 - Annual Policy Summary | 11/29/07 - 11/28/08 | USBCOI190479-USBCOI190480 |
| PAUL III No. 97519675 - Annual Policy Summary | 11/29/07 - 11/28/08 | USBCOI190487-USBCOI190488 |
| PAUL III No. 97519674 - Annual Policy Summary | 11/29/07 - 11/28/08 | USBCOI193397-USBCOI193398 |
| PAUL III No. 97519664 - Annual Policy Summary | 11/29/08 - 11/28/09 | USBCOI188616-USBCOI188618 |
| PAUL III No. 97519674 - Annual Policy Summary | 11/29/08 - 11/28/09 | USBCOI188692-USBCOI188694 |
| PAUL III No. 97519675 - Annual Policy Summary | 11/29/08 - 11/28/09 | USBCOI188769-USBCOI188771 |
| PAUL III No. 97519664 - Annual Policy Summary | 11/29/09 - 11/28/10 | PHL0973501-PHL0973503 |
| PAUL III No. 97519674 - Annual Policy Summary | 11/29/09 - 11/28/10 | PHL0973522-PHL0973524 |
| PAUL III No. 97519675 - Annual Policy Summary | 11/29/09 - 11/28/10 | PHL0973543-PHL0973545 |
| PAUL III No. 97519664 - Annual Policy Summary | 11/29/10 - 11/28/11 | USBCOI188619-USBCOI188621 |
| PAUL III No. 97519674 - Annual Policy Summary | 11/29/10 - 11/28/11 | USBCOI188695-USBCOI188697 |
| PAUL III No. 97519675 - Annual Policy Summary | 11/29/10 - 11/28/11 | USBCOI188772-USBCOI188774 |
| PAUL III No. 97519664 - Annual Policy Summary | 11/29/11 - 11/28/12 | PHL0973508-PHL0973511 |
| PAUL III No. 97519674 - Annual Policy Summary | 11/29/11 - 11/28/12 | PHL0973529-PHL0973532 |
| PAUL III No. 97519675 - Annual Policy Summary | 11/29/11 - 11/28/12 | PHL0973550-PHL0973553 |
| PAUL III No. 97519088 - Annual Policy Summary | 11/3/06 - 11/2/07 | USBCOI002785-USBCOI002786 |
| PAUL III No. 97519088 - Annual Policy Summary | 11/3/07 - 11/2/08 | USBCOI002787-USBCOI002789 |
| PAUL III No. 97519088 - Annual Policy Summary | 11/3/08 - 11/2/09 | USBCOI002790-USBCOI002792 |
| PAUL III No. 97519088 - Annual Policy Summary | 11/3/09 - 11/2/10 | USBCOI002793-USBCOI002795 |
| PAUL III No. 97519088 - Annual Policy Summary | 11/3/10 - 11/2/11 | USBCOI002796-USBCOI002798 |
| PAUL III No. 97519088 - Annual Policy Summary | 11/3/11 - 11/2/12 | PHL0973465-PHL0973468 |
| PAUL II No. 97516376 - Annual Policy Summary | 11/30/05 - 11/29/06 | USBCOI193434-USBCOI193435 |

# Exhibit 2
## Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| PAUL II No. 97516376 - Annual Policy Summary | 11/30/06 - 11/29/07 | PHL0973263-PHL0973266 |
| PAUL II No. 97516376 - Annual Policy Summary | 11/30/07 - 11/29/08 | USBCOI191904-USBCOI191906 |
| PAUL II No. 97516376 - Annual Policy Summary | 11/30/08 - 11/29/09 | USBCOI191907-USBCOI191909 |
| PAUL II No. 97516376 - Annual Policy Summary | 11/30/09 - 11/29/10 | PHL0973275-PHL0973278 |
| PAUL II No. 97516376 - Annual Policy Summary | 11/30/10 - 11/29/11 | USBCOI189389-USBCOI189391 |
| PAUL II No. 97516376 - Annual Policy Summary | 11/30/11 - 11/29/12 | PHL0973283-PHL0973286 |
| PAUL II No. 97515743 - Annual Policy Summary | 12/22/05 - 12/21/06 | USBCOI192381-USBCOI192383 |
| PAUL II No. 97515745 - Annual Policy Summary | 12/22/05 - 12/21/06 | USBCOI192447-USBCOI192449 |
| PAUL II No. 97515743 - Annual Policy Summary | 12/22/06 - 12/21/07 | USBCOI192384-USBCOI192386 |
| PAUL II No. 97515745 - Annual Policy Summary | 12/22/06 - 12/21/07 | USBCOI192450-USBCOI192452 |
| PAUL II No. 97515743 - Annual Policy Summary | 12/22/07 - 12/21/08 | USBCOI192387-USBCOI192389 |
| PAUL II No. 97515745 - Annual Policy Summary | 12/22/07 - 12/21/08 | USBCOI192453-USBCOI192455 |
| PAUL II No. 97515743 - Annual Policy Summary | 12/22/08 - 12/21/09 | USBCOI192390-USBCOI192392 |
| PAUL II No. 97515745 - Annual Policy Summary | 12/22/08 - 12/21/09 | USBCOI192456-USBCOI192458 |
| PAUL II No. 97515743 - Annual Policy Summary | 12/22/09 - 12/21/10 | USBCOI189634-USBCOI189636 |
| PAUL II No. 97515745 - Annual Policy Summary | 12/22/09 - 12/21/10 | USBCOI189684-USBCOI189686 |
| PAUL II No. 97515743 - Annual Policy Summary | 12/22/10 - 12/21/11 | PHL0973182-PHL0973184 |
| PAUL II No. 97515745 - Annual Policy Summary | 12/22/10 - 12/21/11 | PHL0973205-PHL0973207 |
| PAUL II No. 97515743 - Annual Policy Summary | 12/22/11 - 12/21/12 | PHL0973185-PHL0973187 |
| PAUL II No. 97515745 - Annual Policy Summary | 12/22/11 - 12/21/12 | PHL0973208-PHL0973210 |
| PAUL II No. 97515596 - Annual Policy Summary | 12/9/05 - 12/8/06 | USBCOI001399-USBCOI001400 |
| PAUL II No. 97515597 - Annual Policy Summary | 12/9/05 - 12/8/06 | USBCOI002975-USBCOI002976 |
| PAUL II No. 97515596 - Annual Policy Summary | 12/9/06 - 12/8/07 | USBCOI001401-USBCOI001403 |
| PAUL II No. 97515597 - Annual Policy Summary | 12/9/06 - 12/8/07 | USBCOI002977-USBCOI002979 |
| PAUL II No. 97515596 - Annual Policy Summary | 12/9/07 - 12/8/08 | USBCOI001404-USBCOI001406 |
| PAUL II No. 97515597 - Annual Policy Summary | 12/9/07 - 12/8/08 | USBCOI002980-USBCOI002982 |
| PAUL II No. 97515596 - Annual Policy Summary | 12/9/08 - 12/8/09 | USBCOI001407-USBCOI001409 |
| PAUL II No. 97515597 - Annual Policy Summary | 12/9/08 - 12/8/09 | USBCOI002983-USBCOI002985 |
| PAUL II No. 97515596 - Annual Policy Summary | 12/9/09 - 12/8/10 | USBCOI002957-USBCOI002959 |
| PAUL II No. 97515597 - Annual Policy Summary | 12/9/09 - 12/8/10 | USBCOI002986-USBCOI002988 |
| PAUL II No. 97515596 - Annual Policy Summary | 12/9/10 - 12/8/11 | USBCOI002960-USBCOI002963 |
| PAUL II No. 97515597 - Annual Policy Summary | 12/9/10 - 12/8/11 | USBCOI002989-USBCOI002991 |
| PAUL II No. 97515596 - Annual Policy Summary | 12/9/11 - 12/8/12 | PHL0973113-PHL0973115 |
| PAUL II No. 97515597 - Annual Policy Summary | 12/9/11 - 12/8/12 | PHL0973134-PHL0973136 |
| PAUL II No. 97516394 - Annual Policy Summary | 2/10/06 - 2/9/07 | USBCOI193049-USBCOI193050 |
| PAUL II No. 97516394 - Annual Policy Summary | 2/10/07 - 2/9/08 | PHL0973329-PHL0973331 |
| PAUL II No. 97516394 - Annual Policy Summary | 2/10/08 - 2/9/09 | USBCOI218642-USBCOI218644 |
| PAUL II No. 97516394 - Annual Policy Summary | 2/10/09 - 2/9/10 | USBCOI190481-USBCOI190482 |
| PAUL II No. 97516394 - Annual Policy Summary | 2/10/10 - 2/9/11 | USBCOI189876-USBCOI189878 |
| PAUL II No. 97516394 - Annual Policy Summary | 2/10/11 - 2/9/12 | USBCOI218651-USBCOI218653 |
| PAUL II No. 97516394 - Annual Policy Summary | 2/10/12 - 2/9/13 | PHL0973344-PHL0973346 |
| PAUL II No. 97515667 - Annual Policy Summary | 2/17/06 - 2/16/07 | PHL0973137-PHL0973140 |
| PAUL II No. 97515667 - Annual Policy Summary | 2/17/07 - 2/16/08 | USBCOI190623-USBCOI190625 |
| PAUL II No. 97515667 - Annual Policy Summary | 2/17/08 - 2/16/09 | USBCOI190626-USBCOI190628 |
| PAUL II No. 97515667 - Annual Policy Summary | 2/17/09 - 2/16/10 | USBCOI190629-USBCOI190631 |
| PAUL II No. 97515667 - Annual Policy Summary | 2/17/10 - 2/16/11 | USBCOI188852-USBCOI188853 |
| PAUL II No. 97515667 - Annual Policy Summary | 2/17/11 - 2/16/12 | USBCOI218625-USBCOI218626 |
| PAUL II No. 97515667 - Annual Policy Summary | 2/17/12 - 2/16/13 | PHL0973161-PHL0973164 |
| PAUL III No. 97528285 - Annual Policy Summary | 2/25/08 - 2/24/09 | USBCOI004048-USBCOI004051 |
| PAUL III No. 97528285 - Annual Policy Summary | 2/25/09 - 2/24/10 | USBCOI004052-USBCOI004054 |
| PAUL III No. 97528285 - Annual Policy Summary | 2/25/10 - 2/24/11 | USBCOI004055-USBCOI004057 |
| PAUL III No. 97528285 - Annual Policy Summary | 2/25/11 - 2/24/12 | USBCOI004058-USBCOI004060 |
| PAUL III No. 97528285 - Annual Policy Summary | 2/25/12 - 2/24/13 | PHL0973571-PHL0973574 |
| PAUL II No. 97516375 - Annual Policy Summary | 2/7/06 - 2/6/07 | PHL0973238-PHL0973240 |
| PAUL II No. 97516375 - Annual Policy Summary | 2/7/07 - 2/6/08 | PHL0973241-PHL0973243 |
| PAUL II No. 97516375 - Annual Policy Summary | 2/7/08 - 2/6/09 | USBCOI191897-USBCOI191899 |
| PAUL II No. 97516375 - Annual Policy Summary | 2/7/09 - 2/6/10 | USBCOI189326-USBCOI189328 |
| PAUL II No. 97516375 - Annual Policy Summary | 2/7/10 - 2/6/11 | USBCOI189329-USBCOI189331 |
| PAUL II No. 97516375 - Annual Policy Summary | 2/7/11 - 2/6/12 | PHL0973253-PHL0973255 |
| PAUL II No. 97516375 - Annual Policy Summary | 2/7/12 - 2/6/13 | PHL0973256-PHL0973258 |
| PAUL II No. 97516389 - Annual Policy Summary | 2/8/06 - 2/7/07 | USBCOI193432-USBCOI193433 |
| PAUL II No. 97516389 - Annual Policy Summary | 2/8/07 - 2/7/08 | USBCOI193365-USBCOI193367 |
| PAUL II No. 97516389 - Annual Policy Summary | 2/8/08 - 2/7/09 | USBCOI189896-USBCOI189898 |
| PAUL II No. 97516389 - Annual Policy Summary | 2/8/09 - 2/7/10 | USBCOI193194-USBCOI193195 |
| PAUL II No. 97516389 - Annual Policy Summary | 2/8/10 - 2/7/11 | USBCOI189899-USBCOI189901 |
| PAUL II No. 97516389 - Annual Policy Summary | 2/8/11 - 2/7/12 | PHL0973319-PHL0973322 |
| PAUL II No. 97516389 - Annual Policy Summary | 2/8/12 - 2/7/13 | PHL0973323-PHL0973326 |

**Exhibit 2**
**Documents Considered**

| Document Title/Description | Date | Bates Range |
|---|---|---|
| Eleventh Annual Advanced Ali-Aba Conference on Insurance Industry and Financial Services Litigation; Update: Recent Life Insurance and Financial Services Litigation | 3/30/06-3/31/06 | TW-PF-00000024-00000052 |
| PAUL II No. 97513181 - Annual Policy Summary | 5/12/05 - 5/11/06 | USBCOI003508-USBCOI003510 |
| PAUL II No. 97513181 - Annual Policy Summary | 5/12/06 - 5/11/07 | USBCOI000203-USBCOI000204 |
| PAUL II No. 97513181 - Annual Policy Summary | 5/12/07 - 5/11/08 | USBCOI000205-USBCOI000207 |
| PAUL II No. 97513181 - Annual Policy Summary | 5/12/08 - 5/11/09 | USBCOI000208-USBCOI000211 |
| PAUL II No. 97513181 - Annual Policy Summary | 5/12/09 - 5/11/10 | USBCOI000212-USBCOI000214 |
| PAUL II No. 97513181 - Annual Policy Summary | 5/12/10 - 5/11/11 | USBCOI003524-USBCOI003527 |
| PAUL II No. 97513181 - Annual Policy Summary | 5/12/11 - 5/11/12 | USBCOI218666-USBCOI218668 |
| PAUL II No. 97513181 - Annual Policy Summary | 5/12/12 - 5/11/13 | PHL0972877-PHL0972879 |
| PAUL III No. 97522375 - Annual Policy Summary | 5/25/07 - 5/24/08 | USBCOI000001-USBCOI000002 |
| PAUL III No. 97522375 - Annual Policy Summary | 5/25/08 - 5/24/09 | USBCOI000003-USBCOI000005 |
| PAUL III No. 97522375 - Annual Policy Summary | 5/25/09 - 5/24/10 | USBCOI000006-USBCOI000008 |
| PAUL III No. 97522375 - Annual Policy Summary | 5/25/10 - 5/24/11 | USBCOI000009-USBCOI000011 |
| PAUL III No. 97522375 - Annual Policy Summary | 5/25/11 - 5/24/12 | USBCOI000012-USBCOI000014 |
| PAUL III No. 97518600 - Annual Policy Summary | 7/12/06 - 7/11/07 | PHL0973347-PHL0973350 |
| PAUL III No. 97518606 - Annual Policy Summary | 7/12/06 - 7/11/07 | PHL0973369-PHL0973372 |
| PAUL III No. 97518600 - Annual Policy Summary | 7/12/07 - 7/11/08 | USBCOI188956-USBCOI188959 |
| PAUL III No. 97518606 - Annual Policy Summary | 7/12/07 - 7/11/08 | USBCOI188960-USBCOI188963 |
| PAUL III No. 97518600 - Annual Policy Summary | 7/12/08 - 7/11/09 | USBCOI188964-USBCOI188966 |
| PAUL III No. 97518606 - Annual Policy Summary | 7/12/08 - 7/11/09 | USBCOI189033-USBCOI189035 |
| PAUL III No. 97518600 - Annual Policy Summary | 7/12/09 - 7/11/10 | PHL0973357-PHL0973359 |
| PAUL III No. 97518606 - Annual Policy Summary | 7/12/09 - 7/11/10 | PHL0973379-PHL0973381 |
| PAUL III No. 97518600 - Annual Policy Summary | 7/12/10 - 7/11/11 | USBCOI188967-USBCOI188969 |
| PAUL III No. 97518606 - Annual Policy Summary | 7/12/10 - 7/11/11 | USBCOI189036-USBCOI189038 |
| PAUL III No. 97518600 - Annual Policy Summary | 7/12/11 - 7/11/12 | PHL0973363-PHL0973365 |
| PAUL III No. 97518606 - Annual Policy Summary | 7/12/11 - 7/11/12 | PHL0973385-PHL0973387 |
| PAUL III No. 97518600 - Annual Policy Summary | 7/12/12 - 7/11/13 | PHL0973366-PHL0973368 |
| PAUL III No. 97518606 - Annual Policy Summary | 7/12/12 - 7/11/13 | PHL0973388-PHL0973390 |
| PAUL II No. 97513959 - Annual Policy Summary | 7/20/05 - 7/19/06 | USBCOI190975-USBCOI190977 |
| PAUL II No. 97513963 - Annual Policy Summary | 7/20/05 - 7/19/06 | USBCOI191117-USBCOI191119 |
| PAUL II No. 97513959 - Annual Policy Summary | 7/20/06 - 7/19/07 | USBCOI190978-USBCOI190980 |
| PAUL II No. 97513963 - Annual Policy Summary | 7/20/06 - 7/19/07 | USBCOI191120-USBCOI191122 |
| PAUL II No. 97513959 - Annual Policy Summary | 7/20/07 - 7/19/08 | USBCOI190981-USBCOI190983 |
| PAUL II No. 97513963 - Annual Policy Summary | 7/20/07 - 7/19/08 | USBCOI191123-USBCOI191125 |
| PAUL II No. 97513959 - Annual Policy Summary | 7/20/08 - 7/19/09 | USBCOI190984-USBCOI190987 |
| PAUL II No. 97513963 - Annual Policy Summary | 7/20/08 - 7/19/09 | USBCOI191126-USBCOI191129 |
| PAUL II No. 97513959 - Annual Policy Summary | 7/20/09 - 7/19/10 | USBCOI190988-USBCOI190990 |
| PAUL II No. 97513963 - Annual Policy Summary | 7/20/09 - 7/19/10 | USBCOI191130-USBCOI191132 |
| PAUL II No. 97513959 - Annual Policy Summary | 7/20/10 - 7/19/11 | USBCOI189111-USBCOI189113 |
| PAUL II No. 97513963 - Annual Policy Summary | 7/20/10 - 7/19/11 | USBCOI189146-USBCOI189149 |
| PAUL II No. 97513959 - Annual Policy Summary | 7/20/11 - 7/19/12 | PHL0972929-PHL0972931 |
| PAUL II No. 97513963 - Annual Policy Summary | 7/20/11 - 7/19/12 | PHL0972958-PHL0972961 |
| PAUL II No. 97513959 - Annual Policy Summary | 7/20/12 - 7/19/13 | PHL0972932-PHL0972934 |
| PAUL II No. 97513963 - Annual Policy Summary | 7/20/12 - 7/19/13 | PHL0972962-PHL0972965 |
| PAUL II No. 97513947 - Annual Policy Summary | 7/22/05 - 7/21/06 | USBCOI004168-USBCOI004170 |
| PAUL II No. 97513947 - Annual Policy Summary | 7/22/06 - 7/21/07 | USBCOI000692-USBCOI000693 |
| PAUL II No. 97513947 - Annual Policy Summary | 7/22/07 - 7/21/08 | USBCOI000694-USBCOI000696 |
| PAUL II No. 97513947 - Annual Policy Summary | 7/22/08 - 7/21/09 | USBCOI000697-USBCOI000699 |
| PAUL II No. 97513947 - Annual Policy Summary | 7/22/09 - 7/21/10 | USBCOI000700-USBCOI000702 |
| PAUL II No. 97513947 - Annual Policy Summary | 7/22/10 - 7/21/11 | USBCOI004182-USBCOI004184 |
| PAUL II No. 97513947 - Annual Policy Summary | 7/22/11 - 7/21/12 | USBCOI218705-USBCOI218707 |
| PAUL II No. 97513947 - Annual Policy Summary | 7/22/12 - 7/21/13 | PHL0972903-PHL0972905 |
| PAUL II No. 97514311 - Annual Policy Summary | 8/13/06 - 8/12/06 | PHL0973040-PHL0973043 |
| PAUL II No. 97514311 - Annual Policy Summary | 8/13/06 - 8/12/07 | PHL0973044-PHL0973047 |
| PAUL II No. 97514311 - Annual Policy Summary | 8/13/07 - 8/12/08 | USBCOI190249-USBCOI190252 |
| PAUL II No. 97514311 - Annual Policy Summary | 8/13/08 - 8/12/09 | USBCOI188456-USBCOI188458 |
| PAUL II No. 97514311 - Annual Policy Summary | 8/13/09 - 8/12/10 | PHL0973056-PHL0973059 |
| PAUL II No. 97514311 - Annual Policy Summary | 8/13/10 - 8/12/11 | USBCOI188459-USBCOI188461 |
| PAUL II No. 97514311 - Annual Policy Summary | 8/13/11 - 8/12/12 | PHL0973064-PHL0973067 |
| PAUL II No. 97514311 - Annual Policy Summary | 8/13/12 - 8/12/13 | PHL0973068-PHL0973071 |
| PAUL II No. 97514213 - Annual Policy Summary | 8/23/05 - 8/22/06 | USBCOI002514-USBCOI002516 |
| PAUL II No. 97514213 - Annual Policy Summary | 8/23/06 - 8/22/07 | USBCOI000534-USBCOI000536 |
| PAUL II No. 97514213 - Annual Policy Summary | 8/23/07 - 8/22/08 | USBCOI000537-USBCOI000539 |
| PAUL II No. 97514213 - Annual Policy Summary | 8/23/08 - 8/22/09 | USBCOI000540-USBCOI000543 |
| PAUL II No. 97514213 - Annual Policy Summary | 8/23/09 - 8/22/10 | USBCOI000544-USBCOI000546 |
| PAUL II No. 97514213 - Annual Policy Summary | 8/23/10 - 8/22/11 | USBCOI002530-USBCOI002532 |

# Exhibit 2
## Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| PAUL II No. 97514213 - Annual Policy Summary | 8/23/11 - 8/22/12 | USBCOI218685-USBCOI218687 |
| PAUL II No. 97514277 - Annual Policy Summary | 8/25/05 - 8/24/06 | USBCOI001735-USBCOI001737 |
| PAUL II No. 97514279 - Annual Policy Summary | 8/25/05 - 8/24/06 | USBCOI001770-USBCOI001772 |
| PAUL II No. 97514277 - Annual Policy Summary | 8/25/06 - 8/24/07 | USBCOI000873-USBCOI000875 |
| PAUL II No. 97514279 - Annual Policy Summary | 8/25/06 - 8/24/07 | USBCOI001049-USBCOI001051 |
| PAUL II No. 97514277 - Annual Policy Summary | 8/25/07 - 8/24/08 | USBCOI000876-USBCOI000878 |
| PAUL II No. 97514279 - Annual Policy Summary | 8/25/07 - 8/24/08 | USBCOI001052-USBCOI001054 |
| PAUL II No. 97514277 - Annual Policy Summary | 8/25/08 - 8/24/09 | USBCOI000879-USBCOI000882 |
| PAUL II No. 97514279 - Annual Policy Summary | 8/25/08 - 8/24/09 | USBCOI001055-USBCOI001058 |
| PAUL II No. 97514277 - Annual Policy Summary | 8/25/09 - 8/24/10 | USBCOI000883-USBCOI000885 |
| PAUL II No. 97514279 - Annual Policy Summary | 8/25/09 - 8/24/10 | USBCOI001059-USBCOI001061 |
| PAUL II No. 97514277 - Annual Policy Summary | 8/25/10 - 8/24/11 | USBCOI001766-USBCOI001769 |
| PAUL II No. 97514279 - Annual Policy Summary | 8/25/10 - 8/24/11 | USBCOI001802-USBCOI001805 |
| PAUL II No. 97514277 - Annual Policy Summary | 8/25/11 - 8/24/12 | USBCOI218727-USBCOI218729 |
| PAUL II No. 97514279 - Annual Policy Summary | 8/25/11 - 8/24/12 | USBCOI218746-USBCOI218748 |
| Table of maximum current monthly non-guaranteed cost of insurance rates - 05PAUL and 05ITR | | PHL016458-PHL016566 |
| Table of maximum current monthly non-guaranteed cost of insurance rates - U607 NY and UR88 NY | | PHL016567-PHL016639 |
| Threshold Tables PAULIII | | PHL0176710-PHL0176710 |
| Threshold Tables PAUL IIc | | PHL0535884-PHL0535884 |
| PAUL IIC_BASE_COI | | PHL0592354-PHL0592354 |
| PAULL III A Pre Increase COI Tables | | PHL0699197-PHL0699197 |
| PAULL III BC Pre Increase COI Tables | | PHL0699198-PHL0699198 |
| PAUL III 2010 Increase Pre Increase COI Table | | PHL0724099-PHL0724099 |
| COI_Table2c(PAULIIc) - Final | | PHL0760770-PHL0760770 |
| Certification of Compliance NAIC Life Illustrations Model Regulation & Actuarial Standards of Practice No. 24 - Policy Form U606/U607 - Marketing Name:  Phoenix Accumulator Universal Life (PAUL), December 2004 | | PHL0174499-PHL0174507 |
| Certification of Compliance NAIC Life Illustrations Model Regulation & Actuarial Standards of Practice No. 24 - Policy Form 05PAUL - Marketing Name:  Phoenix Accumulator Universal Life III.z(PAUL) | | PHL0174508-PHL0174516 |
| Attachment 4A - Phoenix Life Insurance Company - PAUL Self-Supporting Test Results (to support October 30, 2003 Certification) | | PHL0177532-PHL0177532 |
| Email exchange between S. Kwassman and B. Frank, Subject:  Illustration Actuary Tests - PAUL, August 20, 2004 to August 26, 2004 | | PHL0579893-PHL0579895 |
| Phoenix Estate Legacy II (PEL II) | | PHL0579896-PHL0579896 |
| Email Exchange between B. Frank and K. Underwood, Subject:  Annual Illustration Actuary Certification, February 26, 2009 to March 24, 2009 | | PHL0598764-PHL0598769 |
| Email Exchange between K. Underwood and B. Frank, Subject:  Illustration Actuary, March 3, 2009 to March 5, 2009 | | PHL0648001-PHL0648005 |
| Email Exchange between C. Friedli, T. Buckingham, D. Griswold, B. Frank and K. Hurley, Subject:  PAUL Interest Rate Change, March 27, 2009 to March 31, 2009 | | PHL0649753-PHL0649756 |
| Email from B. Lemek, to G. O'Connell, Subject:  Old Folder, March 4, 2010 to March 10, | | PHL0698373-PHL0698373 |
| Certification of Compliance NAIC Life Illustrations Model Regulation & Actuarial Standard of Practice No. 24 - Policy Form U606/U607 - Marketing Name:  Phoenix Accumulator Universal Life (PAUL), March 2004 | | PHL0698374-PHL0698381 |
| Email Exchange between K. Shannon and B. Frank, Subject:  Illustration Actuary, December 16, 2009 to December 21, 2009 | | PHL0749801-PHL0749804 |
| Certification of Compliance with the NAIC Life Illustrations Model Regulation & Actuarial Standard of Practice No. 24 - Policy Form U606/U607 - Marketing Name:  Phoenix Accumulator Universal Life (PAUL) | | PHL0775703-PHL0775707 |
| "Exhibit III: Detailed Calculations of the COI Charges," Policy 97303407 | | PHL0000330-PHL0000330 |
| Certification of Compliance - NAIC Life Illustrations Model Regulation & Actuarial Standards of Practice No. 24 - Policy Form U606/U607 - Marketing Name: Phoenix Accumulator Universal Life (PAUL) | | PHL0174499-PHL0174507 |
| PNXPSC Notes (Redacted), 8/17/2005 and 8/25/2005 | | PHL0582716-PHL0582721 |
| Letter Template from Customer Care Center to Policyholder | | PLIC 000731-PLIC 000731 |
| Letter from Phoenix to Policyholder, Approved by NYID January 12, 2001 | | PLIC015751-PLIC015782 |
| Phoenix Life Insurance Company Policy Documents, Approved by NYID on March 14, 2006 | | PLIC016193-PLIC016231 |
| Phoenix Economic Capital Initiative - Phase II - UL Product Pilot Base Model Specifications, Deloitte Consulting LLP | | PLIC0734958-PLIC0734983 |
| UL Product-Specific Shocks Approaches | | PLIC0734984-PLIC0734987 |
| PAUL COI Increase Options | | PHL015902-PHL015902 |
| Timeline / Next Steps | | PHL016061-PHL016080 |
| 2009/2010 PAUL Lapses by Month, Duration and Older Age Status - Policy Count and Base Face Amount | | PHL025237-PHL025237 |

# Exhibit 2
# Documents Considered

| Document Title/Description | Date | Bates Range |
|---|---|---|
| 2009/2010 PAUL Surrenders by Month, Duration and Older Age Status - Policy Count and Base Face Amount | | PHL025238-PHL025238 |
| 2003 - 2008q2 UL & VUL Mortality Study | | PHL0700615-PHL0700616 |
| PAUL Older Age Premium Persistency Assumption | | PHL0700617-PHL0700618 |
| Process Description: Data Analysis of Older Age - Premium Persistency Assumption | | PHL0719329-PHL0719350 |
| General Guidelines for Universal Life and Interest-Sensitive Life Products | | PHL0776285-PHL0776285 |
| Exhibit 5 Attachment – Question 3 (Non-guaranteed Elements) - Phoenix Life Insurance Company - Determination of Non-Guaranteed Elements, 2008 | | PHL0776286-PHL0776287 |
| Annual Policy Summary Phoenix Accumulator II for Policy 97514277 for the Period August 25, 2010 - August 24, 2011 | | USBCOI001751-USBCOI001753 |
| Annual Policy Summary Phoenix Accumulator II for Policy 97514279 for the Period August 25, 2010 - August 24, 2011 | | USBCOI001786 -USBCOI001788 |
| Annual Policy Summary Phoenix Accumulator II for Policy 97515342 for the Period November 12, 2010 - November 11, 2011 | | USBCOI001822 -USBCOI001824 |
| Annual Policy Summary Phoenix Accumulator II for Policy 97515596 for the Period December 9, 2010 - December 8, 2011 | | USBCOI002960 -USBCOI002963 |
| Annual Policy Summary Phoenix Accumulator II for Policy 97515597 for the Period December 9, 2010 - December 8, 2011 | | USBCOI002989 -USBCOI002991 |
| Annual Policy Summary Phoenix Accumulator II for Policy 97515795 for the Period November 12, 2010 - November 11, 2011 | | USBCOI003806 -USBCOI003808 |
| Handwritten Notes re Review product specs & pricing documentation | | TW-PF 1164-TW-PF 1165 |
| Phoenix Redetermination Project – Actuarial Standards of Practice Review | | TW-PF 1176-TW-PF 1178 |
| Actuarial Report on Redetermination Topics to be Covered | | TW-PF 1179-TW-PF 1180 |
| General Guidelines for Universal Life and Interest-Sensitive Life Products | | TW-PF 1198-TW-PF 1200 |
| Original Pricing – PAUL IIc – Premium to Endow | | TW-PF 1201-TW-PF 1202 |
| Rationale for Using Old Assumptions in Past Years | | TW-PF-00000860 |
| New Project X Specifications Proposal | | TW-PF-00000861-00000863 |
| Handwritten Notes | | TW-PF-00001164-00001165 |
| Handwritten Notes | | TW-PF-00001168-00001175 |
| Phoenix Redetermination Project | | TW-PF-00001176-00001178 |
| Actuarial Report on Redetermination Topics to be Covered | | TW-PF-00001179-00001180 |
| General Guidelines for Universal Life and Interest-Sensitive Life Products | | TW-PF-00001198-00001200 |
| Original Pricing - PAUL IIc Premium to Endow | | TW-PF-00001201-00001202 |
| Calculation of COI Thresholds for PAUL IIc and PAUL III | | TW-PF-00001203-00001214 |
| Mapping Projected Funding Types in to Unlimited States | | TW-PF-00001215-00001227 |
| Mapping Projected Funding Types in to Unlimited States | | TW-PF-00001228 |
| UL & VUL Mortality Study 2004-2009q2 | | TW-PF-00001229-00001233 |
| General Guidelines for Universal Life and Interest-Sensitive Life Products | | TW-PF-00001453 |
| PHL Variable Insurance Company Determination of Non-Guaranteed Elements 2008 | | TW-PF-00001454-00001461 |
| Product Funding Chart | | TW-PF-00006970 |
| Product Funding Chart – Prior to COI Increase | | TW-PF-00006973 |
| PAUL LLC Table | | TW-PF-00007039-00007047 |
| Mapping Projected Funding Types in to Ultimate States (Level Funded, ART Funding, Lapsed) | | TW-PF-00033428-00033436 |
| Underfunded UL Pricing Summary | | TW-PF-00127308 |
| "Break the Barrier to Premium Financing with Phoenix Accumulator II," Phoenix | | PHL0176332 |
| Product - Approval Document - PAUL II Decrease in Cost of Insurance Rates "Product Approval Document, PAUL II, Decrease in Cost of Insurance Rates," Version 2, June 9, 2004 | | PHL0875839-PHL0875849 |
| Preliminary Product Approval Document - PEL III/PAUL II Review of Term Rider Caps, Cost of Insurance Rates and Age 100+ Rider Rates | | PHL0737551-PHL0737563 |
| Complete Premium Payment History | | USBCOI1259577-82 |
| Underfunded UL Proposed Methodology | | TW-PF-00127310-00127311 |
| Miscellaneous | | |
| "The Life Settlements Market: An Actuarial Perspective on Consumer Economic Value," Deloitte Consulting LLP and The University of Connecticut | 2005 | |
| Society of Financial Examiners Supplemental Background Material - NAIC Examiner Project - Course AFE 1 - Life and Health Insurance Fundamentals | 2005 | |
| "What You Should Know About Buying Life Insurance," American Council of Life Insurers | 2012 | |
| "Life Insurance Long View - Life Settlements Need Not Be Unsettling," Bernstein Research | 3/4/2005 | |
| Frank, Michael L., "Life Settlements - Understanding the Risks and the Benefits," *Insurance Journal-West* | 5/23/2005 | |
| Silverman, Rachel Emma, "Letting an Investor Bet on When You'll Die," *Wall Street Journal* | 5/26/2005 | |
| Jones, R. Marshall, Stephan R. Leimberg, and Lawrence J. Rybka, "'Free' Life Insurance: Risks and Costs of Non-Recourse Premium Financing," *Estate Planning* 33, no. 7 | July 2006 | |

# Exhibit 2
## Documents Considered

| Document Title/Description | Date Bates Range |
|---|---|
| "Life Settlement Industry Poised for Growth as Financed Policies Hit Market; Welcome Funds CEO Advises Policyholders to Shop for Multiple Offers," Life Insurance Settlement Association | 8/22/2006 |
| Doherty, Neil A., and Hal J. Singer, "Regulating the Secondary Market for Life Insurance Policies," *Journal of Insurance Regulation* | |
| 2004 - 2005 Data Collection Report, Life Insurance Settlement Association | |
| http://finance.yahoo.com/ | |
| "Appendix C-Primary Tables (Excel Spreadsheet) – revised 02.16.09, including temporary smoking status unknown tables" found at http://www.soa.org/research/experience-study/ind-life/valuation/2008-vbt-report-tables.aspx | |
| Bloomberg | |

All other materials cited in this report and in the exhibits to this report.

# Exhibit 3A
## Policy Information Summary [1]

| # | Policy Number | Policy Type | Bates Range of Policy | Name of First Insured | Gender | Issue Age | Risk Class | Face Amount | Issue Date | Policy Anniversary | Death Benefit Option |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | (2) | | (3) | (4) |
| 1 | 97513181 | PAUL II | USBCOI000311 - 357 | Rimvydas Kaminskas | Male | 74 | Preferred | $8,000,000 | 5/12/05 | May 12 | A |
| 2 | 97513947 | PAUL II | USBCOI000753 - 804 | Martin E Serbin | Male | 72 | Preferred Plus | $10,000,000 | 7/22/05 | July 22 | A |
| 3 | 97514213 | PAUL II | USBCOI000559 - 622 | Ruth Gottlieb | Female | 73 | Non-Smoker | $4,500,000 | 8/23/05 | August 23 | A |
| 4 | 97514277 | PAUL II | USBCOI000932 - 980 | Gwenyth A Gosch | Female | 75 | Preferred Plus | $4,000,000 | 8/25/05 | August 25 | A |
| 5 | 97514279 | PAUL II | USBCOI001100 - 148 | Gwenyth A Gosch | Female | 75 | Preferred Plus | $4,000,000 | 8/25/05 | August 25 | A |
| 6 | 97515342 | PAUL II | USBCOI001277 - 332 | Gwenyth A Gosch | Female | 75 | Preferred Plus | $2,000,000 | 11/12/05 | November 12 | A |
| 7 | 97515596 | PAUL II | USBCOI001438 - 497 | Helen Marie Jensen | Female | 74 | Preferred Plus | $2,500,000(5) | 12/9/05 | December 9 | A |
| 8 | 97515597 | PAUL II | USBCOI001609 - 668 | Helen Marie Jensen | Female | 74 | Preferred Plus | $2,500,000(5) | 12/9/05 | December 9 | A |
| 9 | 97515795 | PAUL II | USBCOI008188 - 246 | Zada B Megonigal | Female | 73 | Preferred Plus | $7,500,000 | 11/12/05 | November 12 | A |
| 10 | 97519088 | PAUL III | USBCOI007745 - 786 | Valerie A Hipp | Female | 75 | Non-Smoker | $5,000,000 | 11/3/06 | November 3 | A |
| 11 | 97522375 | PAUL III | USBCOI183487 - 522 | Wallace Downs | Male | 78 | Non-Smoker | $5,000,000 | 5/25/07 | May 25 | A |
| 12 | 97528285 | PAUL III | USBCOI022270 - 314 | Neil Miller | Male | 66 | Preferred | $5,000,000 | 2/25/08 | February 25 | A |
| 13 | 97515667(6) | PAUL II | USBCOI190661 - 710 | Robert D Campbell | Male | 71 | Non-Smoker | $6,000,000 | 2/2/06 | February 17 | A |
| 14 | 97516379 | PAUL II | USBCOI192818 - 865 | Beverly Stein | Female | 76 | Preferred | $10,000,000 | 1/25/06 | January 25 | A |
| 15 | 97516394 | PAUL II | USBCOI193099 - 141 | Jack Wollman | Male | 79 | Non-Smoker | $10,000,000 | 2/10/06 | February 10 | A |
| 16 | 97516389 | PAUL II | USBCOI193246 - 293 | Jung O Yoon | Male | 75 | Non-Smoker | $10,000,000 | 2/8/06 | February 8 | A |
| 17 | 97513963 | PAUL II | USBCOI191276 - 337 | Donald Hannon | Male | 72 | Preferred | $10,000,000 | 7/20/05 | July 20 | A |
| 18 | 97513959 | PAUL II | USBCOI191214 - 275 | Donald Hannon | Male | 72 | Preferred | $10,000,000 | 7/20/05 | July 20 | A |
| 19 | 97516376 | PAUL II | USBCOI191928 - 975 | Sheila Kahn | Female | 75 | Non-Smoker | $20,000,000 | 11/30/05 | November 30 | A |
| 20 | 97515745 | PAUL II | USBCOI192521 - 572 | Gerald LeWinter | Male | 73 | Preferred | $5,000,000 | 12/22/05 | December 22 | A |
| 21 | 97515743 | PAUL II | USBCOI192469 - 520 | Gerald LeWinter | Male | 73 | Preferred | $5,000,000 | 12/22/05 | December 22 | A |
| 22 | 97516375 | PAUL II | USBCOI188387 - 452 | Sheila Kahn | Female | 76 | Non-Smoker | $10,000,000 | 2/7/06 | February 7 | A |
| 23 | 97518647 | PAUL III | USBCOI191456 - 489 | Walker Labrunerie | Male | 76 | Preferred | $10,000,000 | 10/10/06 | October 10 | A |
| 24 | 97519065 | PAUL III | USBCOI189182 - 224 | Walker Labrunerie | Male | 76 | Preferred | $5,000,000 | 10/10/06 | October 10 | A |
| 25 | 97519064 | PAUL III | USBCOI191490 - 523 | Walker Labrunerie | Male | 76 | Non-Smoker | $10,000,000 | 10/10/06 | October 10 | A |
| 26 | 97514311 | PAUL II | USBCOI193002 - 048 | Marvin R Agran | Male | 72 | Non-Smoker | $5,000,000 | 8/13/05 | August 13 | A |
| 27 | 97535603 | PAUL II | USBCOI214816 - 877 | Martin Willick | Male | 72 | Non-Smoker | $5,000,000 | 10/25/05 | October 25 | A |
| 28 | 97519675 | PAUL III | USBCOI191421 - 455 | Ronald D Bloomer | Male | 71 | Non-Smoker | $4,000,000 | 11/29/06 | November 29 | A |
| 29 | 97519674 | PAUL III | USBCOI191384 - 419 | Ronald D Bloomer | Male | 71 | Non-Smoker | $4,000,000 | 11/29/06 | November 29 | A |
| 30 | 97519664 | PAUL III | USBCOI191348 - 383 | Ronald D Bloomer | Male | 71 | Non-Smoker | $2,000,000 | 11/29/06 | November 29 | A |
| 31 | 97518606 | PAUL III | USBCOI191593 - 628 | Edward A Delman | Male | 78 | Non-Smoker | $5,000,000 | 7/12/06 | July 12 | A |
| 32 | 97518600 | PAUL III | USBCOI191557 - 592 | Edward A Delman | Male | 78 | Non-Smoker | $5,000,000 | 7/12/06 | July 12 | A |
| 33 | 97519155 | PAUL III | USBCOI191524 - 556 | John Jakobson | Male | 76 | Preferred | $10,000,000 | 11/15/06 | November 15 | A |

Note:
[1] Information is taken from policy unless otherwise noted.
[2] The face amount for all 33 policies remained the same from policy issuance date to the end of the period listed on latest annual summary received.
[3] Information is taken from annual summaries.
[4] The death benefit option remained the same from policy issuance date to the end of the period listed on latest annual summary received. Option A is also referenced as Option 1.
[5] These policies each have a face amount of $2,500,000, but a total death benefit of $5,000,000, due to an individual term rider adding $2,500,000 of death benefit.  See, for
   example, USBCOI001438-497 at USBCOI001445 and USBCOI001609-668 at USBCOI001616.
[6] Policy 97515667 did not contain information on risk class and death benefit option typically found on the other policies. Policy illustrations and
   annual summaries were relied upon for this information.

# Exhibit 3B
## Policy Information Summary [1]

| # | Policy Number | Policy Type | No Lapse Condition | Monthly Guarantee Premium | Minimum Premium | Maximum Premium | COI Increase Year (3) | Date of COI Increase [2] (3) | Date of Increase Letter [2] | Bates Number of Letter |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 97513181 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $5,179,529.78 and $759,976.82 x number (or fraction) of elapsed policy years after May 12, 2005[4] | 2010[6] | 5/12/2010[5] | 3/8/10 | USBCOI000298 |
| 2 | 97513947 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $6,124,270.47 and $839,174.48 x number (or fraction) of elapsed policy years after July 22, 2005[4] | 2010 | 7/22/10 | 3/19/10 | USBCOI000740 |
| 3 | 97514213 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $2,543,428.17 and $322,316.41 x number (or fraction) of elapsed policy years after August 23, 2005[4] | 2010 | 8/23/10 | 3/19/10 | USBCOI000533 |
| 4 | 97514277 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $2,415,083.32 and $327,177.35 x number (or fraction) of elapsed policy years after August 25, 2005[4] | 2010 | 8/25/10 | 3/19/10 | USBCOI000921 |
| 5 | 97514279 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $2,415,083.32 and $327,177.35 x number (or fraction) of elapsed policy years after August 25, 2005[4] | 2010 | 8/25/10 | 3/19/10 | USBCOI001097 |
| 6 | 97515342 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $1,208,007.46 and $163,644.50 x number (or fraction) of elapsed policy years after November 12, 2005[4] | 2010 | 11/12/10 | 3/19/10 | USBCOI001262 |
| 7 | 97515596 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $2,914,122.10 and $381,521.57 x number (or fraction) of elapsed policy years after December 9, 2005[4] | 2010 | 12/9/10 | 3/19/10 | USBCOI001427 |
| 8 | 97515597 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $2,914,122.10 and $381,521.57 x number (or fraction) of elapsed policy years after December 9, 2005[4] | 2010 | 12/9/10 | 3/19/10 | USBCOI003002 |
| 9 | 97515795 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $4,238,101.92 and $537,091.22 x number (or fraction) of elapsed policy years after November 12, 2005[4] | 2010 | 11/12/10 | 3/19/10 | USBCOI003819 |
| 10 | 97519088 | PAUL III | Years 1-5: If Total Cumulative Premium Test is satisfied, Years 6-9: If on any Monthly Calculation Day the Monthly Deductions do not exceed Net Policy Value , Years 9+: If on any Monthly Calculation Day the Monthly Deductions do not exceed the Net Surrender Value | $9,233.33 | $25 | $1,000,000 | 2010 | 11/3/10 | 3/19/10 | USBCOI002820 |
| 11 | 97522375 | PAUL III | Years 1-5: If Total Cumulative Premium Test is satisfied, Years 6-9: If on any Monthly Calculation Day the Monthly Deductions do not exceed the Net Surrender Value | $15,187.50 | $25 | $1,000,000 | 2011 | 5/25/12 | 10/17/11 | USBCOI000034 |
| 12 | 97528285 | PAUL III | Years 1-5: If Total Cumulative Premium Test is satisfied, Years 6-9: If on any Monthly Calculation Day the Monthly Deductions do not exceed the Net Surrender Value | $6,587.50 | $25 | $1,000,000 | 2011 | 2/25/12 | 10/10/11 | USBCOI004064 |
| 13 | 97515667 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | N/A[6] | 2010 | 2/17/11 | 3/8/10 | USBCOI188912 |
| 14 | 97516379 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $6,224,787.73 and $874,085.37 x number (or fraction) of elapsed policy years after January 25, 2006[4] | 2010 | 1/25/11 | 3/8/10 | USBCOI189781 |
| 15 | 97516394 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $7,277,247.31 and $1,288,548.89 x number (or fraction) of elapsed policy years after February 10, 2006[4] | 2010 | 2/10/11 | 3/8/10 | USBCOI189895 |
| 16 | 97516389 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $6,642,930.50 and $1,010,143.08 x number (or fraction) of elapsed policy years after February 8, 2006[4] | 2010 | 2/8/11 | 3/8/10 | USBCOI189918 |
| 17 | 97513963 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $6,124,917.84 and $839,249.86 x number (or fraction) of elapsed policy years after July 20, 2005[4] | 2010 | 7/20/10 | 3/19/10 | USBCOI189181 |
| 18 | 97513959 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $6,124,917.84 and $839,249.86 x number (or fraction) of elapsed policy years after July 20, 2005[4] | 2010 | 7/20/10 | 3/19/10 | USBCOI189145 |
| 19 | 97516376 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $12,071,690.20 and $1,635,440.15 x number (or fraction) of elapsed policy years after November 30, 2005[4] | 2010 | 11/30/10 | 3/19/10 | USBCOI189436 |
| 20 | 97515745 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $3,151,227.78 and $446,556.04 x number (or fraction) of elapsed policy years after December 22, 2005[4] | 2010 | 12/22/10 | 3/19/10 | USBCOI189733 |
| 21 | 97515743 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $3,151,227.78 and $446,556.04 x number (or fraction) of elapsed policy years after December 22, 2005[4] | 2010 | 12/22/10 | 3/19/10 | USBCOI189683 |
| 22 | 97516375 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $6,227,156.15 and $874,368.95 x number (or fraction) of elapsed policy years after February 7, 2006[4] | 2010 | 2/7/11 | 3/8/10 | USBCOI189388 |

# Exhibit 3B
## Policy Information Summary [1]

| # | Policy Number | Policy Type | No Lapse Condition | Monthly Guarantee Premium | Minimum Premium | Maximum Premium | COI Increase Year (3) | Date of COI Increase [2] (3) | Date of Increase Letter (3) | Bates Number of Letter |
|---|---|---|---|---|---|---|---|---|---|---|
| 23 | 97518647 | PAUL III | Years 1-5: If Total Cumulative Premium Test is satisfied, Years 6-9: If on any Monthly Calculation Day the Monthly Deductions do not exceed Net Policy Value , Years 9+: If on any Monthly Calculation Day the Monthly Deductions do not exceed the Net Surrender Value | $22,350.00 | $25 | $1,000,000 | 2010 | 10/10/10 | 3/19/10 | USBCOI189624 |
| 24 | 97519065 | PAUL III | Years 1-5: If Total Cumulative Premium Test is satisfied, Years 6-9: If on any Monthly Calculation Day the Monthly Deductions do not exceed Net Policy Value , Years 9+: If on any Monthly Calculation Day the Monthly Deductions do not exceed the Net Surrender Value | $11,175.00 | $25 | $1,000,000 | 2010 | 10/10/10 | 3/19/10 | USBCOI189566 |
| 25 | 97519064 | PAUL III | Years 1-5: If Total Cumulative Premium Test is satisfied, Years 6-9: If on any Monthly Calculation Day the Monthly Deductions do not exceed Net Policy Value , Years 9+: If on any Monthly Calculation Day the Monthly Deductions do not exceed the Net Surrender Value | $22,350.00 | $25 | $1,000,000 | 2010 | 10/10/10 | 3/19/10 | USBCOI189499 |
| 26 | 97514311 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $3,063,336.73 and $419,729.66 x number (or fraction) of elapsed policy years after August 13, 2005[4] | 2010 | 8/13/10 | 3/19/10 | USBCOI188532 |
| 27 | 97535603 | PAUL II | Years 1-7: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Policy Value less any policy debt, Years 7+: If on any Monthly Calculation Day the Monthly Deduction does not exceed the Surrender Value | N/A | $25 | Greater of $3,240,331.07 and $443,991.01 x number (or fraction) of elapsed certificate years ending October 25, 2033[4] | 2010 | 10/25/10 | 3/19/10 | USBCOI189875 |
| 28 | 97519675 | PAUL III | Years 1-5: If Total Cumulative Premium Test is satisfied, Years 6-9: If on any Monthly Calculation Day the Monthly Deductions do not exceed Net Policy Value , Years 9+: If on any Monthly Calculation Day the Monthly Deductions do not exceed the Net Surrender Value | $7,083.33 | $25 | $1,000,000 | 2010 | 11/29/10 | 3/19/10 | USBCOI188840 |
| 29 | 97519674 | PAUL III | Years 1-5: If Total Cumulative Premium Test is satisfied, Years 6-9: If on any Monthly Calculation Day the Monthly Deductions do not exceed Net Policy Value , Years 9+: If on any Monthly Calculation Day the Monthly Deductions do not exceed the Net Surrender Value | $7,083.33 | $25 | $1,000,000 | 2010 | 11/29/10 | 3/19/10 | USBCOI188765 |
| 30 | 97519664 | PAUL III | Years 1-5: If Total Cumulative Premium Test is satisfied, Years 6-9: If on any Monthly Calculation Day the Monthly Deductions do not exceed Net Policy Value , Years 9+: If on any Monthly Calculation Day the Monthly Deductions do not exceed the Net Surrender Value | $3,541.67 | $25 | $1,000,000 | 2010 | 11/29/10 | 3/19/10 | USBCOI188688 |
| 31 | 97518606 | PAUL III | Years 1-5: If Total Cumulative Premium Test is satisfied, Years 6-9: If on any Monthly Calculation Day the Monthly Deductions do not exceed Net Policy Value , Years 9+: If on any Monthly Calculation Day the Monthly Deductions do not exceed the Net Surrender Value | $15,187.50 | $25 | $1,000,000 | 2010 | 7/12/10 | 3/19/10 | USBCOI189101 |
| 32 | 97518600 | PAUL III | Years 1-5: If Total Cumulative Premium Test is satisfied, Years 6-9: If on any Monthly Calculation Day the Monthly Deductions do not exceed Net Policy Value , Years 9+: If on any Monthly Calculation Day the Monthly Deductions do not exceed the Net Surrender Value | $15,187.50 | $25 | $1,000,000 | 2010 | 7/12/10 | 3/19/10 | USBCOI189032 |
| 33 | 97519155 | PAUL III | Years 1-5: If Total Cumulative Premium Test is satisfied, Years 6-9: If on any Monthly Calculation Day the Monthly Deductions do not exceed Net Policy Value , Years 9+: If on any Monthly Calculation Day the Monthly Deductions do not exceed the Net Surrender Value | $22,350.00 | $25 | $1,000,000 | 2010 | 11/15/10 | 3/19/10 | USBCOI189939 |

Note:
[1] Information is taken from policy unless otherwise noted.
[2] Date listed is date of effective COI increase as described in letters to policyholders from Phoenix.
[3] Information is taken from letters sent to policyholders from Phoenix prior to the cost of insurance increase.
[4] According to the policy the limit may decrease when monthly charges for any rider or any other monthly charges cease, and may be exceeded if additional premium is needed to prevent policy lapse.
[5] According to the letter to Kaminskas Management from Phoenix on 3/8/2010, policy 97513181 was not subject to a COI increase as this policy has sufficient accumulated policy value to avoid a rate increase (USBCOI000298).
[6] The relevant schedule page for this policy is missing, however, the policy references "the total premium limit is shown on the schedule pages" (USBCOI19064).

# Exhibit 4A:  Universal Life Funds Flow Illustration



# Exhibit 4B:  Funds Flow of Hypothetical Policyholder Jane



| Month 2 | Month 2 |
|---|---|
| Policy Value$_1$ | $73,206.62 |
| Additions | Additions |
| Net Premium$_2$ | $0.00 |
| Interest Credited$_2$ | $244.26 |
| Subtractions | Subtractions |
| Service Charge$_2$ | $53.50 |
| Mortality Charge$_2$ | $949.35 |
| Policy Value$_2$ | $72,448.03 |



**Exhibit 5A: Policy Values for Two Hypothetical Policyholders**
Policyholders are Female Preferred Plus

Source: Pre-increase COI Rate Table, Female Preferred Plus (PHL0592354)
Note: Values are for demonstration only. The calculations for this exhibit are based on the definitions and formulas in PAUL II policies (for example, USBCOI001277-332) and the Female Preferred Plus COI Rate Table (PHL0592354). For ease of illustration, this example does not consider certain types of issues, for example, surrender charges.

## Exhibit 5B: Policy Values for Two Hypothetical Policyholders
### Policyholders are Female Preferred Plus

| Jane's Policy Value | Age 70-74 | Age 75-79 | Age 80-84 |
|---|---|---|---|
| Beginning of Period Policy Value | $0.00 | $1.00 | $1.00 |
| Net Premium | $74,245.77 | $111,749.88 | $128,917.51 |
| Interest Credited | $8,149.99 | $0.20 | $0.20 |
| Expense Charge | $810.00 | $210.00 | $210.00 |
| COI Charge | $81,584.76 | $111,540.08 | $128,707.70 |
| End of Period Policy Value[1] | $1.00 | $1.00 | $1.00 |

| Sue's Policy Value | | | |
|---|---|---|---|
| Beginning of Period Policy Value | $0.00 | $1.00 | $68,024.72 |
| Net Premium | $74,245.77 | $171,000.00 | $171,000.00 |
| Interest Credited | $8,149.99 | $6,722.44 | $19,935.39 |
| Expense Charge | $810.00 | $210.00 | $210.00 |
| COI Charge | $81,584.76 | $109,488.72 | $122,038.93 |
| End of Period Policy Value[1] | $1.00 | $68,024.72 | $136,711.17 |

Source: Pre-increase COI Rate Table, Female Preferred Plus (PHL0592354)
Note: Values are for demonstration only, displayed on a five-year aggregated basis. Calculated amounts are credited and debited on a monthly basis. The calculations for this exhibit are based on the definitions and formulas in PAUL II policies (for example, USBCOI001277-332) and the Female Preferred Plus COI Rate Table (PHL0592354). For ease of illustration, this example does not consider certain types of issues, for example, surrender charges.
[1] End of Period Policy Values are equal to Beginning of Period Policy Values for the next year, as shown in Exhibit 5A

# Exhibit 6A: Calculation of Policy Value
## 11/11/08 – 11/11/10

### Example Policy 97515342, Female, Preferred Plus, $2 Million Face Amount

| Date | Beginning Value | Premium Payment | Net Premium Paid | Interest Credited[1] | Monthly Deductions | Ending Value[1] |
|---|---|---|---|---|---|---|
| | [A] | | [B] | [C] | [D] | [E] = [A] + [B] + [C] - [D] |
| 11/11/08 | | | | 27.75 | | 11,753.73 |
| 11/12/08 | 11,725.98 | - | - | 28.67 | 3,358.88 | 8,395.77 |
| 12/12/08 | 8,395.77 | - | - | 30.43 | 3,364.51 | 5,061.69 |
| 01/12/09 | 5,061.69 | - | - | 18.96 | 3,370.18 | 1,710.47 |
| 01/22/09 | 1,710.47 | 11,927.00 | 11,330.65 | - | - | 13,041.12 |
| 02/12/09 | 13,041.12 | - | - | 35.13 | 3,356.64 | 9,719.61 |
| 03/12/09 | 9,719.61 | - | - | 32.88 | 3,362.27 | 6,390.22 |
| 04/12/09 | 6,390.22 | - | - | 23.94 | 3,367.92 | 3,046.24 |
| 04/23/09 | 3,046.24 | 9,000.00 | 8,550.00 | - | - | 11,596.24 |
| 05/12/09 | 11,596.24 | - | - | 30.65 | 3,359.09 | 8,267.80 |
| 06/12/09 | 8,267.80 | - | - | 30.97 | 3,364.73 | 4,934.04 |
| 07/12/09 | 4,934.04 | - | - | 17.88 | 3,370.39 | 1,581.53 |
| 07/23/09 | 1,581.53 | 10,000.00 | 9,500.00 | - | - | 11,081.53 |
| 08/12/09 | 11,081.53 | - | - | 28.87 | 3,359.97 | 7,750.43 |
| 09/12/09 | 7,750.43 | - | - | 29.03 | 3,365.61 | 4,413.85 |
| 10/12/09 | 4,413.85 | - | - | 16.00 | 3,371.28 | 1,058.57 |
| 10/22/09 | 1,058.57 | 12,000.00 | 11,400.00 | - | - | 12,458.57 |
| 11/11/09 | 12,458.57 | | | 31.86 | | 12,490.43 |
| 11/12/09 | 12,458.57 | - | - | 32.88 | 3,405.93 | 9,085.52 |
| 12/12/09 | 9,085.52 | - | - | 32.93 | 3,411.72 | 5,706.73 |
| 01/12/10 | 5,706.73 | - | - | 21.38 | 3,417.55 | 2,310.56 |
| 01/21/10 | 2,310.56 | 9,000.00 | 8,550.00 | - | - | 10,860.56 |
| 02/12/10 | 10,860.56 | - | - | 29.73 | 3,408.68 | 7,481.61 |
| 03/12/10 | 7,481.61 | - | - | 23.93 | 3,414.49 | 4,091.05 |
| 03/25/10 | 4,091.05 | 11,000.00 | 10,450.00 | - | - | 14,541.05 |
| 04/12/10 | 14,541.05 | - | - | 35.96 | 3,402.35 | 11,174.66 |
| 05/12/10 | 11,174.66 | - | - | 38.30 | 3,408.13 | 7,804.83 |
| 06/12/10 | 7,804.83 | - | - | 27.64 | 3,413.93 | 4,418.54 |
| 07/12/10 | 4,418.54 | - | - | 15.14 | 3,419.77 | 1,013.91 |
| 07/15/10 | 1,013.91 | 11,000.00 | 10,450.00 | - | - | 11,463.91 |
| 08/12/10 | 11,463.91 | - | - | 37.01 | 3,407.63 | 8,093.29 |
| 09/12/10 | 8,093.29 | - | - | 28.66 | 3,413.44 | 4,708.51 |
| 10/12/10 | 4,708.51 | - | - | 16.14 | 3,419.27 | 1,305.38 |
| 10/21/10 | 1,305.38 | 13,000.00 | 12,350.00 | - | - | 13,655.38 |
| 11/11/10 | 13,655.38 | | | 34.57 | | 13,689.95 |

Sources:  Annual summaries of policy 97515342
[1] Amounts shown for 11/11/08, 11/11/09, and 11/11/10 reflect accrued interest. Other amounts are interest credited amounts from annual summaries. Ending values at the end of each policy year reflect interest accrued over the previous policy month that has not yet been credited

# Exhibit 6B: Calculation of Monthly Deductions
## 11/12/08 – 10/12/10

**Example Policy 97515342, Female, Preferred Plus, $2 Million Face Amount**

| Date | Cost of Insurance Charge [A] | Cost of Additional Riders [B] | Service Charge [C] | Monthly Deductions [D] = [A] + [B] - [C] |
|---|---|---|---|---|
| 11/12/08 | 3,355.38 | - | 3.50 | 3,358.88 |
| 12/12/08 | 3,361.01 | - | 3.50 | 3,364.51 |
| 01/12/09 | 3,366.68 | - | 3.50 | 3,370.18 |
| 02/12/09 | 3,353.14 | - | 3.50 | 3,356.64 |
| 03/12/09 | 3,358.77 | - | 3.50 | 3,362.27 |
| 04/12/09 | 3,364.42 | - | 3.50 | 3,367.92 |
| 05/12/09 | 3,355.59 | - | 3.50 | 3,359.09 |
| 06/12/09 | 3,361.23 | - | 3.50 | 3,364.73 |
| 07/12/09 | 3,366.89 | - | 3.50 | 3,370.39 |
| 08/12/09 | 3,356.47 | - | 3.50 | 3,359.97 |
| 09/12/09 | 3,362.11 | - | 3.50 | 3,365.61 |
| 10/12/09 | 3,367.78 | - | 3.50 | 3,371.28 |
| 11/12/09 | 3,402.43 | - | 3.50 | 3,405.93 |
| 12/12/09 | 3,408.22 | - | 3.50 | 3,411.72 |
| 01/12/10 | 3,414.05 | - | 3.50 | 3,417.55 |
| 02/12/10 | 3,405.18 | - | 3.50 | 3,408.68 |
| 03/12/10 | 3,410.99 | - | 3.50 | 3,414.49 |
| 04/12/10 | 3,398.85 | - | 3.50 | 3,402.35 |
| 05/12/10 | 3,404.63 | - | 3.50 | 3,408.13 |
| 06/12/10 | 3,410.43 | - | 3.50 | 3,413.93 |
| 07/12/10 | 3,416.27 | - | 3.50 | 3,419.77 |
| 08/12/10 | 3,404.13 | - | 3.50 | 3,407.63 |
| 09/12/10 | 3,409.94 | - | 3.50 | 3,413.44 |
| 10/12/10 | 3,415.77 | - | 3.50 | 3,419.27 |

Sources: Annual summaries of policy 97515342

# Exhibit 6C: Calculation of Cost of Insurance Charge
## 11/12/08 – 10/12/10

**Example Policy 97515342, Female, Preferred Plus, $2 Million Face Amount**

| Date | Cost of Insurance Rate | Death Benefit / Monthly Factor | Ending Policy Value | Net Amount at Risk | Substandard Extra Charge | Cost of Insurance Charge |
|---|---|---|---|---|---|---|
| | [A] | [B] | [C] | [D] = ([B] - [C]) | [E] | [F]= ([A] x ([B] - [C])) +[E] |
| 11/12/08 | 0.0016903 | 1,993,473.96 | 8,395.77 | 1,985,078.19 | - | 3,355.38 |
| 12/12/08 | 0.0016903 | 1,993,473.96 | 5,061.69 | 1,988,412.27 | - | 3,361.01 |
| 01/12/09 | 0.0016903 | 1,993,473.96 | 1,710.47 | 1,991,763.49 | - | 3,366.68 |
| 02/12/09 | 0.0016903 | 1,993,473.96 | 9,719.61 | 1,983,754.35 | - | 3,353.14 |
| 03/12/09 | 0.0016903 | 1,993,473.96 | 6,390.22 | 1,987,083.74 | - | 3,358.77 |
| 04/12/09 | 0.0016903 | 1,993,473.96 | 3,046.24 | 1,990,427.72 | - | 3,364.42 |
| 05/12/09 | 0.0016903 | 1,993,473.96 | 8,267.80 | 1,985,206.16 | - | 3,355.59 |
| 06/12/09 | 0.0016903 | 1,993,473.96 | 4,934.04 | 1,988,539.92 | - | 3,361.23 |
| 07/12/09 | 0.0016903 | 1,993,473.96 | 1,581.53 | 1,991,892.43 | - | 3,366.90 |
| 08/12/09 | 0.0016903 | 1,993,473.96 | 7,750.43 | 1,985,723.53 | - | 3,356.47 |
| 09/12/09 | 0.0016903 | 1,993,473.96 | 4,413.85 | 1,989,060.11 | - | 3,362.11 |
| 10/12/09 | 0.0016903 | 1,993,473.96 | 1,058.57 | 1,992,415.39 | - | 3,367.78 |
| 11/12/09 | 0.0017146 | 1,993,473.96 | 9,085.52 | 1,984,388.44 | - | 3,402.43 |
| 12/12/09 | 0.0017146 | 1,993,473.96 | 5,706.73 | 1,987,767.23 | - | 3,408.23 |
| 01/12/10 | 0.0017146 | 1,993,473.96 | 2,310.56 | 1,991,163.40 | - | 3,414.05 |
| 02/12/10 | 0.0017146 | 1,993,473.96 | 7,481.61 | 1,985,992.35 | - | 3,405.18 |
| 03/12/10 | 0.0017146 | 1,993,473.96 | 4,091.05 | 1,989,382.91 | - | 3,411.00 |
| 04/12/10 | 0.0017146 | 1,993,473.96 | 11,174.66 | 1,982,299.30 | - | 3,398.85 |
| 05/12/10 | 0.0017146 | 1,993,473.96 | 7,804.83 | 1,985,669.13 | - | 3,404.63 |
| 06/12/10 | 0.0017146 | 1,993,473.96 | 4,418.54 | 1,989,055.42 | - | 3,410.43 |
| 07/12/10 | 0.0017146 | 1,993,473.96 | 1,013.91 | 1,992,460.05 | - | 3,416.27 |
| 08/12/10 | 0.0017146 | 1,993,473.96 | 8,093.29 | 1,985,380.67 | - | 3,404.13 |
| 09/12/10 | 0.0017146 | 1,993,473.96 | 4,708.51 | 1,988,765.45 | - | 3,409.94 |
| 10/12/10 | 0.0017146 | 1,993,473.96 | 1,305.38 | 1,992,168.58 | - | 3,415.77 |

Sources: Policy 97515342; Annual summaries of policy 97515342; PAUL II Pre Increase Rate Table PHL0592354

# Exhibit 6D: Calculation of Cost of Insurance Rates
## 11/12/08 – 10/12/10

**Example Policy 97515342, Female, Preferred Plus, $2 Million Face Amount**

| Date | Age at Issue | Duration of Policy | COI Table Rate | Banding Factor | Cost of Insurance Rate |
|---|---|---|---|---|---|
| | | | [A] | [B] | [C] = [A] * [B] |
| 11/12/08 | 75 | 4 | 0.0018781 | 0.90 | 0.0016903 |
| 12/12/08 | 75 | 4 | 0.0018781 | 0.90 | 0.0016903 |
| 01/12/09 | 75 | 4 | 0.0018781 | 0.90 | 0.0016903 |
| 02/12/09 | 75 | 4 | 0.0018781 | 0.90 | 0.0016903 |
| 03/12/09 | 75 | 4 | 0.0018781 | 0.90 | 0.0016903 |
| 04/12/09 | 75 | 4 | 0.0018781 | 0.90 | 0.0016903 |
| 05/12/09 | 75 | 4 | 0.0018781 | 0.90 | 0.0016903 |
| 06/12/09 | 75 | 4 | 0.0018781 | 0.90 | 0.0016903 |
| 07/12/09 | 75 | 4 | 0.0018781 | 0.90 | 0.0016903 |
| 08/12/09 | 75 | 4 | 0.0018781 | 0.90 | 0.0016903 |
| 09/12/09 | 75 | 4 | 0.0018781 | 0.90 | 0.0016903 |
| 10/12/09 | 75 | 4 | 0.0018781 | 0.90 | 0.0016903 |
| 11/12/09 | 75 | 5 | 0.0019051 | 0.90 | 0.0017146 |
| 12/12/09 | 75 | 5 | 0.0019051 | 0.90 | 0.0017146 |
| 01/12/10 | 75 | 5 | 0.0019051 | 0.90 | 0.0017146 |
| 02/12/10 | 75 | 5 | 0.0019051 | 0.90 | 0.0017146 |
| 03/12/10 | 75 | 5 | 0.0019051 | 0.90 | 0.0017146 |
| 04/12/10 | 75 | 5 | 0.0019051 | 0.90 | 0.0017146 |
| 05/12/10 | 75 | 5 | 0.0019051 | 0.90 | 0.0017146 |
| 06/12/10 | 75 | 5 | 0.0019051 | 0.90 | 0.0017146 |
| 07/12/10 | 75 | 5 | 0.0019051 | 0.90 | 0.0017146 |
| 08/12/10 | 75 | 5 | 0.0019051 | 0.90 | 0.0017146 |
| 09/12/10 | 75 | 5 | 0.0019051 | 0.90 | 0.0017146 |
| 10/12/10 | 75 | 5 | 0.0019051 | 0.90 | 0.0017146 |

Sources:   Annual summaries of policy 97515342; PAUL II Pre-Increase Rate Table
PHL0592354; 2008 Project X, Product Specifications Version 1 PHL0591573-79

# Exhibit 6E: Cost of Insurance Rate Table

### Example Policy 97515342, Female, Preferred Plus, $2 Million Face Amount

|                |                |           |           |           |           |           |           |
|----------------|----------------|-----------|-----------|-----------|-----------|-----------|-----------|
|                | **Duration**   |           |           |           |           |           |           |
| **Age at Issue** | **1**        | **2**     | **3**     | **4**     | **5**     | **6**     | **7**     |
| 68 | 0.0004518 | 0.0005683 | 0.0006564 | 0.0007094 | 0.0007286 | 0.0007223 | 0.0007702 |
| 69 | 0.0004974 | 0.0006280 | 0.0007281 | 0.0007910 | 0.0008168 | 0.0008137 | 0.0008708 |
| 70 | 0.0005491 | 0.0006958 | 0.0008110 | 0.0008857 | 0.0009197 | 0.0009200 | 0.0009887 |
| 71 | 0.0006814 | 0.0008340 | 0.0009540 | 0.0010317 | 0.0010667 | 0.0010630 | 0.0011395 |
| 72 | 0.0008336 | 0.0009926 | 0.0011192 | 0.0012015 | 0.0012370 | 0.0012279 | 0.0013114 |
| 73 | 0.0010082 | 0.0011770 | 0.0013114 | 0.0013974 | 0.0014322 | 0.0014161 | 0.0015044 |
| 74 | 0.0012096 | 0.0013888 | 0.0015322 | 0.0016217 | 0.0016547 | 0.0016284 | 0.0017193 |
| 75 | 0.0014431 | 0.0016325 | 0.0017848 | 0.0018781 | 0.0019051 | 0.0018631 | 0.0019550 |
| 76 | 0.0016377 | 0.0018318 | 0.0019846 | 0.0020724 | 0.0020886 | 0.0020290 | 0.0021163 |
| 77 | 0.0018405 | 0.0020372 | 0.0021863 | 0.0022650 | 0.0022669 | 0.0021862 | 0.0022675 |
| 78 | 0.0020467 | 0.0022403 | 0.0023821 | 0.0024463 | 0.0024307 | 0.0023287 | 0.0024013 |
| 79 | 0.0022470 | 0.0024314 | 0.0025593 | 0.0026077 | 0.0025725 | 0.0024476 | 0.0025108 |
| 80 | 0.0024283 | 0.0025986 | 0.0027098 | 0.0027377 | 0.0026820 | 0.0025345 | 0.0025880 |
| 81 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 |
| 82 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 |
| 83 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 |
| 84 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 |
| 85 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 |
| 86 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 |
| 87 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 |
| 88 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 |
| 89 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 |
| 90 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 | 0.0000000 |

Sources:   Policy 97515342; PAUL II Pre-Increase Rate Table PHL0592354

# Exhibit 7A: 2010 COI Rate Increase

**Example Policy 97515342, Female, Preferred Plus, $2 Million Face Amount**

**<u>Before Increase:</u>** **Table COI Rate x Banding Factor = COI Rate**

Table COI Rate:

| age/dur | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| 68 | 0.0004518 | 0.0005683 | 0.0006564 | 0.0007094 | 0.0007286 |
| 69 | 0.0004974 | 0.0006280 | 0.0007281 | 0.0007910 | 0.0008168 |
| 70 | 0.0005491 | 0.0006958 | 0.0008110 | 0.0008857 | 0.0009197 |
| 71 | 0.0006814 | 0.0008340 | 0.0009540 | 0.0010317 | 0.0010667 |
| 72 | 0.0008336 | 0.0009926 | 0.0011192 | 0.0012015 | 0.0012370 |
| 73 | 0.0010082 | 0.0011770 | 0.0013114 | 0.0013974 | 0.0014322 |
| 74 | 0.0012096 | 0.0013888 | 0.0015322 | 0.0016217 | 0.0016547 |
| 75 | 0.0014431 | 0.0016325 | 0.0017848 | 0.0018781 | 0.0019051 |
| 76 | 0.0016377 | 0.0018318 | 0.0019846 | 0.0020724 | 0.0020886 |

COI Rate:

| age/dur | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| 68 | 0.0004518 | 0.0005683 | 0.0006564 | 0.0007094 | 0.0007286 |
| 69 | 0.0004974 | 0.0006280 | 0.0007281 | 0.0007910 | 0.0008168 |
| 70 | 0.0005491 | 0.0006958 | 0.0008110 | 0.0008857 | 0.0009197 |
| 71 | 0.0006814 | 0.0008340 | 0.0009540 | 0.0010317 | 0.0010667 |
| 72 | 0.0008336 | 0.0009926 | 0.0011192 | 0.0012015 | 0.0012370 |
| 73 | 0.0010082 | 0.0011770 | 0.0013114 | 0.0013974 | 0.0014322 |
| 74 | 0.0012096 | 0.0013888 | 0.0015322 | 0.0016217 | 0.0016547 |
| 75 | 0.0014431 | 0.0016325 | 0.0017848 | 0.0018781 | 0.0019051 |
| 76 | 0.0016377 | 0.0018318 | 0.0019846 | 0.0020724 | 0.0020886 |

**0.0019051 x 0.9 = 0.0017146**

**<u>After Increase:</u>** **Old COI Rate + Percentage x (New Table COI Rate - Old COI Rate) = New COI Rate**

$$\text{Percentage} = \text{Max}\left(0,\ 1 - \frac{\text{Funding Ratio}}{\text{Target Funding Ratio}}\right)$$

Old COI Rate:

| age/dur | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| 68 | 0.0004518 | 0.0005683 | 0.0006564 | 0.0007094 | 0.0007286 |
| 69 | 0.0004974 | 0.0006280 | 0.0007281 | 0.0007910 | 0.0008168 |
| 70 | 0.0005491 | 0.0006958 | 0.0008110 | 0.0008857 | 0.0009197 |
| 71 | 0.0006814 | 0.0008340 | 0.0009540 | 0.0010317 | 0.0010667 |
| 72 | 0.0008336 | 0.0009926 | 0.0011192 | 0.0012015 | 0.0012370 |
| 73 | 0.0010082 | 0.0011770 | 0.0013114 | 0.0013974 | 0.0014322 |
| 74 | 0.0012096 | 0.0013888 | 0.0015322 | 0.0016217 | 0.0016547 |
| 75 | 0.0014431 | 0.0016325 | 0.0017848 | 0.0018781 | 0.0019051 |
| 76 | 0.0016377 | 0.0018318 | 0.0019846 | 0.0020724 | 0.0020886 |

New Table COI Rate:

| age/dur | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| 68 | 0.0004518 | 0.0005683 | 0.0006564 | 0.0007094 | 0.0007286 |
| 69 | 0.0004974 | 0.0006280 | 0.0007281 | 0.0007910 | 0.0008168 |
| 70 | 0.0005491 | 0.0006958 | 0.0008110 | 0.0008857 | 0.0009197 |
| 71 | 0.0006814 | 0.0008340 | 0.0009540 | 0.0010317 | 0.0010667 |
| 72 | 0.0008336 | 0.0009926 | 0.0011192 | 0.0012015 | 0.0012370 |
| 73 | 0.0010082 | 0.0011770 | 0.0013114 | 0.0013974 | 0.0014322 |
| 74 | 0.0012096 | 0.0013888 | 0.0015322 | 0.0016217 | 0.0016547 |
| 75 | 0.0014431 | 0.0016325 | 0.0017848 | 0.0018781 | 0.0019051 |
| 76 | 0.0016377 | 0.0018318 | 0.0019846 | 0.0020724 | 0.0020886 |

Old COI Rate:

| age/dur | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| 68 | 0.0004518 | 0.0005683 | 0.0006564 | 0.0007094 | 0.0007286 |
| 69 | 0.0004974 | 0.0006280 | 0.0007281 | 0.0007910 | 0.0008168 |
| 70 | 0.0005491 | 0.0006958 | 0.0008110 | 0.0008857 | 0.0009197 |
| 71 | 0.0006814 | 0.0008340 | 0.0009540 | 0.0010317 | 0.0010667 |
| 72 | 0.0008336 | 0.0009926 | 0.0011192 | 0.0012015 | 0.0012370 |
| 73 | 0.0010082 | 0.0011770 | 0.0013114 | 0.0013974 | 0.0014322 |
| 74 | 0.0012096 | 0.0013888 | 0.0015322 | 0.0016217 | 0.0016547 |
| 75 | 0.0014431 | 0.0016325 | 0.0017848 | 0.0018781 | 0.0019051 |
| 76 | 0.0016377 | 0.0018318 | 0.0019846 | 0.0020724 | 0.0020886 |

**0.0016768 + 66% x ( 0.0023773 - 0.0016768 ) = 0.0021391**

$$66\% = 1 - \frac{0.68\%}{2.00\%}$$

**Funding Ratio, Target Funding ratio and this Percentage determine where the New COI Rate sits between Old COI Rates and New Table COI Rates**

| age/dur | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| 68 | 0.0004518 | 0.0005683 | 0.0006564 | 0.0007094 | 0.0007286 |
| 69 | 0.0004974 | 0.0006280 | 0.0007281 | 0.0007910 | 0.0008168 |
| 70 | 0.0005491 | 0.0006958 | 0.0008110 | 0.0008857 | 0.0009197 |
| 71 | 0.0006814 | 0.0008340 | 0.0009540 | 0.0010317 | 0.0010667 |
| 72 | 0.0008336 | 0.0009926 | 0.0011192 | 0.0012015 | 0.0012370 |
| 73 | 0.0010082 | 0.0011770 | 0.0013114 | 0.0013974 | 0.0014322 |
| 74 | 0.0012096 | 0.0013888 | 0.0015322 | 0.0016217 | 0.0016547 |
| 75 | 0.0014431 | 0.0016325 | 0.0017848 | 0.0018781 | 0.0019051 |
| 76 | 0.0016377 | 0.0018318 | 0.0019846 | 0.0020724 | 0.0020886 |

← **New COI Rate is somewhere in between** →

| age/dur | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| 68 | 0.0004518 | 0.0005683 | 0.0006564 | 0.0007094 | 0.0007286 |
| 69 | 0.0004974 | 0.0006280 | 0.0007281 | 0.0007910 | 0.0008168 |
| 70 | 0.0005491 | 0.0006958 | 0.0008110 | 0.0008857 | 0.0009197 |
| 71 | 0.0006814 | 0.0008340 | 0.0009540 | 0.0010317 | 0.0010667 |
| 72 | 0.0008336 | 0.0009926 | 0.0011192 | 0.0012015 | 0.0012370 |
| 73 | 0.0010082 | 0.0011770 | 0.0013114 | 0.0013974 | 0.0014322 |
| 74 | 0.0012096 | 0.0013888 | 0.0015322 | 0.0016217 | 0.0016547 |
| 75 | 0.0014431 | 0.0016325 | 0.0017848 | 0.0018781 | 0.0019051 |
| 76 | 0.0016377 | 0.0018318 | 0.0019846 | 0.0020724 | 0.0020886 |

Source: Pre-increase COI Rate tables, Female Preferred Plus (PHL0592354); Attachment 3 to email from Kathleen McGah (Phoenix to Robert Priest (NYID), January 12, 2011 (PHL0000330); 2008 Project X, Product Specifications Version 1, August 26, 2008 (PHL0591573–79); PAUL II Post Increase COI Tables (PHL0760770); PAUL IIc Threshold Percentages (PHL0535884)
Note: Values are for demonstration only.

# Exhibit 7B: 2011 COI Rate Increase

**Example Policy 97528285, Male Preferred, $5 Million Face Amount**

**Before Increase:** | **Table COI Rate** x **Banding Factor** = **COI Rate**

Table COI Rate:

| age/dur | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| 68 | 0.0004518 | 0.0005683 | 0.0006564 | 0.0007094 | 0.0007286 |
| 69 | 0.0004974 | 0.0006280 | 0.0007281 | 0.0007910 | 0.0008168 |
| 70 | 0.0005491 | 0.0006958 | 0.0008110 | 0.0008857 | 0.0009197 |
| 71 | 0.0006814 | 0.0008340 | 0.0009540 | 0.0010317 | 0.0010667 |
| 72 | 0.0008336 | 0.0009926 | 0.0011192 | 0.0012015 | 0.0012370 |
| 73 | 0.0010082 | 0.0011770 | 0.0013114 | 0.0013974 | 0.0014322 |
| 74 | 0.0012096 | 0.0013888 | 0.0015322 | 0.0016217 | 0.0016547 |
| 75 | 0.0014431 | 0.0016325 | 0.0017848 | 0.0018781 | 0.0019051 |
| 76 | 0.0016377 | 0.0018318 | 0.0019846 | 0.0020724 | 0.0020886 |

COI Rate:

| age/dur | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| 68 | 0.0004518 | 0.0005683 | 0.0006564 | 0.0007094 | 0.0007286 |
| 69 | 0.0004974 | 0.0006280 | 0.0007281 | 0.0007910 | 0.0008168 |
| 70 | 0.0005491 | 0.0006958 | 0.0008110 | 0.0008857 | 0.0009197 |
| 71 | 0.0006814 | 0.0008340 | 0.0009540 | 0.0010317 | 0.0010667 |
| 72 | 0.0008336 | 0.0009926 | 0.0011192 | 0.0012015 | 0.0012370 |
| 73 | 0.0010082 | 0.0011770 | 0.0013114 | 0.0013974 | 0.0014322 |
| 74 | 0.0012096 | 0.0013888 | 0.0015322 | 0.0016217 | 0.0016547 |
| 75 | 0.0014431 | 0.0016325 | 0.0017848 | 0.0018781 | 0.0019051 |
| 76 | 0.0016377 | 0.0018318 | 0.0019846 | 0.0020724 | 0.0020886 |

**0.0007747** x **0.9** = **0.0006972**

**After Increase:** | **Table COI Rate** x **Banding Factor** = **COI Rate**

Table COI Rate:

| age/dur | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| 68 | 0.0004518 | 0.0005683 | 0.0006564 | 0.0007094 | 0.0007286 |
| 69 | 0.0004974 | 0.0006280 | 0.0007281 | 0.0007910 | 0.0008168 |
| 70 | 0.0005491 | 0.0006958 | 0.0008110 | 0.0008857 | 0.0009197 |
| 71 | 0.0006814 | 0.0008340 | 0.0009540 | 0.0010317 | 0.0010667 |
| 72 | 0.0008336 | 0.0009926 | 0.0011192 | 0.0012015 | 0.0012370 |
| 73 | 0.0010082 | 0.0011770 | 0.0013114 | 0.0013974 | 0.0014322 |
| 74 | 0.0012096 | 0.0013888 | 0.0015322 | 0.0016217 | 0.0016547 |
| 75 | 0.0014431 | 0.0016325 | 0.0017848 | 0.0018781 | 0.0019051 |
| 76 | 0.0016377 | 0.0018318 | 0.0019846 | 0.0020724 | 0.0020886 |

COI Rate:

| age/dur | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| 68 | 0.0004518 | 0.0005683 | 0.0006564 | 0.0007094 | 0.0007286 |
| 69 | 0.0004974 | 0.0006280 | 0.0007281 | 0.0007910 | 0.0008168 |
| 70 | 0.0005491 | 0.0006958 | 0.0008110 | 0.0008857 | 0.0009197 |
| 71 | 0.0006814 | 0.0008340 | 0.0009540 | 0.0010317 | 0.0010667 |
| 72 | 0.0008336 | 0.0009926 | 0.0011192 | 0.0012015 | 0.0012370 |
| 73 | 0.0010082 | 0.0011770 | 0.0013114 | 0.0013974 | 0.0014322 |
| 74 | 0.0012096 | 0.0013888 | 0.0015322 | 0.0016217 | 0.0016547 |
| 75 | 0.0014431 | 0.0016325 | 0.0017848 | 0.0018781 | 0.0019051 |
| 76 | 0.0016377 | 0.0018318 | 0.0019846 | 0.0020724 | 0.0020886 |

**0.0010079** x **0.9** = **0.0009071**

Source: PAUL IIIA Pre-Increase Rate Table (PHL0699197); PAUL III 2011 Increase MP 2011-08-24_Letter from Gina O'Connell to Dennis Lauzon, Attachment 13 (PHL020930); 2008 Project X, Product Specifications Version 1, August 26, 2008 (PHL0591573–79); O'Connell Deposition June 19th, pp. 298-300.
Note: Values are for demonstration only.

# Exhibit 8A: Decrease in Value to Policy Owner

| # | Policy Type and Number | Discounted to the Date of the COI Rate Increase at the Risk Free Rate [1] | | | Discounted to the Date of the COI Rate Increase at the Risk Free Rate plus a Premium [2] | | |
|---|---|---|---|---|---|---|---|
| | | Decrease in Value (A + B) | Portion of Decrease in Value from the Period Prior to 9/16/2013 (A) | Portion of Decrease in Value from the Period Subsequent to and Including 9/16/2013 (B) | Decrease in Value (A + B) | Portion of Decrease in Value from the Period Prior to 9/16/2013 (A) | Portion of Decrease in Value from the Period Subsequent to and Including 9/16/2013 (B) |
| 1 | PAUL II 97513181 | $247,322.34 | $29,880.57 | $217,441.77 | $182,874.41 | $28,450.43 | $154,423.98 |
| 2 | PAUL II 97513947 | $635,887.19 | $139,301.36 | $496,585.83 | $481,196.33 | $134,210.37 | $346,985.96 |
| 3 | PAUL II 97514213 | $364,022.03 | $56,839.97 | $307,182.06 | $267,446.36 | $54,634.32 | $212,812.04 |
| 4 | PAUL II 97514277 | $256,571.46 | $64,449.28 | $192,122.18 | $196,182.69 | $62,404.43 | $133,778.26 |
| 5 | PAUL II 97514279 | $256,571.46 | $64,449.28 | $192,122.18 | $196,182.69 | $62,404.43 | $133,778.26 |
| 6 | PAUL II 97515342 | $117,933.01 | $30,070.90 | $87,862.11 | $90,534.73 | $29,086.68 | $61,448.05 |
| 7 | PAUL II 97515596 | $159,808.06 | $37,792.50 | $122,015.56 | $122,576.86 | $36,466.94 | $86,109.92 |
| 8 | PAUL II 97515597 | $159,808.06 | $37,792.50 | $122,015.56 | $122,576.86 | $36,466.94 | $86,109.92 |
| 9 | PAUL II 97515625 | $545,957.72 | $114,100.66 | $431,857.06 | $412,869.37 | $109,805.22 | $303,064.15 |
| 10 | PAUL III 97519088 | $315,501.50 | $75,159.43 | $240,342.07 | $247,445.04 | $71,663.66 | $175,781.38 |
| 11 | PAUL II 97522375 | $566,582.83 | $30,958.51 | $535,624.31 | $474,921.44 | $30,152.88 | $444,768.56 |
| 12 | PAUL III 97528285 | $162,349.94 | $9,503.12 | $152,846.82 | $111,521.82 | $9,130.98 | $102,390.84 |
| 13 | PAUL II 97515667 | $259,791.44 | $43,112.02 | $216,679.42 | $193,553.41 | $41,598.10 | $151,955.31 |
| 14 | PAUL II 97516379 | $782,034.78 | $196,828.01 | $585,206.77 | $619,530.89 | $189,857.63 | $429,673.26 |
| 15 | PAUL II 97516394 | $168,750.93 | $60,300.28 | $108,450.65 | $143,280.24 | $58,089.45 | $85,190.79 |
| 16 | PAUL II 97516389 | $324,173.96 | $84,805.27 | $239,368.69 | $260,817.17 | $81,632.96 | $179,184.21 |
| 17 | PAUL II 97513963 | $470,854.42 | $97,557.02 | $373,297.40 | $355,078.09 | $93,754.11 | $261,323.98 |
| 18 | PAUL II 97513959 | $470,854.42 | $97,557.02 | $373,297.40 | $355,078.09 | $93,754.11 | $261,323.98 |
| 19 | PAUL II 97516376 | $1,630,498.35 | $349,726.76 | $1,280,771.59 | $1,261,698.30 | $335,625.32 | $926,072.98 |
| 20 | PAUL II 97515745 | $210,290.14 | $44,772.42 | $165,517.72 | $161,062.96 | $43,225.32 | $117,837.64 |
| 21 | PAUL II 97515743 | $210,290.14 | $44,772.42 | $165,517.72 | $161,062.96 | $43,225.32 | $117,837.64 |
| 22 | PAUL II 97516375 | $681,763.77 | $161,910.21 | $519,853.56 | $540,581.28 | $155,875.47 | $384,705.81 |
| 23 | PAUL III 97518647 | $246,059.63 | $70,742.50 | $175,317.13 | $199,674.74 | $67,272.82 | $132,401.92 |
| 24 | PAUL III 97519065 | $116,983.44 | $34,822.26 | $82,161.19 | $95,777.62 | $33,124.26 | $62,653.36 |
| 25 | PAUL III 97519064 | $246,059.63 | $70,742.50 | $175,317.13 | $199,674.74 | $67,272.82 | $132,401.92 |
| 26 | PAUL II 97514311 | $213,681.32 | $37,153.93 | $176,527.39 | $159,120.35 | $35,779.89 | $123,340.46 |
| 27 | PAUL II 97535603 | $207,921.60 | $35,253.81 | $172,667.79 | $155,412.23 | $34,029.53 | $121,382.70 |
| 28 | PAUL III 97519675 | $169,817.51 | $34,100.11 | $135,717.40 | $128,815.28 | $32,561.58 | $96,253.70 |
| 29 | PAUL III 97519674 | $169,817.51 | $34,100.11 | $135,717.40 | $128,815.28 | $32,561.58 | $96,253.70 |
| 30 | PAUL III 97519064 | $84,923.18 | $17,049.54 | $67,873.64 | $64,419.16 | $16,280.27 | $48,138.89 |
| 31 | PAUL III 97518606 | $114,394.69 | $51,171.15 | $63,223.54 | $96,836.97 | $48,724.84 | $48,112.13 |
| 32 | PAUL III 97518600 | $114,394.45 | $51,170.91 | $63,223.54 | $96,836.73 | $48,724.60 | $48,112.13 |
| 33 | PAUL III 97519155 | $239,582.66 | $69,317.14 | $170,265.52 | $195,473.97 | $66,070.03 | $129,403.94 |

Sources include:
Policies; Annual Summaries; John R. Graham and Campbell R. Harvey, "The Equity Risk Premium in 2010," Duke University, National Bureau of Economic Research, Version August 9, 2010, Table 1; *Bloomberg*; PAUL II Pre Increase Rate Table (PHL0592354); PAUL IIIA Pre Increase Rate Tables (PHL0699197); PAUL IIIB/C Pre Increase Rate Tables (PHL0699198); PAUL III 2010 Pre Increase Rate Tables (PHL0724099); PAUL II 2010 Post Increase COI Tables (PHL0760770); PAUL III 2010 Post COI Increase Rate Tables, attachment 1 to Letter From Joseph Bonfitto to Kathleen Nelligan, 2/22/10 (PHL016459-566); PAUL III 2011 Post COI Increase Rate Tables, attachment 12 to Letter from Gina O'Connell to Dennis Lauzon, 8/24/11 (PHL020892-953); 2008 Project X, Product Specifications Version 1, August 26, 2008 (PHL0591573–79); VBT 2008 mortality tables; Rate Increase letters from Phoenix to policyholders

Note:
Policies 97519088, 97519065 and 97535603 feature a Rider that provides an increasing term insurance benefit. The figures for these policies exclude the effect of the COI rate increase on the total rider insurance amounts or the monthly charges for the riders. For policy 97519065, the annual summary for the period ending October 9, 2010 (the year before the 2010 rate increase was applied to this policy) shows an amount of $1,209,555 associated with the individual term rider. Both prior and subsequent annual summaries, as well as calculations, support an amount of $418,445. This analysis uses the amount of $418,445.
[1] Risk free rate is US Treasury strips obtained from Bloomberg (YCCF0079 Index). The yield curve is built daily with bonds that have either Bloomberg Generic (BGN) prices, supplemental proprietary contributor prices or both. The bonds are subject to option-adjusted spread (OAS) analysis and are plotted for the term to form a yield curve and adjusted to generate a best fit.
[2] Premium is the equity risk premium based on the survey by John R. Graham and Campbell R. Harvey, "The Equity Risk Premium in 2010," Duke University, National Bureau of Economic Research, Version August 9, 2010, Table 1.

# Exhibit 8B: Decrease in Value to Policy Owner as of 9/16/13[1]

| | | Discounted to the Date of the COI Rate Increase at the Risk Free Rate[2] | | | Discounted to the Date of the COI Rate Increase at the Risk Free Rate plus a Premium[3] | | |
|---|---|---|---|---|---|---|---|
| # | Policy Type and Number | Decrease in Value (A + B) | Portion of Decrease in Value from the Period Prior to 9/16/2013 (A) | Portion of Decrease in Value from the Period Subsequent to 9/16/2013 (B) | Decrease in Value (A + B) | Portion of Decrease in Value from the Period Prior to 9/16/2013 (A) | Portion of Decrease in Value from the Period Subsequent to 9/16/2013 (B) |
| 1 | PAUL II 97513181 | $321,905.27 | $38,891.41 | $283,013.86 | $238,022.32 | $37,029.99 | $200,992.33 |
| 2 | PAUL II 97513947 | $816,513.99 | $178,870.58 | $637,643.41 | $617,882.46 | $172,333.47 | $445,548.99 |
| 3 | PAUL II 97514213 | $464,551.95 | $72,537.15 | $392,014.80 | $341,305.52 | $69,722.38 | $271,583.14 |
| 4 | PAUL II 97514277 | $327,300.83 | $82,216.10 | $245,084.73 | $250,264.62 | $79,607.53 | $170,657.09 |
| 5 | PAUL II 97514279 | $327,300.83 | $82,216.10 | $245,084.73 | $250,264.62 | $79,607.53 | $170,657.09 |
| 6 | PAUL II 97515342 | $148,146.48 | $37,774.82 | $110,371.66 | $113,728.98 | $36,538.45 | $77,190.53 |
| 7 | PAUL II 97515596 | $199,685.64 | $47,223.02 | $152,462.62 | $153,163.98 | $45,566.69 | $107,597.29 |
| 8 | PAUL II 97515597 | $199,685.64 | $47,223.02 | $152,462.62 | $153,163.98 | $45,566.69 | $107,597.29 |
| 9 | PAUL II 97515795 | $685,827.61 | $143,332.31 | $542,495.30 | $518,643.10 | $137,936.41 | $380,706.69 |
| 10 | PAUL III 97519088 | $397,030.55 | $94,581.45 | $302,449.10 | $311,387.55 | $90,182.33 | $221,205.22 |
| 11 | PAUL III 97522375 | $633,501.69 | $34,615.01 | $598,886.68 | $531,014.21 | $33,714.22 | $497,299.99 |
| 12 | PAUL III 97528285 | $185,127.86 | $10,836.42 | $174,291.43 | $127,168.48 | $10,412.07 | $116,756.41 |
| 13 | PAUL II 97515667 | $320,134.22 | $53,125.82 | $267,008.40 | $238,510.83 | $51,260.25 | $187,250.58 |
| 14 | PAUL II 97516379 | $968,116.21 | $243,662.29 | $724,453.92 | $766,945.30 | $235,033.34 | $531,911.96 |
| 15 | PAUL II 97516394 | $208,238.65 | $74,410.54 | $133,828.11 | $176,807.82 | $71,682.38 | $105,125.44 |
| 16 | PAUL II 97516389 | $400,190.53 | $104,691.52 | $295,499.01 | $321,977.02 | $100,775.32 | $221,201.70 |
| 17 | PAUL II 97513963 | $604,835.08 | $125,316.67 | $479,518.41 | $456,114.84 | $120,431.65 | $335,683.19 |
| 18 | PAUL II 97513959 | $604,835.08 | $125,316.67 | $479,518.41 | $456,114.84 | $120,431.65 | $335,683.19 |
| 19 | PAUL II 97516376 | $2,040,981.89 | $437,771.67 | $1,603,210.22 | $1,579,335.17 | $420,120.14 | $1,159,215.03 |
| 20 | PAUL II 97515745 | $262,090.65 | $55,801.15 | $206,289.50 | $200,737.41 | $53,872.96 | $146,864.45 |
| 21 | PAUL II 97515743 | $262,090.65 | $55,801.15 | $206,289.50 | $200,737.41 | $53,872.96 | $146,864.45 |
| 22 | PAUL II 97516375 | $841,800.81 | $199,916.97 | $641,883.84 | $667,477.19 | $192,465.64 | $475,011.55 |
| 23 | PAUL II 97518647 | $311,100.27 | $89,441.78 | $221,658.49 | $252,454.52 | $85,054.96 | $167,399.56 |
| 24 | PAUL III 97519065 | $147,905.53 | $44,026.78 | $103,878.75 | $121,094.40 | $41,879.96 | $79,214.44 |
| 25 | PAUL III 97519064 | $311,100.27 | $89,441.78 | $221,658.49 | $252,454.52 | $85,054.96 | $167,399.56 |
| 26 | PAUL II 97514311 | $273,219.38 | $47,506.13 | $225,713.25 | $203,456.08 | $45,749.25 | $157,706.83 |
| 27 | PAUL II 97535603 | $262,112.24 | $44,442.02 | $217,670.22 | $195,917.34 | $42,898.65 | $153,018.69 |
| 28 | PAUL III 97519675 | $212,611.53 | $42,693.33 | $169,918.20 | $161,276.73 | $40,767.09 | $120,509.64 |
| 29 | PAUL III 97519664 | $212,611.53 | $42,693.33 | $169,918.20 | $161,276.73 | $40,767.09 | $120,509.64 |
| 30 | PAUL III 97519664 | $106,323.82 | $21,346.02 | $84,977.80 | $80,652.79 | $20,382.90 | $60,269.89 |
| 31 | PAUL III 97518606 | $147,171.12 | $65,832.74 | $81,338.38 | $124,582.75 | $62,685.51 | $61,897.24 |
| 32 | PAUL III 97518608 | $147,170.81 | $65,832.43 | $81,338.38 | $124,582.44 | $62,685.20 | $61,897.24 |
| 33 | PAUL III 97519155 | $300,784.55 | $87,024.34 | $213,760.21 | $245,408.20 | $82,947.76 | $162,460.44 |
| | **Totals** | **$13,652,003.16** | **$2,986,412.53** | **$10,665,590.64** | **$10,593,924.16** | **$2,869,037.38** | **$7,724,886.78** |

Sources include:
Policies; Annual Summaries; John R. Graham and Campbell R. Harvey, "The Equity Risk Premium in 2010," Duke University, National Bureau of Economic Research, Version August 9, 2010, Table 1; Bloomberg; PAUL II Pre Increase Rate Table (PHL0592354); PAUL IIIA Pre Increase Rate Tables (PHL0699197); PAUL IIB/C Pre Increase Rate Tables (PHL0699198); PAUL IIII 2010 Pre Increase Rate Tables (PHL0724099); PAUL II 2010 Post COI Increase Rate Tables (PHL0760770); PAUL III 2010 Post COI Increase Rate Tables, attachment 1 to Letter From Joseph Bonfitto to Kathleen Nelligan, 2/22/10 (PHL016459-566); PAUL III 2011 Post COI Increase Rate Tables, attachment 12 to Letter from Gina O'Connell to Dennis Lauzon, 8/24/11 (PHL020892-953); 2008 Project X, Product Specifications Version 1, August 26, 2008 (PHL0591573–79); VBT 2008 mortality tables; Rate Increase letters from Phoenix to policyholders

Note:
Policies 97519088, 97519065 and 97535603 feature a Rider that provides an increasing term insurance benefit. The figures for these policies exclude the effect of the COI rate increase on the total rider insurance amounts or the monthly charges for the riders. For policy 97519065, the annual summary for the period ending October 9, 2010 (the year before the 2010 rate increase was applied to this policy) shows an amount of $1,209,555 associated with the individual term rider. Both prior and subsequent annual summaries, as well as calculations, support an amount of $418,445. This analysis uses the amount of $418,445.

[1] Brought forward to 9/16/13 using the NY state statutory prejudgment interest rate of 9%.
[2] Risk free rate is US Treasury strips obtained from Bloomberg (YCCF0079 Index). The yield curve is built daily with bonds that have either Bloomberg Generic (BGN) prices, supplemental proprietary contributor prices or both. The bonds are subject to option-adjusted spread (OAS) analysis and are plotted for the term to form a yield curve and adjusted to generate a best fit.
[3] Premium is the equity risk premium based on the survey by John R. Graham and Campbell R. Harvey, "The Equity Risk Premium in 2010," Duke University, National Bureau of Economic Research, Version August 9, 2010, Table 1.

# Exhibit 9:  Amount of Additional Premiums Paid to Date
## From the date of the COI Increase to 9/16/13

| # | Policy Type and Number | Excess Premiums Paid | Excess Premiums Paid with 9% Prejudgment Interest as of 9/16/13[1] |
|---|---|---|---|
| 1 | PAUL II 97513181 | $26,447.74 | $40,198.89 |
| 2 | PAUL II 97513947 | $154,953.15 | $189,269.26 |
| 3 | PAUL II 97514213 | $68,159.99 | $81,358.11 |
| 4 | PAUL II 97514277 | $57,509.98 | $72,400.80 |
| 5 | PAUL II 97514279 | $57,509.98 | $72,400.80 |
| 6 | PAUL II 97515342 | $25,634.90 | $32,143.23 |
| 7 | PAUL II 97515596 | $27,872.78 | $36,839.09 |
| 8 | PAUL II 97515597 | $27,872.78 | $36,839.09 |
| 9 | PAUL II 97515795 | $107,094.50 | $132,825.64 |
| 10 | PAUL III 97519088 | $77,992.93 | $91,658.81 |
| 11 | PAUL III 97522375 | $53,822.41 | $57,880.35 |
| 12 | PAUL III 97528285 | $17,096.03 | $17,698.73 |
| 13 | PAUL II 97515667 | $41,564.03 | $49,763.59 |
| 14 | PAUL II 97516379 | $224,750.92 | $261,634.63 |
| 15 | PAUL II 97516394 | $65,960.02 | $87,776.57 |
| 16 | PAUL II 97516389 | $91,056.50 | $112,729.18 |
| 17 | PAUL II 97513963 | $115,481.57 | $136,095.82 |
| 18 | PAUL II 97513959 | $115,481.57 | $136,095.82 |
| 19 | PAUL II 97516376 | $414,861.72 | $481,906.15 |
| 20 | PAUL II 97515745 | $56,920.09 | $67,528.50 |
| 21 | PAUL II 97515743 | $56,920.09 | $67,528.50 |
| 22 | PAUL II 97516375 | $166,312.65 | $195,551.37 |
| 23 | PAUL III 97518647 | $80,233.59 | $97,998.09 |
| 24 | PAUL III 97519065 | $57,674.47 | $69,551.11 |
| 25 | PAUL III 97519064 | $80,233.59 | $97,998.09 |
| 26 | PAUL II 97514311 | $35,940.90 | $47,836.31 |
| 27 | PAUL II 97535603 | $57,785.41 | $66,075.78 |
| 28 | PAUL III 97519675 | $46,168.90 | $53,686.13 |
| 29 | PAUL III 97519674 | $46,168.90 | $53,686.13 |
| 30 | PAUL III 97519664 | $23,182.10 | $26,959.01 |
| 31 | PAUL III 97518606 | $44,954.79 | $59,810.41 |
| 32 | PAUL III 97518600 | $44,997.80 | $59,859.84 |
| 33 | PAUL III 97519155 | $69,028.12 | $85,585.38 |
| | **Total** | | **$3,177,169.23** |

Sources include:
Policies; Annual Summaries; PAUL II Pre Increase Rate Table (PHL0592354); PAUL IIIA Pre Increase Rate Tables (PHL0699197); PAUL IIIB/C Pre Increase Rate Tables (PHL0699198); PAUL IIII 2010 Pre Increase Rate Tables (PHL0724099); 2008 Project X, Product Specifications Version 1, August 26, 2008 (PHL0591573–79); Rate Increase letters from Phoenix to policyholders

Note:
These figures can be updated to reflect additional excess premiums paid during the period from September 16, 2013 to the date of trial.  For policy 97519065, the annual summary for the period ending October 9, 2010 (the year before the 2010 rate increase was applied to this policy) shows an amount of $1,209,555 associated with the individual term rider. Both prior and subsequent annual summaries, as well as calculations, support an amount of $418,445.  This analysis uses the amount of $418,445.  When information from the Annual Summaries is unavailable, the interest rate used to calculate the Credited Interest amount of a specific policy is assumed to be the same as that applied to other policies.  When information from other policies is unavailable, the interest rate is assumed to be 4%.

[1] The New York state statutory prejudgment interest rate is 9% simple interest.